# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JEFFREY W. HERRMANN AND <br> MINA GEROWIN HERRMANN, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) Case No. 14-941 T <br> ) <br> ) Judge Charles F. Lettow <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Nathan E. Clukey
  *Attorney of Record*
Abraham N.M. Shashy, Jr.
  *Of Counsel*
Ariana Wallizada
  *Of Counsel*
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
nclukey@kslaw.com
hshashy@kslaw.com
awallizada@kslaw.com

*Counsel for Plaintiffs Jeffrey W. Herrmann and Mina Gerowin Herrmann*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

Argument ................................................................................................................................ 1

I.     Defendant Does Not Genuinely Dispute Any Material Fact Relevant to the Resolution of Plaintiffs' Motion and Thus Summary Judgment is Appropriate ................ 3

     A.     Defendant does not dispute the material facts relevant to Plaintiffs' motion ......... 4

     B.     Defendant raises facts that are irrelevant or are not material to the resolution of Plaintiffs' motion ............................................................................ 6

II.    Defendant Does Not Dispute the Law Relevant to the Resolution of Plaintiffs' Motion ...................................................................................................................... 9

III.   Plaintiffs Have Established an Overpayment .................................................... 10

Conclusion ..................................................................................................................... 14

CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

**Cases**

*3M Co. v. Mohan*,
    482 F. App'x 574 (Fed. Cir. 2012) .................................................................................. 4

*America Online, Inc. v. United States*,
    64 Fed. Cl. 571 (2005) ..................................................................................................... 4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................................................... 3

*Gingerich v. United States*,
    77 Fed. Cl. 231 (2007) .............................................................................................. 13, 14

*Jones v. Liberty Glass Co.*,
    332 U.S. 524 (1947) .................................................................................................. 2, 11

*Matsushita Elec. Indus. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ......................................................................................................... 3

*McElmurry v. Ark. Power & Light Co.*,
    995 F.2d 1576 (Fed. Cir. 1993) ....................................................................................... 3

*Missouri Pac. R.R. Co. v. United States*,
    168 Ct. Cl. 86 (1964) ................................................................................................. 7, 12

*Nagy v. United States*,
    519 F. App'x 137 (4th Cir. 2013) (per curiam) .............................................................. 4

*Pendergraft v. United States*,
    94 Fed. Cl. 79 (2010) ............................................................................................. passim

*United States v. Dalm*,
    494 U.S. 596 (1990) ....................................................................................................... 11

**Rules**

RCFC 56 .................................................................................................................................. 3

**Argument**

Plaintiffs' motion for partial summary judgment simply seeks to place Plaintiffs in the position they would have occupied if the IRS had not grossly erred in its calculation of its notice of computational adjustment ("Computational Notice"). The IRS's error, which it acknowledged but refused to correct, forced Plaintiffs three years ago to pay approximately $5,200,000 that they did not owe—even if Defendant were to prevail on all of its positions in this case. Defendant does not dispute that the IRS erred. Nor does Defendant genuinely dispute any material fact relevant to the resolution of Plaintiffs' motion. Defendant similarly does not dispute the underlying law set forth in Plaintiffs' motion. Defendant even admits that Plaintiffs "are entitled to an appropriate foreign tax credit, pursuant to §§ 901 and 904 for foreign taxes paid." (Def. Resp. at 8.)

Although that should resolve the matter in Plaintiffs' favor, Defendant, in stubborn reluctance to avoid parting with money that never belonged to it, raises facts that are immaterial, irrelevant to the resolution of the motion, or not genuinely in dispute. Defendant, for example, repeatedly claims that the "foreign tax credit issue . . . cannot be resolved independently of the resolution of the taxpayer's proper amount of gross income for 2008 and 2009."

