# In the United States Court of Federal Claims

No. 14-941T

(Filed: October 23, 2015)

| | | |
|---|---|---|
| JEFFREY W. HERRMANN and<br>MINA GEROWIN HERRMANN,<br><br>                  Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>                  Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Tax case; claim for refund of individual income taxes paid pursuant to a notice by the IRS of computational adjustments following an audit of a partnership return; submission by a non-tax matters partner of an administrative adjustment request ("AAR") on Form 8082; compliance with instructions attendant to Form 8082; effect of I.R.C. §§ 6227(d), 6228(b)(2)(A)(i), 7422(h), Treasury Reg. § 301.6227(d)-1; jurisdiction to address the partnership items raised in the AAR in this partner-level refund proceeding; claim of right to participate meaningfully in administrative proceeding relating to the determination of partnership items; I.R.C. § 6224(a) |

Nathan E. Clukey, King & Spalding LLP, Washington, D.C. for plaintiffs. With Mr. Clukey on the briefs and at the hearing were Abraham N.M. Shashy, Jr. and Ariana Wallizada, King & Spalding LLP, Washington, D.C.

Matthew D. Lucey, Attorney, Tax Division, United States Department of Justice, Washington, D.C. for defendant. With Mr. Lucey on the briefs were Caroline D. Ciraolo, Acting Assistant Attorney General, Tax Division, and David I. Pincus, Chief, Court of Federal Claims Section, and G. Robson Stewart, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

      At the heart of this case is a payment in the amount of $18,748,838 ("$18 million payment") to plaintiff Mina Gerowin Herrmann from her employer, Paulson Europe LLP ("PELLP"). PELLP ordered this payment to be issued on New Year's Eve in 2008, but Ms. Herrmann did not receive it until a few days later. Mr. and Ms. Herrmann were and are U.S. citizens resident in London, and they paid taxes on the $18 million payment to the United Kingdom in 2009 at a rate higher than that which was applicable in the U.S. In a subsequent

audit of PELLP, the Internal Revenue Service ("IRS" or "government") determined that this payment was a partnership distribution to Ms. Herrmann, and therefore it should have been reported as income on plaintiffs' U.S. federal tax return for 2008. The Herrmanns dispute this characterization of the payment, as well as the IRS's determination that they owed $7,860,434.87 in taxes and interest for the 2008 tax year, on grounds that raise complex issues of partnership taxation and U.S. tax credits for foreign taxes paid.

In Count One of their complaint, the Herrmanns assert that even if they were obligated to report the $18 million payment on their 2008 U.S. tax return, the IRS overcharged them by approximately $5.2 million because it failed to carry back a foreign tax credit to which they were entitled based on income taxes they paid to the United Kingdom in 2009. In Count Two, the Herrmanns contend that the $18 million payment was not a partnership distribution but a bonus paid to Ms. Herrmann in her capacity other than as a partner, and therefore the plaintiffs—as cash-basis taxpayers—did not need to report the payment until they received it in 2009. The Herrmanns claim in Count Three that the IRS improperly denied their request to adopt the accrual accounting method for the purposes of the foreign tax credit in 2008. Finally, in Count Four plaintiffs assert that during the audit of PELLP in 2011 and 2012, the IRS violated certain provisions of the Tax Equity and Fiscal Responsibility Act ("TEFRA"), Pub. L. No. 97-248, 96 Stat. 324 (1982) (codified at 26 U.S.C. (Internal Revenue Code or "I.R.C.") §§ 6221-6234).

The government has moved to dismiss Counts Two and Four of the complaint under Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction and for failure to state a claim. Def.'s Mot. for Partial Dismissal ("Def.'s Mot."), ECF No. 21. Relatedly, plaintiffs have moved under RCFC 12(f) to strike as insufficient defendant's affirmative defense that this court does not have subject matter jurisdiction over Count Two. Pls.' Mot. to Strike, ECF No. 19. Plaintiffs have also moved under RCFC 56(a) for summary judgment on Count One. Pls.' Mot. for Partial Summ. Judgment (Pls.' Mot."), ECF No. 20. These motions have been fully briefed and were addressed at a hearing held on October 7, 2015. The court concludes that defendant's motion to dismiss should be denied. The court has jurisdiction over Counts Two and Four under I.R.C. §§ 6228(b) and 7422(h) because plaintiffs are challenging the IRS's denial of a properly submitted administrative adjustment request ("AAR") and seeking *de novo* consideration of determinations made during an audit subject to TEFRA. This decision moots plaintiffs' motion to strike. The court has also concluded that plaintiffs' motion for partial summary judgment should be denied because the court must consider all claims related to the same tax year before issuing any final judgment respecting that tax year.

## FACTS AND BACKGROUND[1]

### A. *Plaintiffs' Income and Tax Reporting in 2008 and 2009*

From 2005 to 2007, plaintiffs lived in New Rochelle, New York and Ms. Herrmann worked at Paulson & Co. Inc. ("Paulson & Co."), which is wholly controlled by John Paulson. Compl. ¶ 9.  Her responsibilities included analyzing investment opportunities for various hedge funds sponsored by Paulson & Co.  Compl. ¶ 9.  Each year, Ms. Herrmann received from Paulson & Co. both a draw of $350,000 and a bonus, the latter of which was determined by John Paulson based on fees from certain hedge funds managed by the company.  Compl. ¶ 10. Ms. Herrmann typically received the annual bonus in December.  Compl. ¶ 11.  The Herrmanns reported these bonuses and all other income on their U.S. federal tax returns for the years in which they were received, based on the "cash" accounting method.  Compl. ¶ 11.

In mid-2007, Paulson & Co. asked Ms. Herrmann to move to London to work for its affiliate, PELLP, a U.K. limited liability partnership.  Compl. ¶ 12.  At the time, PELLP had one majority partner (Paulson Ltd., which was wholly owned by Paulson & Co.) and two individual minority partners.  Compl. ¶¶ 12, 14; Def.'s Mot. at 2.[2]  Ms. Herrmann's responsibilities did not change substantially when she transferred to PELLP.  Compl. ¶¶ 12, 17.  On January 8, 2008, Ms. Herrmann joined PELLP as a member by signing a Deed of Adherence and contributing £30,000 to the partnership.  Compl. ¶ 15, Def.'s Mot. Ex. 1 (Deed of Adherence).[3]

---

[1]By filing a motion to dismiss on jurisdictional grounds under RCFC 12(b)(1), the government put jurisdictional facts at issue.  Those facts have been contested by the Herrmanns, and the court accordingly has resolved the resulting dispute by making findings of jurisdictional fact.  *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the [d]istrict [c]ourt's jurisdiction is raised, . . . the court may inquire by affidavits or otherwise, into the facts as they exist."), *overruled by implication on other grounds by Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949); *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993); *Midwest Tube Fabricators, Inc. v. United States*, 104 Fed. Cl. 568, 574 (2012); *Nez Perce Tribe v. United States*, 83 Fed. Cl. 186, 188 (2008).
   In other respects, the court has drawn upon the submissions of the parties attendant to the pending motions to provide a background and context for the case.