But Plaintiffs' motions assumes, *arguendo*, that Defendant is *correct* that the 2008 bonus should be included in income in 2008, rather than 2009—and thus there is no genuine issue that would preclude partial summary judgment. Therefore, the issue of whether the 2008 Bonus should be included in income in 2009 or 2008 is irrelevant to the resolution of Plaintiffs' motion. In other words, Plaintiffs are entitled to a refund of approximately $5,200,000 under Count One even assuming that the 2008 Bonus constituted income to Ms. Herrmann in 2008 as Defendant contends.

Defendant also insists that Plaintiffs "simply need to wait" for their refund because Plaintiffs supposedly have not established the existence of an "overpayment." That is incorrect. As is explained in Section III below, an overpayment is merely "any payment in excess of that which is properly due," and such an "excess payment may be traced to an error in mathematics or in judgment or in interpretation of facts or law." *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947). Plaintiffs paid the erroneous amount assessed by the IRS through the Computational Notice which was based on the IRS's inclusion of the 2008 Bonus in Plaintiffs' income for 2008 (conceded by Plaintiffs, *arguendo,* for this motion), but was inflated by the IRS's computational error. Defendant does not dispute that Plaintiffs paid the full amount of tax reflected in the Computational Notice. Tellingly, Defendant has not demonstrated or, indeed, even argued, that the amount of tax paid was correct. Because the adjustment was wrongly inflated by approximately $5,200,000, the IRS possessed no statutory authority to impose that portion of the adjustment. The error-inflated amount paid by Plaintiffs was indisputably "in excess of that which is properly due" and, therefore, it necessarily constitutes an "overpayment."

Finally, Defendant claims that Plaintiffs must prove each and every item involved in their tax return before a refund can be issued. In the context of this case, Defendant, in essence, argues that a taxpayer cannot obtain a refund for a tax year in which there is another distinct issue pending before a court which might result in a *further* refund to the taxpayer. Contrary to Defendant's position, Plaintiffs are not required to prove each and every item involved in their tax return to establish an overpayment, and Plaintiffs do not have to wait until all issues for a single year have been resolved to obtain a refund. *Pendergraft v. United States*, 94 Fed. Cl. 79, 87-88 (2010).

By granting Plaintiffs' motion for partial summary judgment, the Court would simply refund Plaintiffs' overpayment, for which there exists no genuine issue of material fact, and concomitantly reduce the amount in controversy from an error-inflated amount to the genuinely disputed amount.

**I. Defendant Does Not Genuinely Dispute Any Material Fact Relevant to the Resolution of Plaintiffs' Motion and Thus Summary Judgment is Appropriate**

Summary judgment is appropriate when the pleadings and the parties' submissions "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986) (internal quotation marks omitted). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 248 (internal quotation marks omitted). The nonmoving party *must produce evidence* to support its claim or defense by more than simply showing "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (emphasis added).

Thus, under Rule 56(c), a party asserting that a fact "is genuinely disputed *must support the assertion* by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." RCFC 56(c) (emphasis added). "Mere denials and conclusory statements . . . are not sufficient to establish a genuine issue of material fact." *McElmurry v. Ark. Power & Light Co*., 995 F.2d 1576, 1578 (Fed. Cir. 1993).

Defendant admits, as it must, that courts may grant partial summary judgment on some, but not all, issues in a case. (Def. Resp. at 5.) After conceding that general proposition,

3

Defendant spends an entire page belaboring the facts from one of the four authorities cited by Plaintiffs for that general proposition. *Id.*[1] Plaintiffs, of course, did not suggest that that single case, *America Online*, *Inc.*, was the only tax case in which a court granted partial summary judgment for a taxpayer—and for that reason deliberately used the signal "*see*, *e.g.*," to introduce it. Plaintiffs also could have cited, for example, another relatively recent case from this Court, *Pendergraft*, 94 Fed. Cl. 79. In *Pendergraft*, the Court of Federal Claims granted summary judgment for the taxpayer on one tax issue (whether money the taxpayer received was a "loan," and thus was excludable from income), but denied summary judgment on a second tax issue affecting the same taxable year (whether certain payments were commissions to third parties rather than the taxpayer and thus were excludable from the taxpayer's income). *Id.* at 86-87. Even though the second issue required a trial, the court disposed of the first issue by partial summary judgment. *Id*. at 87. The Court also granted Plaintiffs an immediate refund with respect to the first issue. *Id*. at 88. In the instant case, the Court undoubtedly has the authority to grant partial summary judgment on Count One, to allow an immediate refund on that issue, and to permit Counts Two through Four to proceed to trial.