[2]PELLP "was incorporated in England and Wales on 1 February 2006."  Def.'s Mot. Ex. 2, at 5 (Paulson Europe LLP Limited Liability Partnership Agreement (June 30, 2006)). PELLP's "Accounting Year" was "a calendar year ending on a Year End Date," defined to be "March 31 or such other date as may be determined in accordance with the provisions of th[e partnership] Agreement."  *Id*.  Thus, PELLP's Accounting Year was structured to accord with the U.K.'s tax year, which is different from the calendar-based tax year ordinarily applicable in the U.S.
   The exhibits to defendant's brief are sequentially paginated and it is that pagination that will be cited rather than the pagination particular to the pertinent exhibit.

[3]The Deed of Adherence added Ms. Herrmann as the "Further Member," and provided that she as the "Further Member shall not be a Designated Member for purposes of clause 18 of

3

After her transfer, Ms. Herrmann received monthly draws from PELLP equivalent to the annual draw of $350,000 she had previously received from Paulson & Co. Compl. ¶¶ 13, 17; Def.'s Mot. at 3. On December 31, 2008, PELLP directed that a payment be made to Ms. Herrmann in the amount of £12,764,732 (equivalent to $18,748,838). Compl. ¶¶ 18-19; Def.'s Mot. at 3. Ms. Herrmann's bank received this payment on January 5, 2009, and it was credited to her account on January 6, 2009. Compl. ¶ 19; Answer ¶ 19.

The Herrmanns engaged Frank Hirth plc. ("Frank Hirth") for assistance in preparing their U.S. federal tax return for 2008. Compl. ¶¶ 22-23 & Ex. 6C, at HER-901 to -02.[4] Plaintiffs did not receive a Schedule K-1 or equivalent partnership U.S. tax information from PELLP for the 2008 tax year. Compl. ¶ 23-24; Hr'g Tr. 9:3-11 (Oct. 7, 2015).[5] As a result, plaintiffs reported the monthly draws Ms. Herrmann received from PELLP in 2008 on their U.S. tax return, but not the $18 million payment they received on January 6, 2009. Compl. ¶¶ 23, 25 & Ex. 6C, at HER-901 to -02, -912, -921 to -22, -940 to -42; Def.'s Mot. at 3.

The Herrmanns also engaged Frank Hirth to prepare their U.K. tax return for the U.K. tax year ending on April 5, 2008 ("2008 U.K. tax return"). Compl. ¶ 22. Plaintiffs filed their 2008 U.K. tax return on October 9, 2008, reporting Ms. Herrmann's income from PELLP during the relatively short period beginning January 15, 2008 and extending through March 31, 2008 in the amount of £106,382. Def.'s Mot. Ex. 5 (2008 U.K. Tax Return).[6] For the U.K. 2008 tax year, Ms. Herrmann paid £177,704 ($270,289) in taxes to the U.K. Compl. Ex. 5, at HER-16 (Excerpts from IRS Claim Disallowance Letter). Based on this tax payment to the U.K., plaintiffs claimed a foreign tax credit of $87,871 on their original 2008 U.S. tax return. Compl. Ex. 5, at HER-17.

On December 19, 2009, plaintiffs filed their U.K. tax return for the U.K. tax year ending on April 5, 2009 ("2009 U.K. tax return"). Compl. ¶ 27 & Ex. 5, at HER-17; Answer ¶ 27. The

---

the [Limited Liability Partnership] Agreement." Def.'s Mot. Ex. 1, at 1. Clause 18 of the Agreement gave the Designated Members the responsibility for complying with the Limited Liability Partnerships Act of 2000 and the power to appoint PELLP's auditors. Def.'s Mot. Ex. 2, at 18. Paulson Ltd. and one individual were the Designated Members. *Id*. Ex. 2, at 23. Paulson Ltd. was also the "Corporate Member," and as such had "exclusive responsibility for the management and control of the Business and the affairs of the LLP." *Id*. Ex. 2, at 6, 16. Specifically, "[t]he Members other than the Corporate Member [had] no right or authority to act for the LLP or to take any part in the management of the LLP or to vote on matters relating to the LLP other than as provided in the Act or as set forth in this Agreement." *Id*. Ex. 2, at 16.

[4]The exhibits to plaintiffs' complaint are sequentially paginated, and it is that sequential pagination that will be cited rather than the pagination particular to the pertinent exhibit.

[5]The date of the hearing will be omitted from further citations to the hearing transcript.

[6]Exhibit 5 to Defendant's Motion is plaintiffs' amended 2008 U.K. tax return. On page 77, it states that this return is an amendment to the original return filed on October 9, 2008. However, the amended return is dated July 4, 2008; the court assumes this date misstates the year and should be July 4, 2009.

2009 U.K. tax return included the $18 million payment from PELLP, and the Herrmanns paid £6,035,448.77 ($9,777,427) in taxes to the U.K. for the 2009 U.K. tax year, at a tax rate higher than the highest U.S. tax rate. Compl. ¶ 27 & Ex.5, at HER-17; Answer ¶ 27. Based on this payment of taxes to the U.K., plaintiffs claimed a foreign tax credit of $5,087,454 on their 2009 U.S. tax return. Compl. Ex. 5, at HER-17.

In the fall of 2010, the Herrmanns received a Schedule K-1 from PELLP for the 2009 U.S. tax year. Compl. ¶ 28. This Schedule K-1 did not include the $18 million payment that Ms. Herrmann received from PELLP in January 2009. Compl. ¶¶ 28-29. The Herrmanns subsequently filed their 2009 U.S. tax return, reporting Ms. Herrmann's 2009 income from PELLP as indicated on the Schedule K-1, but not the $18 million payment. Compl. ¶ 29.