### A.    Defendant does not dispute the material facts relevant to Plaintiffs' motion

Defendant does not genuinely dispute the material facts that are relevant to the resolution of Plaintiffs' motion. Indeed, apart from the few facts discussed below in Section I.B, Defendant does not dispute *any* of the facts set forth on pages one through eleven, and sixteen, of Plaintiffs' motion. (Doc. No. 20, at 1-11.) Consequently, it is not genuinely disputed that:

---

[1] Defendant mistakenly states that Plaintiffs cited only one tax case for the notion that courts may grant partial summary judgment. (Def. Resp. at 5.) Plaintiffs, in fact, cited two tax cases (*America Online, Inc. v. United States*, 64 Fed. Cl. 571 (2005), and *Nagy v. United States*, 519 F. App'x 137 (4th Cir. 2013) (per curiam)), along with a relevant Federal Circuit decision (*3M Co. v. Mohan*, 482 F. App'x 574 (Fed. Cir. 2012)), as well as Court of Federal Claims Rule 56. (Doc. No. 20, at 11.) Defendant made no mention of these additional authorities.

- The additional U.S. tax and interest assessed against and paid by the Herrmanns, resulted from the inclusion of the 2008 Bonus amount in the computation of the IRS's adjustment.  (*Id.* at 6, 16.)

- The U.K. taxed and the Herrmanns paid full U.K. tax on the full amount of the 2008 Bonus.  (*Id.* at 3, 16.)

- The U.K. tax that the Herrmanns paid in 2009, which was not allowable as foreign tax credit for that year, was available for carryover to 2008 and was foreign income tax for purposes of sections 901 and 904.  (*Id.* at 16.)

- The Herrmanns' elected under section 901 to claim foreign tax credits on their original 2008 tax return.  (*Id.* at 6, 16.)

- The bulk of the IRS's adjustment is grossly overstated insofar as it did not take into account the proper amount of foreign tax credit to which the Herrmanns were entitled with respect to the U.S. tax on the true amount of their foreign source income.  (*Id.* at 5, 6, 8, 9.)

- If the IRS had recalculated the foreign tax properly, the tax reflected in the Computational Notice would have been reduced by approximately $4,400,000, and the interest asserted against the Herrmanns would have been proportionately reduced by approximately $800,000.  (*Id.* at 10.)

The foregoing undisputed facts establish Plaintiffs' right to a refund of the vast majority of the erroneous adjustment.  Although Defendant has now attempted to raise an issue with respect to $29,724 of the approximately $5,200,000,[2] as explained below in Section III, if the Court grants Plaintiffs' motion for partial summary judgment, the Court may concomitantly require the parties to work together to resolve all such computational issues— ranging from the $29,724 to the approximately $13,000 in *monthly* interest that continues to accrue on the erroneous adjustment.

---

[2] In the Motion, the $29,724 component was attributed to 2007, but should have been attributed to 2008. *See* Compl. ¶ 44, and Compl. Ex. 6B, at 000029.

**B.    Defendant raises facts that are irrelevant or are not material to the resolution of Plaintiffs' motion**

Defendant raises facts that are irrelevant to the resolution of Plaintiffs' motion for partial summary judgment. First, Defendant says that "[b]ecause plaintiffs are attempting to challenge the proper amount of gross income for tax year 2008, it would be premature and inappropriate for any refund to be immediately determined." (Def. Resp. at 4.) Defendant further claims that:

> Plaintiffs filed this refund suit arguing, inter alia, that the unreported $18 million payment should be considered to constitute income to the Herrmanns in *2009*. Now, they are asking the Court to give them a refund *for 2008* based on the foreign tax credit associated with the unreported $18 million payment. The foreign tax credit issue, however, cannot be resolved independently of the resolution of the taxpayer's proper amount of gross income for 2008 and 2009.