B. *The IRS's Audit of PELLP and Its Resulting Notice of Computational Adjustment*

In October 2011, the IRS began an administrative proceeding at the partnership level to audit PELLP. Compl. ¶ 30; Def.'s Mot. at 3 & Ex. 6, at 95 (Notice of Beginning of Administrative Proceeding). The IRS issued Ms. Herrmann a Notice of Beginning of Administrative Proceeding on October 17, 2011, identifying her as a partner in PELLP. Def.'s Mot. Ex. 6, at 95. The notice instructed Ms. Herrmann to contact PELLP's Tax Matters Partner if she would like to participate in the proceedings, and informed her that, if applicable, the IRS would mail her "a notice of proposed changes upon completion of the audit." *Id*.[7]

Later, during the course of the IRS audit but before it was completed, Ms. Herrmann received a Schedule K-1 from PELLP for the 2008 U.S. tax year, showing a partnership distribution of $19,221,826 (including the $18 million payment). Compl. ¶ 30 & Ex. 1 (First 2008 PELLP Schedule K-1). The Schedule K-1 inaccurately reported Ms. Herrmann's foreign source income in Box 16 B as only $3,237,873. Compl. ¶ 31 & Ex. 1, at HER-1. Then, on April 13, 2012, the IRS issued plaintiffs a Notice of Computational Adjustment ("Notice") stating that based on the First 2008 PELLP Schedule K-1, plaintiffs had under-reported their income for 2008 and had a tax due of $6,686,901, plus penalties and interest to be determined. Compl. ¶ 33; Def.'s Mot. Ex. 9, at 116 (Notice of Computational Adjustment). The Notice included Form 4549-A, Income Tax Discrepancy Adjustments, which applied the foreign tax credit of $87,871 reported on plaintiffs' original 2008 U.S. tax return to the recalculated tax liability. Def.'s Mot. Ex. 9, at 116. The Notice also included Form 886-A, which summarized the IRS's findings with regard to the adjustment and concluded that all of the income reported for Ms. Herrmann on the First 2008 PELLP Schedule K-1 was a partnership distribution to Ms. Herrmann and therefore was includable in her income for purposes of her 2008 U.S. tax liability. *Id*. Ex. 9, at 119-126.

Ms. Herrmann and representatives from Frank Hirth participated in a telephonic conference with the IRS audit team on July 6, 2012. Compl. ¶ 32 n.3 & Ex. 2 (E-Mail from IRS Senior Team Coordinator). During the call, Ms. Herrmann and her representatives disputed some of the information in Form 886-A and asserted that Ms. Herrmann had neither previously nor timely received the First 2008 PELLP Schedule K-1. Compl. Ex. 2, at HER-5. They also

---

[7]PELLP's Tax Matters Partner was Paulson Ltd., its "Corporate Member." *See supra*, at 3 n.3.

5

requested that the IRS hold the audit closing conference in person rather than telephonically. *Id.* The IRS team stated that they preferred a telephonic conference "due to the lack of substantive issues in the partnership examination." *Id.* At that time, the IRS audit team characterized Ms. Herrmann as a "less than 1% partner" in PELLP and a "non[-]notice partner," which would not entitle her to participate in the closing conference. *Id.*[8] Nevertheless, Ms. Herrmann's representatives participated in the closing conference later that month. Def.'s Mot. at 4.

The IRS closed the PELLP audit on August 30, 2012. Pls.' Mot. at 8 & Ex. 11 (IRS No-Adjustments Letter). Although the IRS made a computational adjustment to the Herrmanns' 2008 U.S. tax return, it did not make any partnership-level adjustments as a result of the audit. Def.'s Mot. at 3-4 & Ex. 7 (Form 4605, Examination Changes), Ex. 8 (Letter to PELLP Tax Matters Partner); Pls.' Mot. Ex. 11.

### C. *Plaintiffs' Notice of Tax Due and Subsequent Appeals*

PELLP issued Ms. Herrmann an amended Schedule K-1 for 2008 on July 17, 2012, approximately six weeks before the IRS closed the PELLP audit. Compl. ¶ 34 & Ex. 3 (Revised 2008 PELLP Schedule K-1). The revised Schedule K-1 stated Ms. Herrmann's foreign source income as $21,499,055. Compl. Ex. 3. Just short of two weeks later, on July 30, 2012, the IRS issued plaintiffs a Notice of Tax Due and Notice of Intent to Levy showing tax and interest due of approximately $7.5 million. Compl. ¶ 33 & Ex. 6A (Refund Claim); Def.'s Mot. at 4. The Notice of Tax Due did not revise the foreign tax credit applied in the original computational adjustment ($87,871), notwithstanding the revised Schedule K-1 showing a significant increase in the amount of Ms. Herrmann's foreign source income for 2008 ($21,499,055 versus $3,237,873). Compl. ¶ 35.

In response to the Notice of Tax Due, plaintiffs filed an amended 2008 U.S. tax return on August 24, 2012, reporting the $18 million payment as partnership income and claiming a foreign tax credit of $6,691,965, based on foreign taxes *accrued* as of December 31, 2008 ($7,264,947). Compl. ¶ 36 & Ex. 6C, at HER-158, -175, -179 to -81.[9] Based on this amended return, plaintiffs paid an additional tax due of $37,601. Compl. ¶ 36. The IRS did not accept the amended 2008 return as fulfillment of the plaintiffs' tax obligation. Compl. ¶ 37.

---

[8]The government addressed the resulting issue in a reply brief, submitting an affidavit from the Senior Team Coordinator, Joseph Scott, indicating that the team had misspoken at this conference and had later contacted Ms. Herrmann and her representatives to inform them that Ms. Herrmann was in fact a notice partner and entitled to participate in the closing conference. Def.'s Reply to Pls.' Resp. to Def.'s Mot. ("Def.'s Reply") Ex. A (Decl. of Joseph Scott), ECF No. 27.

[9]Plaintiffs were cash-basis taxpayers, not accrual-basis taxpayers, but they sought permission to file their amended 2008 U.S. tax return as accrual-basis taxpayers for foreign-tax credit purposes. They did not then seek to apply the one-year carryback provisions of I.R.C. § 904(c) to their 2008 amended return, although the carryback and carryover provisions of Subsection 904(c) were later put at issue.