(*Id.*) (emphasis in original).

Defendant misunderstands the facts relevant to the resolution of Count One and Plaintiffs' motion. Whether the 2008 Bonus was earned in 2008 or 2009 is not in dispute for purposes of the motion for partial summary judgment. Indeed, Plaintiffs' motion assumes, *arguendo*, that Defendant is *correct* that the 2008 Bonus should be included in its entirety in Plaintiffs' income in 2008. Even after making that assumption, however, Plaintiffs are still entitled to a refund of the approximately $5,200,000 because granting the relief sought in Count One would simply correct the IRS's computational error by refunding tax and interest that the IRS had no authority to assess in the first place. It makes no difference to the determination of Count One whether Defendant or Plaintiffs ultimately prevail with respect to Counts Two, Three and Four.

Although the issue of whether the 2008 Bonus was earned in 2008 or 2009 is highly germane to Counts Two and Three, because the issue is conceded *arguendo*, it does not impact the amount of Plaintiffs' refund under Count One. Mechanically, if the Court were to grant

6

Plaintiffs' motion with respect to Count One, it would simply reduce the total amount in controversy (approximately $7,900,000) by the error-inflated amount (approximately $5,200,000) to arrive at the genuinely disputed amount (approximately $2,700,000) of tax in controversy. Thus, if the Herrmanns were *not successful* at trial with respect to either Count Two or Count Three, the IRS would keep the disputed amount of approximately $2,700,000. That possible outcome would in no way impact the resolution of Count One. Similarly, if the Herrmanns *were successful* with respect to either Count Two or Three, the IRS would owe a further refund to the Herrmanns of the remaining $2,700,000. Once again, that alternative outcome would not impact the resolution of Count One. Either way, if Plaintiffs' motion for partial summary judgment were granted, the parties would only have to litigate the amount that is genuinely in controversy—approximately $2,700,000—rather than an amount inflated by approximately $5,200,000 due to the computational error.

Consequently, because Count One assumes *arguendo* that the 2008 Bonus should be included in Plaintiffs' income in 2008, and because the facts concerning whether the 2008 Bonus was earned in 2008 or 2009 are not in dispute for purposes of Count One, the Court should grant Plaintiffs' motion for partial summary judgment.

Second, Defendant has questioned a $29,724 component of the approximately $4,426,000 U.K. tax paid and claimed as a credit by Plaintiffs for 2008 and reflected in their motion for partial summary judgment. (Def. Resp. at 7 n.3.)[3] This is a red herring. The approximately $4,426,000 amount of U.K. tax is consistent with the Complaint and supporting Exhibits. It has

---

[3] As discussed below, Plaintiffs are not required to prove each and every item involved in their tax return. *Pendergraft*, 94 Fed. Cl. at 87; *Missouri Pac. R.R. Co. v. United States*, 168 Ct. Cl. 86 (1964). Nonetheless, the fact that Plaintiffs paid U.K. tax in the amount of $29,724 is demonstrated by Exhibit 6 to the Complaint. *See* Compl. Ex. 6B, at 000029 (Plaintiffs' Statement in Explanation Accompanying the October 12, 2012 Claim For Refund and Administrative Adjustment Request), which under Court of Federal Claims Rule 10 is part of the pleadings for all purposes.