On October 11, 2012, plaintiffs made a payment to the IRS of $7,860,434.87 ($6,649,300 in taxes and $1,211,134.87 in interest) to satisfy fully the amount stated to be due in the Notice. Compl. ¶ 38 & Ex. 4 (IRS Payment Voucher); Def.'s Mot. at 4.  The following day, plaintiffs, through Frank Hirth, submitted three documents to the IRS.  Compl. ¶ 39.  The first was a Form 843, Claim for Refund and Request for Abatement, requesting a refund in the amount of $7,860,434,87.  Compl. Ex. 6A (Claim for Refund).  The second was a statement from Frank Hirth explaining the refund claim.  Compl. Ex. 6B (Statement in Explanation of Claim for Refund).  The third was a series of forms in support of Alternative Claim 1 outlined in the Frank Hirth statement, asserting that the $18 million payment to Ms. Herrmann from PELLP should be classified under I.R.C. § 707(a)(2) as a payment to Ms. Herrmann in her capacity other than as a partner.  Compl. Ex. 6C (Alternative Claim 1).  Plaintiffs also asserted that they validly elected the accrual accounting method for purposes of the foreign tax credit (Alternative Claim 2), and that, still alternatively, they were entitled under the cash accounting method to carry back their 2009 foreign tax credit to the 2008 tax year (Alternative Claim 3).  Compl. Ex. 6B.

The forms submitted to support Alternative Claim 1 included plaintiffs' amended 2008 U.S. tax return from August 2012, as well as a second amended return showing a refund due based on plaintiffs' assertion that the $18 million payment should not have been reported as income in 2008, but rather in 2009 when the plaintiffs received it.  Compl. Ex. 6C, at HER-46 to -257.  With the second amended return was Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request.  Compl. Ex. 6C, at HER-91 to -92. In Form 8082, plaintiffs stated that $21,150,068 of the income reported on the first amended 2008 U.S. tax return and on the 2008 PELLP Schedule K-1 was a payment to Ms. Herrmann "in her capacity as other than a partner," and the form was intended to address this discrepancy.  Compl. Ex. 6C, at HER-91 to -92.  At the top of the form, plaintiffs checked Box 1(a) for "Notice of inconsistent treatment," but did not check Box 1(b) for "Administrative adjustment request."  Compl. Ex. 6C, at HER-91.

Plaintiffs' counsel conferred with IRS representatives about the refund claim in the following months, including during a conference call on December 7, 2012.  Compl. Ex. 6D (Supplemental Letter in Support of Refund Claim).  Plaintiffs, through counsel, also submitted a supplemental letter to the IRS on December 20, 2012, focusing primarily on the argument in Alternative Claim 1 that the $18 million payment should be considered a payment to Ms. Herrmann in a capacity other than as a partner in PELLP.  Compl. Ex. 6D.

The IRS proposed disallowance of plaintiffs' refund claim on September 10, 2013. Compl. ¶ 39 & Ex. 5 (Excerpts from Claim Disallowance Letter); Def.'s Mot. at 5 & Ex. 10 (Claim Disallowance Letter).[10]  With regard to Alternative Claim 1 (that the $18 million payment to Ms. Herrmann was for services in a capacity other than as a partner), the IRS found that Ms. Herrmann had elected to be a partner in PELLP when she signed the Deed of Adherence and contributed £30,000 to the partnership, and her work with the partnership was consistent with payment of $18 million in her capacity as a partner.  Def.'s Mot. Ex. 10, at 135-41.  For

---

[10]The Claim Disallowance Letter also assessed an additional 20% accuracy-related penalty against plaintiffs in the amount of $1,337,380.20.  Compl. ¶ 39.  Plaintiffs have disputed that penalty in the United States Tax Court.  *See* Def.'s Notice to the Court, ECF No. 15. Accordingly, this penalty is not part of the refund claim currently before this court.

Alternative Claim 2 (plaintiffs' election of the accrual accounting method for purposes of the foreign tax credit), the IRS found that plaintiffs were bound by their previous elections to use the cash accounting method. *Id.* Ex. 10, at 147. Finally, for Alternative Claim 3 (that plaintiffs should be allowed to carry back the foreign tax credit to 2008), the IRS noted that plaintiffs had already carried forward some foreign tax credit from 2009 to 2010 and 2011, and that if they elected instead to carry back the credit to 2008, they must amend their returns for the subsequent years (which plaintiffs declined to do). *Id.* Ex. 10, at 148-55.

The Herrmanns filed a letter protesting the claim disallowance on October 30, 2013. Compl. ¶ 40; Def.'s Mot. at 5. The IRS Appeals Office held an appeals conference on April 16, 2014, followed by a series of telephonic hearings. Compl. ¶ 40; Def.'s Mot. at 5. Plaintiffs were unsuccessful in their appeal, and they filed their complaint in this court on October 3, 2014.

## ANALYSIS

Very few aspects of the proceedings before the IRS, both at the partnership level and at the partner level, were conducted with precision or on an ordinary and customary procedural path. Instead, what is evident and problematic is the "IRS' muddled handling of this case." *Bedrosian v. Commissioner*, 143 T.C. 83, 113 (2014). In the circumstances, a number of unusual procedural issues have been raised along with questions related to the merits.

### A. *Jurisdiction Over Partnership Items in This Refund Case*

The court has jurisdiction over tax refund cases under the Tucker Act, 28 U.S.C. § 1491(a)(1), *see Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002), and I.R.C. § 7422, which governs the specific procedural requirements for such cases, *see Sandoval Lua v. United States*, __ Fed. Cl. __, __, 2015 WL 5656125, at *2 (2015). Subsection 7422(a) requires taxpayers to file a tax refund claim with the IRS before pursuing the claim in federal court. I.R.C. § 7422(a). Subsection 7422(h) bars claims for the refund of taxes related to partnership items "except as provided in section 6228(b) or section 6230(c)." I.R.C. § 7422(h).[11] The statutory provisions cited in Subsection 7422(h) address consideration of partnership items in partner-level proceedings and the effect of partnership items on a partner's return. Subsection 6228(b) provides that "[i]f the Secretary fails to allow any part of an administrative adjustment request filed . . . by a partner[,] . . . such partner may, pursuant to section 7422, begin a civil action for refund of any amount due by reason of the adjustments." I.R.C. § 6228(b)(2)(A). Subsection 6230(c) provides that "[a] partner may file a claim for refund on the grounds that the Secretary erroneously computed any computational adjustment necessary to make the

---

[11]A partnership item is defined in I.R.C. § 6231(a)(3) as "any item required to be taken into account for the partnership's taxable year . . . to the extent regulations prescribed by the Secretary provide that . . . such item is more appropriately determined at the partnership level than at the partner level." For purposes of the government's motion for partial dismissal, plaintiffs concede *arguendo* that the determination of whether Ms. Herrmann was a partner in PELLP, and if so, whether the $18 million payment was for services other than in her capacity as a partner, is a "partnership item" under Paragraph 6231(a)(3). Pls.' Opp'n at 2-3.

partnership items on the partner's return consistent with the treatment of the partnership items on the partnership return." I.R.C. § 6230(c)(1)(A)(i).