7

been described as "approximate" deliberately and consistently in recognition of the fact that the instant case is procedurally complex, and the application of foreign tax credits through the foreign tax credit mechanism is also complex, and can affect numerous taxable years. Those effects, however, are *computational* (as discussed in Section III below) and would be addressed by Plaintiffs and Defendant after the motion were decided. None of that should obscure the fundamental foundation of the motion for partial summary judgment, namely, that the failure of the IRS to treat the 2008 Bonus as foreign source income both for purposes of the Computational Notice, and later when deciding the claim for refund and related AAR, resulted in and perpetuated a gross overpayment of tax by the Plaintiffs for 2008. Granting Plaintiffs' motion will compel the government to correct its error—an error it does not even dispute. The $29,724 item that Defendant complains of comprises less than 1% of the approximately $4,426,000 tax claimed as a credit by Plaintiffs. The precise amount of the refund due to Plaintiffs, taking into account the tax effects on other taxable years, can be computed after the motion is granted. Defendant's *ipse dixit* assertion disputing the $29,724 credit also does not constitute "evidence," and for that additional reason cannot preclude resolution of Count One by summary judgment.

Third, Defendant takes issue with an excerpt from a single exhibit cited by Plaintiffs. (Def. Resp. at 7-8, discussing Plaintiffs' Ex. 12.) Defendant argues that Plaintiffs omitted relevant language following a quoted passage, and that the omitted language somehow shows that it is not an undisputed fact that "'the IRS failed to consider the impact of [the] greater amount of the foreign source income on the Herrmann's foreign tax credit.'" (Def. Resp. at 8.) All of the language quoted by Plaintiffs (at 10), however, concerned the IRS's view of the law— and the IRS's recognition that Plaintiffs were entitled to a foreign tax credit. The exhibit merely

8

serves as additional confirmation of the computational error that Defendant has already *conceded* in this case.

The so-called omitted language, on the other hand, is irrelevant to Plaintiffs' motion for partial summary judgment. It merely demonstrates that the IRS, having acknowledged that it already had coerced an overpayment from Plaintiffs, was only willing to return that overpayment to Plaintiffs if it could coerce from them something else in return—a concession on all remaining issues. That attempt at coercion, although clothed in settlement terms, was not a genuine settlement offer—and is certainly not relevant to this motion. In any event, Defendants discussion of this exhibit as a basis to deny summary judgment is bizarre, given that Defendant claims it is "entirely irrelevant" to the resolution of the case. (Def. Resp. at 8.) Plainly, Defendant cannot raise a genuine issue of material fact with a document that it claims is "entirely irrelevant." For all of the foregoing reasons, any purported dispute with respect to Exhibit 12 cannot preclude summary judgment.

## II. **Defendant Does Not Dispute the Law Relevant to the Resolution of Plaintiffs' Motion**

Defendant does not dispute Plaintiffs' explanation of the foreign tax credit regime under Code sections 901 and 904 set forth on pages 13 through 16 of Plaintiffs' motion. (Doc. No. 20, at 13-16.) Indeed, Defendant *admits* that "plaintiffs are entitled to an appropriate foreign tax credit, pursuant to §§ 901 and 904 for foreign taxes paid." (Def. Resp. at 8.)

Defendant also does not dispute that section 904(c) requires any foreign tax credits which are unusable in a given taxable year because of the limitation in 904(a), to be carried back first to the prior taxable year and then, to the extent not used in the carryback year, they can be carried forward to later taxable years. (Doc. No. 20, at 15-16.) Nor does Defendant dispute that section

904(c) "leaves no room for administrative discretion once a taxpayer makes an election to claim the credit under section 901(a)." (*Id.* at 16.)

In light of the foregoing, and because Defendant previously admitted (and still does not dispute) that Plaintiffs paid full U.K. taxes on the 2008 Bonus and are entitled to a foreign tax credit for foreign taxes paid, Plaintiffs are entitled to an immediate refund of approximately $5,200,000.