In this case, the government contends that Subsection 6230(c) provides the only exception to the restriction on refund claims dependent upon partnership items. As the government would have it, the Herrmanns are limited to challenging the IRS's computational adjustment to Ms. Herrmann's partnership income derived from the PELLP audit. Def.'s Mot. at 10-11. The government asserts that the exception related to an AAR in Subsection 6228(b) does not apply to this case because the Herrmanns did not file a valid AAR, and therefore they may not challenge whether Ms. Herrmann was a partner in PELLP or whether the $18 million payment made to her by PELLP was made in her capacity as a partner (Count Two). *Id.* at 11-19. The Herrmanns counter that they submitted a valid AAR with the refund claim in October 2012, giving the court jurisdiction to address the partnership items raised in that AAR following the IRS's denial of the associated refund claim. Pls.' Resp. in Opp'n to Def.'s Mot. ("Pls.' Opp'n") at 3-14, ECF No. 25; *see also* Pls.' Mot. to Strike at 5-8.

I.R.C. § 6227 establishes the procedure for filing an AAR to request conversion of items previously determined to be partnership items into non-partnership items. Any partner may file an AAR within three years of when the partnership return for the tax year is filed, or the last day for filing such a return, whichever is later, as long as the AAR is filed before the tax matters partner is mailed a notice of final partnership administrative adjustment for the tax year. I.R.C. § 6227(a). This limitations period is extended "for the period within which an assessment may be made pursuant to an agreement [between the IRS and the partner]." I.R.C. § 6227(b); *see also* I.R.C. § 6229(b) (providing for extensions of the period of limitations for making assessments against partners). For an AAR from a partner other than the tax matters partner, the IRS can (1) process the request as it would a refund claim for non-partnership items, (2) assess additional tax resulting from the adjustments, (3) notify the partner that the relevant partnership items shall be treated as non-partnership items, or (4) conduct a partnership proceeding. I.R.C. § 6227(d).

In 26 C.F.R. (Treasury Regulation or "Treas. Reg.") § 301.6227(d)-1, the Department of the Treasury provides parameters and specifications for filing an AAR on behalf of a partner who is not the tax matters partner. An AAR "shall be *filed on the form prescribed by the Internal Revenue Service* for that purpose *in accordance with that form's instructions*." Treas. Reg. § 301.6227(d)-1(a) (emphasis added). The regulation further states that:

Except as otherwise provided in that form's instructions, the request shall—

(1) Be filed in duplicate, the original copy filed with the partner's amended income tax return (on which the partner computes the amount by which the partner's tax liability should be adjusted if the request is granted) and the other copy filed with the service center where the partnership return is filed (but, if the notice described in section 6223(a)(1) (beginning of an administrative proceeding) has already been mailed to the tax matters partner, the statement should be filed with the Internal Revenue Service office that mailed such notice);

9

(2) Identify the partner and the partnership by name, address, and taxpayer identification number;

(3) Specify the partnership taxable year to which the administrative adjustment request applies;

(4) Relate only to partnership items; and

(5) Relate only to one partnership and one partnership taxable year.

*Id.*

The "form prescribed by the Internal Revenue Service" for filing an AAR is Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request.[12] The IRS has also published a three-page document of instructions for Form 8082. *See* Instructions for Form 8082 (Rev. December 2011) ("Instructions"). For a notice of inconsistent treatment, taxpayers are instructed to "[u]se Form 8082 to notify the IRS of any inconsistency between [their] tax treatment of an item and the way the [partnership] treated and reported the same item on its return." *Id*. at 1. For an AAR, the Instructions indicate that the form is used "to correct a previously filed return," including "[a] request by a partner . . . to correct [partnership] items on that person's income tax return." *Id.* Line 1 of Form 8082 contains two boxes; box (a) is labelled "Notice of inconsistent treatment" and box (b) is labelled "Administrative adjustment request." The Instructions state:

---

[12]Some courts have held that an amended tax return filed without an attendant Form 8082 is insufficient to serve as an AAR. *See Shirley v. United States*, No. 3:11-CV-323-DW, 2013 WL 504896, at *14 (W.D. Ky. Feb. 8, 2013); *Rothstein v. United States*, No. 97-647T, 1998 WL 331582 (Fed. Cl. 1998); *Phillips v. Commissioner*, 106 T.C. 176, 181 (1995). Other courts have suggested that an amended return by itself could constitute a valid AAR if the return met the substantive requirements of I.R.C. § 6227 and Treas. Reg. § 301.6227(d)-1. *See Rigas v. United States*, 486 Fed. Appx. 491, 498-99 (5th Cir. 2012); *Samueli v. Commissioner*, 132 T.C. 336, 343-44 (2009) (citing *Wall v. United States*, 133 F.3d 1188 (9th Cir. 1998), for the proposition that an amended return could constitute an AAR, but relying on the substantial-compliance doctrine for the result). At least two courts have explicitly found that an amended return filed without Form 8082 is a valid AAR when the amended return otherwise complies with the relevant statute and regulation. *See Wall v. United States*, 89 F.3d 848 (9th Cir. 1996) (unpublished table decision); *United States v. Stewart*, __ F. Supp. 3d __, 2015 WL 5009363 (S.D. Tex. Aug. 20, 2015), *appeal docketed*, No. 15-2059 (5th Cir.).