### III.  Plaintiffs Have Established an Overpayment

Plaintiffs have established that they paid the erroneous Computational Notice that was inflated by an approximately $5,200,000 computational error.  Defendant does not dispute that Plaintiffs paid the erroneous adjustment or that the adjustment was wrongly inflated.  Defendant even admits that Plaintiffs paid full U.K. taxes on the 2008 Bonus and are entitled to a foreign tax credit.  Nevertheless, Defendant baldly asserts, without citation to any direct authority, that Plaintiffs "simply need to wait for a refund until their entire tax liability is determined by the Court . . ." (Def. Resp. at 8.)  This is so, claims Defendant, because "a refund cannot be issued to [P]laintiffs until after an overpayment has been determined for tax year 2008" (Def. Resp. at 4); because Plaintiffs "bear the ultimate burden to establish that they overpaid their tax for 2008" (*Id.*); and because "to determine an overpayment, the proper of amount of plaintiffs' gross income for the relevant year must be determined." (*Id.* at 4.)  In essence, Defendant argues here that a taxpayer cannot obtain a refund for a tax year in which there is another distinct issue pending before a court which might result in an even *greater* refund.  That is nonsense.

Plaintiffs have established an overpayment, and, consistent with *Pendergraft* and *Missouri Pacific Railroad Co.*, discussed below, the Herrmanns do not have to wait until all tax issues for 2008 and 2009 have been resolved before they may obtain a refund with respect to Count One.  This Court may grant Plaintiffs an immediate refund even though issues remain

outstanding (Counts Two through Four) which may impact the same taxable year. *See Pendergraft*, 94 Fed. Cl. at 87-88.

The word "overpayment" is not defined by the Code. Rather section 6401(a) and (b) merely states that it *includes* payment of any tax that is assessed or collected after the applicable statute of limitations has expired and any amount of allowable credits under sections 31 through 35 that exceed the tax imposed by subtitle A. The Supreme Court, however, has explained that the term "overpayment" means:

> any payment in excess of that which is properly due. Such an excess payment may be *traced to an error in mathematics or in judgment or in interpretation of facts or law*. And the *error* may be committed by the taxpayer *or by the revenue agents*. Whatever the reason, the payment of more than is rightfully due is what characterizes an overpayment.

*Liberty Glass Co.*, 332 U.S. at 531 (emphasis added); *see also United States v. Dalm*, 494 U.S. 596, 609 n.6 (1990) (stating that "[t]he commonsense interpretation is that a tax is overpaid when a taxpayer pays more than is owed, for whatever reason or no reason at all.").

Plaintiffs have established the existence of an overpayment. Plaintiffs paid the full amount stated in the erroneous Computational Notice. Defendant does not dispute that Plaintiffs paid the full amount of tax, or that the adjustment was wrongly inflated. Because the adjustment was inflated by the IRS's computational error, the IRS possessed no statutory authority to impose it. The error-inflated amount paid by Plaintiffs was indisputably "in excess of that which is properly due" *Liberty Glass Co.*, 332 U.S. at 531. It is also traceable to "*an error in mathematics or in judgment or in interpretation of facts or law*" by the IRS. *Id*. Consequently, the error-inflated amount paid by Plaintiffs necessarily constitutes an "overpayment." By granting Plaintiffs' motion for partial summary judgment, the Court would simply refund that

overpayment, and at the same time reduce the amount in controversy from an error-inflated amount to the genuinely disputed amount.

Contrary to Defendant's claims that "all tax items at issue in a given year must be determined for that year before a refund is determined" (Def. Resp. at 2), Plaintiffs do not need to prove each and every item for 2008 to establish an overpayment. *Pendergraft*, 94 Fed. Cl. at 87. In *Pendergraft*, the government argued—much as it does here—that:

> a "core principle" of the federal tax system is that taxpayers must be able to substantiate all elements of their tax liability and that this case is a "straightforward application" of that principle. Plaintiffs have not and cannot establish that they had an overpayment for 2001, because they have not and cannot substantiate *all* aspects of their income tax liability for 2001. . . . "Plaintiffs still have not established an overall overpayment of their 2001 tax liability, which is the controlling question."