Correspondingly, submission of a Form 8082 that omits information explicitly required by statute and regulation can be ineffective as an AAR. *See Metro Riverboat Assocs. Inc. v. United States*, No. 05-3109, 2006 WL 3923975, at *3 (E.D. La. Nov. 16, 2006) (A Form 8082 that omitted the partnership's identity, the identifying number of the partnership, and the IRS center where the partnership return was filed had defects that were "not merely technical," but "substantial."), *aff'd*, 264 Fed. Appx. 461 (5th Cir. 2008).

>Check box (a) if you believe an item was not properly reported on the Schedule K-1 . . . you received, or you have not received a Schedule K-1 . . . by the time you are required to file your tax return (including extensions).
>
>Check box (b) if you are filing an AAR on which you are requesting a change in the amount or treatment of any item from the way you reported it on your return as originally filed or as you later amended it.
>
>Check both boxes if a partner . . . is reporting an item on his or her AAR differently from the way that the item was reported on his or her original return and inconsistently with the way the [partnership] reported the item.

*Id.* at 3.

Here, the Herrmanns filed Form 8082 with their second amended 2008 U.S. tax return, in support of Alternative Claim One in their October 2012 refund claim. Compl. Ex. 6C, at HER-91 to -92. On Line 1 of the form, plaintiffs checked box (a) (Notice of inconsistent treatment), but did not check box (b) (Administrative adjustment request). Compl. Ex. 6C, at HER-91. The government points to this line of the form as the fatal flaw in plaintiffs' AAR, asserting that plaintiffs' failure to check box (b) made the AAR procedurally invalid. Def.'s Reply to Pls.' Opp'n at 5-7, ECF No. 27.[13]

The court disagrees. Contrary to defendant's assertions, the Herrmanns precisely complied with the IRS's published instructions for Form 8082. The relevant Treasury Regulation specifically instructs taxpayers to file an administrative adjustment request "in accordance with [Form 8082's] instructions." Treas. Reg. § 301.6227(d)-1(a). Based on these instructions, the Herrmanns checked box (a) on Line 1 because they believed the $18 million payment was not properly reported on the 2008 Schedule K-1 with which they were presented as part of the PELLP audit. Additionally, the instructions state that both boxes should be checked if the partner is reporting an item "differently from the way that the item was reported on his or her *original* return." Instructions at 3 (emphasis added). The Herrmanns were not reporting the $18 million payment differently from the way it was reported on their original 2008 return; rather, they were reporting it exactly the same way as they did on their original return, which is to say they were not reporting it as includable income for the 2008 tax year. Therefore, under a precise

---

[13]The government also argues that plaintiffs' "purported AAR" was "substantively defective" because the relevant regulation states that AARs shall "[r]elate only to partnership items," Treas. Reg. § 301.6227(d)-1(a)(4), and plaintiffs' *refund claim* also relates to non-partnership items such as application of the foreign tax credit. This contention by the government respecting the regulation is flawed. The regulation lists elements that must be present in an AAR, along with the requirement that a single AAR must be used only for partnership items for one partnership in one partnership taxable year. The court understands this as a limitation on what information the IRS will consider in a single AAR, not as a bar against the taxpayer from submitting other information to the IRS on the same day. Therefore, the fact that the Herrmanns also addressed non-partnership items in their separate but attendant refund claim does not invalidate their Form 8082.

11

reading of the Form 8082 instructions, the Herrmanns could not have checked both boxes on Line 1 based on their situation. The government's argument to the contrary, *i.e.*, that to file an AAR they had to check box (b), is intuitively understandable, but it sidesteps the explicit instructions for the form.[14]

The government does not dispute that plaintiffs complied with the relevant filing steps for an AAR identified in clauses (1)-(5) of Treas. Reg. § 301.6227(d)-1(a). The Form 8082 was filed in duplicate, it appropriately identified PELLP as the relevant partnership, it listed the pertinent tax year, it concerned only PELLP's partnership items, and it focused only on the 2008 tax year. *See*, *e.g.*, Compl. Ex. 6C, at HER-91 to -92.[15]

---

[14]As counsel for the government stated at the hearing, "[d]efendant's argument is that they should have checked the box that clearly says 'administrative adjustment request.' There's no — you can't read that box any other way." Hr'g Tr. 20:19-22. The government also contends that plaintiffs' interpretation of the instructions reads the word "only" into the instructions. Hr'g Tr. 21:7-12. This aspect of the government's argument refers to that part of the instruction for Form 8082 that states: "Check both boxes if a partner . . . is reporting an item on his or her AAR differently from the way that the item was reported on his or her original return." The government's position is that plaintiffs are inserting "only" either after the word "boxes" or between the words "reported" and "on." In this connection, the government draws attention to the fact that the Herrmanns filed first and second amended returns. Hr'g. Tr. 24:7-24. The Herrmanns respond that:

> We're not inserting the word "only." When you look at the instructions, we clearly had to comply with the check Box A because that was applicable. Box B references an amended return and an original return. And then when you get down to the instructions that say both, check both boxes, it omits the amended return. It only relates to an original. So, we're not saying only. We're saying that it was not wrong for the [p]laintiffs to file the way that they did.

Hr'g Tr. 53:4-12.
   The Herrmanns have the better of this dispute over interpretation of the instructions for Form 8082. If the Treasury wanted to refer both to the original return and any amended return, it well knew how to do so, as it had done exactly that in the portion of the instructions which called for checking box (b), but not for checking both boxes. This interpretation is at first glance counter-intuitive, but that circumstance is entirely attributable to the specific text. Particularly where the Treasury Regulation calls for "fil[ing] on the form prescribed by the Internal Revenue Service for that purpose *in accordance with that form's instructions*," Treas. Reg. § 301.6227(d)-1(a) (emphasis added), the court has no leeway to recast the instructions as the government now wishes they had been written. The Department of the Treasury might usefully draft better instructions for Form 8082 to forestall similar disputes in the future.