*Id*. at 86 (emphasis in original) (internal quotation marks and citation omitted). The Court of Federal Claims, quoting *Missouri Pacific Railroad Co.*, *v. United States*, soundly rejected the government's argument:

> "[T]he government has the burden of going forward and showing that there is a reasonable basis in fact or in law for its setoff defense. By this *we mean that the government has to demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument, that there is some substance to its claim* and is not a mere fishing expedition or a method of discouraging taxpayers from seeking refunds on meritorious claims *because of the cost that would result in proving each and every item involved in a tax return*. In a case where the taxpayer raises specific issues as to a tax, and there is no good reason for the government to challenge the remainder of the items going to make up the tax, *the government should not be able to cast the burden on the taxpayer of proving each and every item*."

*Id*. at 86-87 (emphasis added) (quoting *Missouri Pac. R.R. Co.*, 168 Ct. Cl. at 91). Although *Pendergraft* did not purport to involve setoffs, the Court explained that the government was similarly arguing that Plaintiffs were "not entitled to their claimed tax refund, because they [had]

12

not documented and established their entire tax liability" for the year. *Id*. at 87. The Court held that the government's argument was "misplaced." To prevail in a "refund action, Plaintiffs are not required to prove each and every item" involved in their tax return. *Id*. The Court then granted partial summary judgment for the taxpayer on one tax issue, but denied summary judgment on a second tax issue that concerned the same taxable year. *Id*. at 87-88. Despite disposing of the first issue by partial summary judgment, the Court permitted the second issue to proceed to trial. *Id*. This Court may do the same thing here, and therefore should grant partial summary judgment for Plaintiffs on Count One, and allow Counts Two, Three and Four to proceed to trial.

Finally, although the refund figure would be subject to minor computational adjustments, such adjustments are present in virtually every tax refund case and are not a basis to defer ruling on an issue for which there is no genuine issue of law or material fact in dispute. *See, e.g.*, *Pendergraft*, 94 Fed. Cl. at 88. In *Pendergraft*, for example, after the Court of Federal Claims granted the taxpayer summary judgment on the first tax issue, it simultaneously ordered the parties to prepare a joint status report agreeing on a "money judgment" figure—*i.e.*, the amount of the refund—resulting from that grant of partial summary judgment, even though a second tax issue remained outstanding. *Id.* at 88; *see also Gingerich v. United States*, 77 Fed. Cl. 231, 247-48 (2007) (Lettow, J.) (following a determination that plaintiffs were entitled to a refund of a time barred tax assessment, this Court directed that "[t]he parties shall confer in an effort to resolve the specific amounts of the refunds due and shall submit a reckoning of the amounts on or before July 25, 2007, by agreement if possible, or separately, if agreement is not possible.").

Therefore, if the Court grants Plaintiffs' motion for partial summary judgment, Plaintiffs would expect to work together with Defendant to resolve any outstanding computational issues. *Pendergraft*, 94 Fed. Cl. at 88; *Gingerich*, 77 Fed. Cl. at 247-48.

## Conclusion

For the reasons described above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for partial summary judgment, require Defendant to refund Plaintiffs' overpayment of approximately $5,200,000, and instruct the parties to work together to resolve any outstanding computational issues concerning the refund.

                                              Respectfully Submitted,

                                              /s/ Nathan E. Clukey
                                              Nathan E. Clukey
                                                *Attorney of Record*
                                              Abraham N.M. Shashy, Jr.
                                                *Of Counsel*
                                              Ariana Wallizada
                                                *Of Counsel*
                                              KING & SPALDING LLP
                                              1700 Pennsylvania Ave., N.W.
                                              Washington, DC  20006
                                              Telephone:  (202) 737-0500
                                              Facsimile:  (202) 626-3737
                                              nclukey@kslaw.com
                                              hshashy@kslaw.com
                                              awallizada@kslaw.com

                                              *Counsel for Plaintiffs Jeffrey W. Herrmann and Mina Gerowin Herrmann*

DATED:  September 17, 2015

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 17, 2015, I electronically filed a copy of the foregoing reply to Defendant's response in opposition to Plaintiffs' Motion for Partial Summary Judgment and Memorandum in Support with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

               /s/ Nathan E. Clukey
               Nathan E. Clukey