[15]Additionally, the first sentence of the Frank Hirth statement accompanying the refund claim and the attendant Form 8082 explicitly stated: "Pursuant to sections 6227, 6230, and 6402 [of the I.R.C.], this statement is submitted in support of the refund claims *and related request for*

12

Moreover, the IRS well knew that the Herrmanns were filing an AAR in conjunction with their refund claim. Internal IRS correspondence demonstrates that the IRS recognized that plaintiffs were submitting an AAR. *See* Pls.' Opp'n Exs. 2, 5.[16] The government thus cannot now argue that plaintiffs' failure to check box (b) on Form 8082 prevented the IRS from recognizing that plaintiffs were submitting an AAR as part of their refund claim. *Cf. Rigas v. United States*, 486 Fed. Appx. 491, 499 (5th Cir. 2012) (concluding that submitting Form 8082 was a procedural rather than a substantive requirement of an AAR, and that a refund claim could suffice as a AAR if it fulfilled all other substantive requirements of I.R.C. § 6227); *Taylor v. Commissioner*, 67 T.C. 1071, 1077-78 (1977) (holding that procedural or directory requirements of tax regulations "are not of the essence of the thing to be done but given with a view to the orderly conduct of business," and that fulfillment of the substantive requirements of the regulations is sufficient).[17]

---

*administrative adjustment* filed on behalf of [the Herrmanns]." Compl. Ex. 6B, at HER-27 (emphasis added).

[16]On September 30, 2015, plaintiffs filed a Motion for Leave (ECF No. 29) to file an additional exhibit (Exhibit 5) to Plaintiffs' Opposition. The government's counsel received notice that plaintiffs would refer to that exhibit before the government filed its reply brief. The exhibit consists of e-mails between and among members of the IRS Exam Team that reviewed the Herrmanns' October 2012 refund claim; plaintiffs received these e-mails as a result of a request under the Freedom of Information Act. The government opposed the Motion for Leave on October 2, 2015 on the ground that the proffered exhibit is irrelevant to defendant's motion for partial dismissal. The court grants plaintiffs' motion to file the additional exhibit and finds that it is relevant to the question of whether the IRS had sufficient notice that plaintiffs were filing an AAR attendant to their refund claim.

[17]Because the court concludes that plaintiffs complied with the instructions for submitting Form 8082, it need not reach the Herrmanns' argument that, notwithstanding their failure to check box (b), they substantially complied with the AAR requirements of I.R.C. § 6227 and Treas. Reg. § 301.6227(d)-1. *See* Pls.' Opp'n at 11-14. The Federal Circuit takes a narrow view of the "substantial compliance" doctrine. *See Credit Life Ins. Co. v. United States*, 948 F.2d 723, 726-27 (Fed. Cir. 1991). In *Credit Life*, the court of appeals quoted with approval the Seventh Circuit's test for substantial compliance: "We think the doctrine [of substantial compliance] should be interpreted narrowly, and point out that the courts of appeals owe no special deference to the Tax Court's [approval of the doctrine]. . . . The common law doctrine of substantial compliance should not be allowed to spread beyond cases in which the taxpayer had a good excuse (though not a legal justification) for failing to comply with either an unimportant requirement or one unclearly or confusingly stated in the regulations or the statute." *Credit Life*, 948 F.2d at 726-27 (quoting *Prussner v. United States*, 896 F.2d 218, 224 (7th Cir. 1990) (en banc)). *Credit Life* and *Prussner* are arguably inconsistent with *Rigas* and *Taylor*, at least in the context of AARs. Although the court is bound by the Federal Circuit's decision in *Credit Life*, there is no need to delve into the depth of that divergence in views, given the Herrmanns' explicit compliance with the instructions for submitting Form 8082. *See Riether v. United States*, 919 F. Supp. 2d 1140, 1150-51 (D.N.M. 2012) (noting the disagreement over application

13

Accordingly, the court has concluded that the government's motion to dismiss Count Two should be denied. This decision moots plaintiffs' motion to strike the government's jurisdictional defense. *See Cook v. United States*, __ Fed. Cl. __, __, 2015 WL 6163263, at *29 (2015) (denying a motion to strike as moot when the pertinent disputed issue was resolved on other grounds).

### B. *The Government's Alleged Violation of TEFRA During Its Audit of PELLP*

Separately, the government asserts that plaintiffs' allegations with regard to Count Four are too vague to establish jurisdiction because plaintiffs did not request specific monetary relief to redress the claim set out in that Count, nor did they specify how the IRS violated the provisions of TEFRA by excluding Ms. Herrmann from the PELLP audit.[18] The question about Count Four, however, is inextricably bound up in the court's resolution of Counts One and Two. If the court determines that Ms. Herrmann was a partner in PELLP during the relevant time period, it must also determine whether the $18 million payment was for services other than in her capacity as a partner under I.R.C. § 707(a)(2)(a). A decision by the court in this respect will be made as a result of a *de novo* proceeding that may consist of a trial of the relevant facts. *See George E. Warren Corp. v. United States*, 141 F. Supp. 935, 940 (Ct. Cl. 1956) ("The tax laws contemplate a trial *de novo*."); *Gingerich v. United States*, 77 Fed. Cl. 231, 240 (2007) ("A tax refund suit is a *de novo* proceeding."); *see also Wells Fargo & Co. v. United States*, 91 Fed. Cl. 35, 75 (2010), *aff'd*, 641 F.3d 1319 (Fed. Cir. 2011).

If Ms. Herrmann was in fact a partner in PELLP, the IRS had an obligation under I.R.C. § 6224 to allow her "to participate in any administrative proceeding relating to the determination of partnership items at the partnership level." I.R.C. § 6224(a); *see also Olson v. United States*, 172 F.3d 1311, 1317 (Fed. Cir. 1999) ("Every partner has the right to participate in the IRS's examination of the partnership's information return."); 2 Arthur B. Willis & Philip F. Postlewaite, *Partnership Taxation* ¶ 20.5[3] (7th ed. 2015) ("Any partner, including an indirect partner, has the right to participate in [TEFRA] proceedings."). It is not apparent what level of participation the IRS was required to afford Ms. Herrmann. The Deed of Adherence signed by

---

of the substantial-compliance doctrine but ruling on the pertinent issues in that case without deciding how narrow the *Prussner* approach might be).

[18]The government alternatively moved to dismiss Count Four for failure to state a claim under RCFC 12(b)(6). Def.'s Mot. at 1. However, the focus of the government's briefs and argument at the hearing respecting Count Four was on the jurisdictional question under RCFC 12(b)(1). When the court is presented with a motion to dismiss under both RCFC 12(b)(1) and 12(b)(6), it must first consider whether jurisdiction is proper and will "normally consider the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988); *see also Greenlee Cnty. v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007). Once the court determines that it has jurisdiction under the relevant statutes, "it consider[s] the facts specific to the plaintiff's case to determine 'whether on the facts [the plaintiff's] claim f[alls] within the terms of the statutes.'" *Greenlee Cnty.*, 487 F.3d at 876 (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Jan's Helicopter Serv., Inc. v. Federal Aviation Admin.*, 525 F.3d 1299, 1306 (Fed. Cir. 2008).

Ms. Herrmann when she joined PELLP indicated that Paulson & Co. was the "Corporate Member" (as well as the tax matters partner), and that "[t]he Members other than the Corporate Members [had] no right or authority to act for the LLP or to take any part in the management of the LLP or to vote on matters relating to the LLP other than as provided in the Act or as set forth in this Agreement."  Def.'s Mot. Ex. 2, at 16.

During the course of the audit, the IRS seemingly varied its position regarding whether Ms. Herrmann was a partner in PELLP who was entitled to full participation in the audit proceedings.  This variance led to the incongruous result that Ms. Herrmann was considered a partner for the purposes of the computational adjustment that reflected the First 2008 PELLP Schedule K-1, but she was not considered a partner with regard to her ability as an administrative matter to contest the adjustment, which apart from the partnership issue *vel non* had an admitted error regarding its statement of foreign-source income.  Accordingly, on the merits, the allegations of Count Four mesh with those of Counts One and Two and do not provide an independent basis for monetary relief.  In the circumstances, Count Four should be considered as supplementary to Counts One and Two, and thus it is tied in terms of redress to the merits of those Counts.  The government's motion to dismiss Count Four pursuant to RCFC 12(b)(1) and (6) should be denied.

C. *Plaintiffs' Motion for Partial Summary Judgment*

Finally, the Herrmanns have moved for partial summary judgment on Count One of the Complaint, which claims that even if the $18 million payment should have been reported on plaintiffs' 2008 U.S. tax return, they are still due a refund of approximately $5.2 million because the IRS failed to apply the foreign tax credit to which they were entitled based on their payment of taxes to the U.K. in 2009 at a higher rate than the highest applicable U.S. tax rate.  *See* Pls.' Mot. at 1-2.  In short, the Herrmanns contend that the court can now determine that they are owed a refund before considering any other issues, including the partnership question embedded in Count Two, because of the carryback of foreign tax credit.  The government objects that partial summary judgment is not available at this juncture because "all the tax items at issue in [a] given year must be determined for that year before a refund is determined."  Def.'s Resp. to Pls.' Mot. at 2.  The government emphasizes that "Congress adopted 'an annual accounting system as an integral part of the tax code.'"  *Id*. at 2-3 (quoting *United States v. Skelly Oil Co.*, 394 U.S. 678, 681 (1969)).  The Herrmanns respond that the court can grant partial summary judgment in tax refund cases where the issues are distinct and separable, citing *America Online, Inc. v. United States*, 64 Fed. Cl. 571 (2005) (granting partial summary judgment for the refund of excise taxes collected on individual long-distance telephone communications).

The resulting question is whether the issues associated with the Herrmanns' entitlement to a carryback to 2008 are sufficiently distinct from the question of whether Ms. Herrmann's $18 million bonus was received by her as a partner or in a capacity other than as a partner.  Ordinarily, the amount of income received by a taxpayer in a given year must be known at the time that the taxpayer's foreign tax credit is determined.  U.S. citizens are taxed on their worldwide income.  *See Cook v. Tait*, 265 U.S. 47, 56 (1924).  Gross income for the purpose of calculating a U.S. citizen's taxable income is defined as "all income from whatever source derived."  I.R.C. § 61(a).  I.R.C. § 901 grants a credit against U.S. income tax liability in "the

amount of any income . . . taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States." I.R.C. § 901(b)(1). I.R.C. § 904 specifically states that the "amount of the credit [in respect of the foreign tax] shall not exceed the same proportion of the [U.S.] tax against which such credit is taken which the taxpayer's [foreign source income] . . . bears to his entire taxable income for the same taxable year." I.R.C. § 904(a). Any excess foreign tax "shall be deemed taxes paid or accrued to foreign countries or possessions of the United States in the first preceding taxable year and in any of the first 10 succeeding taxable years, in that order and to the extent not deemed taxes paid or accrued in a prior taxable year." I.R.C. § 904(c). In other words, the Herrmanns would be entitled to a one-year carryback to 2008 of foreign taxes paid to the U.K. in 2009, even if Ms. Herrmann is ultimately determined to have received her bonus early in 2009 as a partner. The Herrmanns accordingly will be entitled to a substantial refund of taxes paid for 2008, but the amount of that refund will remain uncertain until all issues associated with that taxable year are resolved.

Ruling favorably now on plaintiffs' motion for a partial summary judgment as to Count One would consequently be a hypothetical exercise. No enforceable and realizable judgment could be entered under Count One alone.[19] Although RCFC 54(b) allows entry of judgment on one claim for relief, that rule does not aid the Herrmanns because their claim for refund embraces their taxes for the entire 2008 year, not just the one aspect of their tax liability for that year that is reflected in Count One.

The Federal Circuit has explicitly ruled that this court is barred from entering judgment on a refund claim if action on an aspect of a claim would not effect the disposition of other issues bearing on the refund of taxes within a single tax year. *Houston Indus. Inc. v. United States*, 78 F.3d 564, 568 (Fed. Cir. 1996) ("We are not persuaded that a ruling in a tax case on one but not all of the issues pertaining to a tax year can ever constitute a separate claim."). Therefore, under the rationale in *Houston Industries*, the court cannot enter judgment on Count One until it has also reached a final disposition of Counts Two and Three.

Accordingly, the court has concluded that plaintiffs' motion for partial summary judgment should be denied.

## CONCLUSION

For the reasons stated, the government's motion for partial dismissal is DENIED. Plaintiffs' motion to strike is DENIED as moot. Plaintiffs' motion for partial summary judgment is also DENIED.[20]

---

[19]In contrast, entry of summary judgment was possible in *America Online* because the tax in that case was an excise tax imposed on specific and particular long-distance telephone communications, not on such services provided over a period of time such as a year. As a result, the excise tax imposed and paid was readily determinable with exactitude.

[20]Plaintiffs' motion for leave to file an exhibit, ECF No. 29, is GRANTED.

On or before November 20, 2015, the court requests that the parties submit a joint status report that addresses further proceedings in this action.

It is so **ORDERED**.

                                                                    s/ Charles F. Lettow
                                                                    Charles F. Lettow
                                                                    Judge