# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JEFFREY W. HERRMANN AND )
MINA GEROWIN HERRMANN, )
                                   )
        Plaintiffs, )
                                     ) Case No. 14-941 T
                                     )
                                     ) Judge Charles F. Lettow
        v. )
                                       )
UNITED STATES OF AMERICA, )
                                     )
                                     )
        Defendant. )
_____)

---

## PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW (PRETRIAL MEMORANDUM)

---

*Counsel of Record:*
Nathan E. Clukey
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: nclukey@kslaw.com

*Counsel for Plaintiffs Jeffrey W. Herrmann and Mina Gerowin Herrmann*

*Of Counsel:*
Ariana Wallizada
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: awallizada@kslaw.com

*Counsel for Plaintiffs Jeffrey W. Herrmann and Mina Gerowin Herrmann*

*Of Counsel:*
Abraham N.M. Shashy, Jr.
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
Email: hshashy@kslaw.com

*Counsel for Plaintiffs Jeffrey W. Herrmann and Mina Gerowin Herrmann*

**TABLE OF CONTENTS**

**Page**

**TABLE OF AUTHORITIES** ......................................................................................... iii

**INDEX TO APPENDIX** .............................................................................................. v

**I.** **Introduction** ..................................................................................................... 1

**II.** **Concise Statement of Facts** ........................................................................... 4

   *A.* *Ms. Gerowin Herrmann's compensation, and particularly the 2008 Bonus, were not tied to the profits of PELLP, nor was she a partner in PELLP for U.S. tax purposes.* ..................... 4

   *B.* *The Herrmanns timely paid all U.K. income taxes and sought, in good faith, to timely pay all U.S. income taxes.* ................................................................................... 10

   *C.* *The IRS illegally excluded plaintiffs from the PELLP TEFRA audit and consciously ignored plaintiffs' correct foreign tax credits.* ......................................................... 13

   *D.* *Plaintiffs' Position with respect to the Facts on which Defendant is Expected to Rely* ... 21
      *1.* *Count One* ............................................................................................. 23
      *2.* *Count Two* ............................................................................................. 26
      *3.* *Count Three* .......................................................................................... 34
      *4.* *Count Four* ............................................................................................ 35

**III.** **Statement of Issues of Fact and Law** ........................................................ 37

**IV.** **Summary of Relevant Law** ........................................................................... 37

   *A.* *Plaintiffs' Position* ....................................................................................... 37
      *1.* *Count One - Application of the Code to the instant facts requires that plaintiffs' 2009 excess foreign tax credits should have been carried back to 2008, entitling plaintiffs to a refund of approximately $5,200,000 of taxes and interest improperly assessed as a result of the error in the Notice of Computational Adjustment* ......................................... 38
      *2.* *Count Two* ............................................................................................. 39
         a.  *Ms. Gerowin Herrmann was not a bona fide partner in PELLP for U.S. federal income tax purposes under the tests set forth in relevant caselaw and the 2008 Bonus should have been taxable when received by her in 2009* ................................................. 40
         b.  *Even if Ms. Gerowin Herrmann had been a bona fide partner for U.S. federal tax purposes, application of the five factors set forth in the legislative history accompanying 707(a)(2)(A) require treating the 2008 Bonus as a payment to Ms. Gerowin Herrmann in a non-partner capacity and, therefore, taxable when received in 2009* ........................... 44
            i)  *Payment Not Subject to Appreciable Risk* ......................................... 47

i

*ii)*   *Transitory Partner Status* ........................................................................ 50

*iii)*  *Close Temporal Relationship Between the Payment and the Performance of Services* .................................................................................................................... 51

*iv)*  *Tax Avoidance Purpose* ........................................................................... 53

*v)*   *Disproportionately Small Interest in Partnership Profits in Relation to the Allocation* ........................................................................................................ 54

*vi)*  *Totality of the Factors* ............................................................................. 54

3.   *Count Three – Plaintiffs' are entitled to accrue their U.K. taxes as of December 31, 2008 because plaintiffs' validly elected to adopt the accrual method under section 905(a) and the policy underlying the foreign tax credit requires that result* ................................... 57

4.   *Count Four – the IRS violated the provisions of TEFRA in multiple ways that led to the erroneous issuance of the Notice of Computational Adjustment* .......................................... 64

  B.   *Defendant's Position* ............................................................................... 67

    1.   *Count One* ............................................................................................ 67

    2.   *Count Two* ............................................................................................ 68

    3.   *Count Three* ........................................................................................ 77

    4.   *Count Four* ........................................................................................... 78

**V.**  **Plaintiffs' Witness List, Plaintiffs' Exhibit List, and Plaintiffs' Objections to Defendant's Witnesses and Exhibits** ......................................................................... **80**

**CERTIFICATE OF SERVICE**

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACM P'ship v. Comm'r*,
   157 F3d 231 (3d Cir. 1998) .................................................................................. 27

*Bookwalter v. Mayer*,
   345 F.2d 476 (8th Cir. 1965) ............................................................................... 59

*Callaway v. Comm'r*,
   231 F.3d 106 (2d Cir. 2000) ................................................................................ 65

*Comm'r v. Culbertson*,
   337 U.S. 733 (1949)................................................................................... passim

*Comm'r v. Tower*,
   327 U.S. 280 (1946)............................................................................................. 27

*Daniels Jewelers, Inc. v. United States*,
   279 F.2d 226 (1960)............................................................................................. 59

*Frank Lyon Co. v. United States*,
   435 U.S. 561 (1978)............................................................................................. 27

*Herrmann v. United States*,
   124 Fed. Cl. 56 (Ct. Fed. Cl. 2016) ...................................................... 2, 24, 39, 64

*Historic Boardwalk Hall, LLC v. Comm'r*,
   110 A.F.T.R 2d 2012-5710 (3d. Cir. 2012),
   *rev'g* and *remanding* 136 T.C. 1 (2011) ............................................................ 43

*In Re: G-I Holdings, Inc.*,
   105 A.F.T.R. 2d 2010-697 (D. N.J. 2009)............................................................ 53

*Nat'l Cable & Telecomm. v. Brand X Internet Servs.*,
   545 U.S. 967 (2005)............................................................................................. 58

*Olson v. United States*,
   172 F.3d 1311 (Fed. Cir. 1999) ........................................................................... 64

*Reaver v. Commissioner*,
   42 T.C. 72 (1964)................................................................................................. 59

*Santa Fe Drilling Co. v. Riddell*,
   217 F. Supp. 630 (S.D. Cal. 1963)....................................................................... 60

*Strong v. Willcuts,*
  36-1 U.S.T.C. 9032 (D. Minn. 1935)...................................................... 58, 59, 77

*TIFD III-E, Inc. v. U.S.,*
  459 F.3d 220 (2d Cir. 2006) ......................................................... 27, 41, 42, 68

**Regulations**

I.R.C. § 6222(c) ............................................................................................ 65

I.R.C. § 6223(d) ............................................................................................ 79

I.R.C. § 6224(a) ....................................................................................... 64, 65

I.R.C. § 6230 ................................................................................................ 65

I.R.C. § 704 ........................................................................................... 45, 50

I.R.C. § 706 ................................................................................................ 60

I.R.C. § 707(a) ....................................................................................... 49, 55

I.R.C. § 707(a)(1) ......................................................................... 45, 46, 47, 56

I.R.C. § 707(a)(2)(A) ............................................................................. passim

I.R.C. § 707(a)(2)(B) ................................................................................... 74

I.R.C. § 707(c) ............................................................................................ 56

I.R.C. § 761(a) ............................................................................................ 40

I.R.C. § 901 ....................................................................... 57, 59, 60, 67

I.R.C. § 901(a) ........................................................................................ 3, 67

I.R.C. § 904(a) ............................................................................................ 67

I.R.C. § 904(c) ....................................................................... 23, 24, 39, 67

I.R.C. § 905(a) ....................................................................................... passim

Treas. Reg. § 1.461-1(c)(3)............................................................................ 58

Treas. Reg. § 1.461-4(g)(6)(iii)(B) ............................................................... 59

Treas. Reg. § 1.905-2(a)(1)............................................................................ 58

**Legislative Material**

SENATE COMM. ON FINANCE,
  98TH CONG., 2D SESS., DEFICIT REDUCTION ACT OF 1984,
  S. PRT. NO. 169, VOL. I (Comm. Print 1984) .................................................. passim

# INDEX TO APPENDIX

Attachment A          Plaintiffs' Witness List

Attachment B          Plaintiffs' Exhibit List

Attachment C          Plaintiffs' Objections to Defendant's Exhibits

Pursuant to the Court's Order on September 8, 2016 and Appendix A of Rules of the United States Court of Federal Claims, plaintiffs hereby submit their Memorandum of Contentions of Fact and Law ("Pretrial Memorandum").

## I.      Introduction

Plaintiff Mina Gerowin Herrmann, a U.S. citizen, received a bonus in January 2009 for work she performed in 2008 (the "2008 Bonus") while living in London, England.  It is undisputed that she and her husband, plaintiff Jeffrey Herrmann, timely paid full U.K. tax on that 2008 Bonus at a rate that was higher than the corresponding U.S. tax rates for all relevant years.[1] Payment of full U.K. tax on the 2008 Bonus and on other earned income entitled the Herrmanns to a foreign tax credit against United States income tax.

On April 13, 2012, the IRS issued a Notice of Computational Adjustment with respect to the Herrmanns' U.S. federal income tax return for 2008, erroneously asserting a putative tax deficiency of approximately $7,860,000 after including interest.  Plaintiffs paid in full the erroneous deficiency plus interest on October 11, 2012, less than six months from the date that the Notice of Computational Adjustment was issued.[2]  Plaintiffs here contest the entire amount of the assessed deficiency.  It should be noted in particular, however, that the bulk of the IRS' assessment, approximately $5,200,000, was caused by the IRS's refusal to correct a computational error it has acknowledged.  Had the IRS simply corrected that error and recomputed the deficiency at any point prior to this action, the amount in controversy here would have been a fraction of what it currently is.  Thus, plaintiffs will be entitled to a refund in the

---

[1]  Defendant's Answer ("Answer") at ¶ 27; Plaintiffs' Complaint ("Complaint") at ¶ 27.

[2]  Answer at ¶ 3; Complaint at ¶ 3.

1

amount of approximately $5,200,000 plus overpayment interest, even if plaintiffs do not prevail with respect to their other positions.

In that regard, this Court has recognized that:

> the Herrmanns would be entitled to a one-year carryback to 2008 of foreign taxes paid to the U.K. in 2009, even if Ms. Herrmann is ultimately determined to have received her bonus early in 2009 as a partner. The Herrmanns accordingly will be entitled to a substantial refund of taxes paid for 2008, but the amount of that refund will remain uncertain until all issues associated with that taxable year are resolved.[3]

In refusing to refund the $5,200,000, the IRS sought to force plaintiffs to give up their other claims as described below.

The Notice of Computational Adjustment, however, was premised on a more fundamental flaw than the admitted computational error: the IRS incorrectly included the 2008 Bonus in plaintiffs' income for the taxable year 2008. Ms. Gerowin Herrmann was in substance an employee of and not a *bona fide* partner in Paulson Europe LLP ("PELLP") for U.S. federal income tax purposes. Therefore, the 2008 Bonus was not a distribution of partnership profits includible in income in 2008. Because Ms. Gerowin Herrmann was a cash method U.S. taxpayer, the 2008 Bonus was not includable in her income for 2008.

Moreover, even if Ms. Gerowin Herrmann were held to be a partner for U.S. federal income tax purposes, the 2008 Bonus was not a partnership distribution, but instead was a payment made to Ms. Gerowin Herrmann for services performed in a capacity other than as a partner under section 707(a)(2)(A) of the Internal Revenue Code (the "I.R.C.").[4] A conclusion

---

[3] *Herrmann v. United States*, No. 14-941T, Doc. No.33 filed October 23, 2015 at *16; 124 Fed. Cl. 56, at 69 (Ct. Fed. Cl. 2016).

[4] Unless otherwise noted, all references herein to a "section" or to "I.R.C. §" are references to a section of the Internal Revenue Code of 1986, as amended (the "Code"), and all references to "Treas. Reg. §" are references to a section of the Treasury Regulations promulgated thereunder.

that Ms. Gerowin Herrmann was not a partner, or a conclusion that even if she was, section 707(a)(2)(A) applies to the 2008 Bonus, would result in the 2008 Bonus being income to plaintiffs in 2009, resulting in a full refund to plaintiffs of the amount at issue in this case.

Similarly, even if the Court were to determine that the Herrmanns should be required to include the 2008 Bonus in their 2008 income, plaintiffs should be entitled to a full refund because they elected under I.R.C. section 905(a) to adopt the accrual method of accounting for foreign tax credit purposes. That election is consistent with the statutory language of section 901(a) and the policy underlying the foreign tax credit. Allowing plaintiffs to compute their foreign tax credit for 2008 according to the accrual method as applied by them, would avoid subjecting plaintiffs to double taxation at a marginal tax rate of approximately eighty percent.

Finally, by way of summary, in the audit of PELLP and plaintiffs that led to the issuance of the Notice of Computational Adjustment, the IRS misused TEFRA in several ways.[5] One example is the exclusion of plaintiffs from participating in the PELLP audit notwithstanding Ms. Gerowin Herrmann's statutory right to participate. Another is accusing Ms. Gerowin Herrmann of reporting in 2008 in a manner that was inconsistent with PELLP, when the IRS knew that Ms. Gerowin Herrmann did not receive a K-1 from PELLP for the 2008 tax year and that she only saw a purported 2008 K-1 for the first time in 2011 during the audit. In fact, the IRS knew that PELLP had not filed K-1's for the individual members in either 2007 or 2008.

---

[5] TEFRA refers to I.R.C. sections 6221 through 6234, which provide rules that govern certain partnership tax audits and related matters.

II.      **Concise Statement of Facts**

    A. Ms. Gerowin Herrmann's compensation, and particularly the 2008 Bonus, were not
       tied to the profits of PELLP, nor was she a partner in PELLP for U.S. tax purposes.

From 2005 through 2007, plaintiffs lived in New Rochelle, New York and Ms. Gerowin

Herrmann was employed as an investment analyst at Paulson & Co. Inc. ("Paulson Inc."), a U.S.

corporation.[6] Her responsibilities at Paulson Inc. included analyzing investment opportunities

for various hedge funds managed by Paulson, Inc.[7] Paulson Inc. was wholly controlled by John

Paulson.

Under the terms of her employment at Paulson Inc., Ms. Gerowin Herrmann was paid an

annual salary of at least $350,000 and a bonus at the end of each calendar year that was

determined solely by John Paulson. In the Fall of 2006, John Paulson orally described to Mina

Gerowin Herrmann the formula that he would use to calculate her bonuses beginning in 2007

and in subsequent years. John Paulson committed to Ms. Gerowin Herrmann that her annual

bonuses would be based on 2% of the net incentive fees earned by Paulson Inc. through the end

of the calendar year from its management of the Merger funds and Event (Advantage) funds.

That bonus formula is reflected in a spreadsheet that Ms. Gerowin Herrmann received in 2007

and was an exhibit to the 2016 deposition of John Paulson.[8] The bonus formula is also reflected

in additional documents that were prepared by Paulson Inc. and were exhibits to the 2016

deposition of John Paulson.[9] Trial testimony will establish that this bonus formula was applied

---

[6]  *See* Answer at ¶ 9; Complaint at ¶ 9.

[7]  *Id.*

[8]  *See* Ex. 17 to Deposition of John Paulson.

[9]  *See* Exs. 18-21 to Deposition of John Paulson.

for 2007 when she was working at Paulson Inc., and the same bonus formula was applied for 2008 when she was working at PELLP.

Consistent with the terms of her compensation arrangement with Paulson Inc., Ms. Gerowin Herrmann's bonus amount was determined by John Paulson late in each calendar year. For 2007, while Ms. Gerowin Herrmann was a Paulson Inc. employee in New York, once John Paulson determined the 2007 bonus amount, most of it was paid to Ms. Gerowin Herrmann by Paulson Inc. in the last December payroll of the year. Monthly salary and the 2007 bonus amount paid to Ms. Gerowin Herrmann by Paulson Inc. were treated as and constituted employee compensation for services paid by Paulson Inc. to Ms. Gerowin Herrmann and were included in income by Ms. Gerowin Herrmann, as a cash method taxpayer, in 2007, the year of receipt.

In 2007, Ms. Gerowin Herrmann agreed to relocate to London in 2008 to continue performing investment analyst services. Paulson Inc. told Ms. Gerowin Herrmann that she would continue to be an employee and would work for its London affiliate, PELLP. PELLP is a U.K. limited liability partnership. In late 2007, PELLP filed immigration and work permit forms with the U.K. government listing Ms. Gerowin Herrmann as a PELLP "employee" and stating that Ms. Gerowin Herrmann did not and would not own an interest in PELLP.

Ms. Gerowin Herrmann ultimately relocated to London in early January 2008, so that she could work in the same time zone as the European markets that she analyzed. Before the relocation, however, Paulson Inc. learned that substantial employment tax savings could be achieved by PELLP if Ms. Gerowin Herrmann joined PELLP as a member. Ms. Gerowin Herrmann was assured that if she joined PELLP as a member, neither her work nor her compensation arrangement would change as a result. Thus, her duties would remain the same as they were at Paulson Inc. and her bonus compensation would continue to be determined by the

same formula, *i.e.*, it would be based on a percentage of the net incentive fees earned by Paulson Inc. through the end of the calendar year from the Merger funds and Event (Advantage) funds managed by Paulson Inc., not by the profits of PELLP. Paulson Inc. ultimately insisted Ms. Gerowin Herrmann join PELLP as a member in form, but changed nothing else of consequence with respect to her work or compensation.

At the time the Herrmanns moved to London, the majority member of PELLP was a controlled entity, Paulson Ltd., whose ultimate owner and controlling party was John Paulson. PELLP also had two individual minority members, both of whom worked in London and were not U.S. citizens. The two minority members were the designated "managing members," and each purportedly had voting rights according to the Partnership Agreement of PELLP (the "Partnership Agreement"). PELLP treated itself as a fiscal year partnership for U.K. tax purposes with a U.K. tax year ending March 31st but as a calendar year partnership for U.S. federal tax purposes.

Upon relocating to London, Ms. Gerowin Herrmann was asked to join PELLP as a member, which she did by signing a Deed of Adherence dated January 8, 2008. Ms. Gerowin Herrmann did not know prior to January 2008 that she would be required to sign the Deed of Adherence. The Deed of Adherence referred to the partnership agreement of PELLP (the "Partnership Agreement"). Ms. Gerowin Herrmann asked for but was not given a copy of the Partnership Agreement at that time. Indeed, she did not receive a copy of it until 2011 during the IRS audit.

Under the Deed of Adherence, Ms. Gerowin Herrmann was required to contribute £30,000 to PELLP, which she did. The Deed of Adherence did not confer on Ms. Gerowin Herrmann any percentage interest in PELLP or voting rights in PELLP. After Ms. Gerowin

Herrmann signed the Deed of Adherence, the Partnership Agreement was never amended to reflect Ms. Gerowin Herrmann as a member. As discussed below, the Deed of Adherence did not alter her compensation arrangement, previously determined by John Paulson, in any way. Ms. Gerowin Herrmann's bonus at calendar year end continued to be determined pursuant to the same formula as before her move to London, that is, 2% of net incentive fees earned by Paulson Inc., not PELLP, in that calendar year, based on the performance of the Merger funds and the Event (Advantage) funds managed by Paulson, Inc., not the profits of PELLP.

The purpose of Ms. Gerowin Herrmann joining PELLP as a member rather than as an employee, as Ms. Gerowin Herrmann understood it, was to enable PELLP to avoid certain U.S. and U.K. employment tax obligations that otherwise would have been incurred with respect to the compensation paid to her as an employee for services provided to Paulson Inc. and its affiliates in the U.K. Chris Bodak and Ms. Gerowin Herrmann will testify to this at trial. Joining PELLP was not intended to, nor did it, change in substance Ms. Gerowin Herrmann's compensation arrangement with Paulson Inc. It also did not change the nature of the services she performed or the parties for whose benefit she performed them.

During 2008, and subsequent years, Ms. Gerowin Herrmann performed the same investment analyst services for Paulson Inc. and its affiliates as she did when she was an employee of Paulson Inc. in New York. Her compensation arrangement, including her calendar year end bonus, remained the same as it was before 2008 in all material respects, which will be shown at trial through testimony and documentary records.

In late 2008, John Paulson determined the amount of Ms. Gerowin Herrmann's 2008 Bonus, for work she performed in 2008. The 2008 Bonus was calculated by John Paulson using the same formula he used in 2007, based on 2 percent of the net incentive fees earned by Paulson

Inc. through the end of 2008 from the Merger funds and Event (Advantage) funds managed by Paulson Inc.[10] The 2008 Bonus was not based on PELLP. Paulson Inc. transmitted funds in U.S. dollars to PELLP at year end 2008 to enable PELLP to pay Ms. Gerowin Herrmann the 2008 Bonus, which PELLP did within a matter of days. Without such transfer by Paulson Inc., PELLP would have lacked the funds to pay the 2008 Bonus to Ms. Gerowin Herrmann. This payment was made without any calculation of PELLP's profits as of that date, which was three months before the end of PELLP's fiscal and reporting year.

After the bonus had been converted by PELLP from U.S. dollars to British pounds in the amount of £12,764,732, the major portion of the 2008 Bonus was received by wire at plaintiffs' bank on January 5, 2009 and was credited to their account on January 6, 2009. The portion of the 2008 Bonus received by plaintiffs on January 6, 2009 was equivalent in dollars to $18,748,838. A remaining minor portion of the 2008 Bonus was received by plaintiffs in late July 2009 after Paulson Inc. had calculated certain adjustments to the Net Incentive fees.

The terms of the PELLP Partnership Agreement relating to distribution of profit were not followed for purposes of determining or paying compensation to Ms. Gerowin Herrmann. Bonus amounts paid at calendar year end to Ms. Gerowin Herrmann and other PELLP members were determined solely by John Paulson, not by PELLP or Paulson, Ltd, and were paid three months before the close of PELLP's fiscal year. One of the managing members was compensated pursuant to a formula like Ms. Gerowin Herrmann's based on Net Incentive fees earned by Paulson, Inc. The other managing member received a discretionary bonus determined each year by John Paulson without regard to a formula. None of the PELLP partners' bonuses were based

---

[10] *See* Exs. 17 – 20 to Deposition of John Paulson.

on the profits of PELLP.  Ms. Gerowin Herrmann, John Paulson, and Chris Bodak will all testify to this at trial.

The PELLP Partnership Agreement lacks any provisions that specifically address the U.S. federal income tax aspects of membership in PELLP and the characterization for U.S. federal tax purposes of draws and bonuses.  Similarly, the Partnership Agreement has no specific provisions that address profit and loss allocations, capital account maintenance, or definitions of profit and loss for U.S. federal income tax purposes.  There also is no provision for a distribution of profits to members of PELLP in the Partnership Agreement that would support characterization of the 2008 Bonus as a distribution by PELLP of 2008 profit for U.S. federal tax purposes.  That absence is entirely consistent with the facts that the purported distribution and allocation of PELLP "profit" in reality constituted employee compensation that was paid to Ms. Gerowin Herrmann for performing the same services she performed for Paulson Inc., that her bonus was measured by Net Incentive Fees earned by Paulson, Inc., not PELLP, and the funds to enable PELLP to pay the 2008 Bonus came from Paulson, Inc., not from PELLP profits.  The government's notion that the 2008 Bonus was a distribution of PELLP profit to Ms. Gerowin Herrmann is nothing but a fiction.

Likewise, a document called the Sub-Advisory Agreement that purportedly governed the relationship between PELLP and Paulson Inc. was a fiction.  Ms. Gerowin Herrmann was not even aware of its existence until the IRS provided the Sub-Advisory Agreement to her in 2013 in connection with the IRS's Claim Disallowance Letter.   No member of PELLP signed it; rather, the same Paulson Inc. employee, Stu Merzer, signed on behalf of Paulson Inc. and PELLP. Moreover, at trial both John Paulson and Chris Bodak will testify that neither recognize the sub-

advisory agreement.  The government's reliance on the Sub-Advisory Agreement to characterize

Ms. Gerowin Herrmann's bonus as profit is based on a mirage.

> B.  The Herrmanns timely paid all U.K. income taxes and sought, in good faith, to timely pay all U.S. income taxes.

In mid-2008, plaintiffs engaged Frank Hirth Plc. (the "Tax Advisors") for assistance with

the preparation of their U.K. and U.S. tax returns.  Frank Hirth is a tax and accounting firm with

offices in London and New York.[11]  It specializes in matters relating to the complex interaction

between U.K. and U.S. tax laws and the effect of that interaction on taxation of individuals,

corporations, partnerships, and trusts in each country.  Frank Hirth has long enjoyed a strong

reputation for their area of expertise and came highly recommended to plaintiffs.  Frank Hirth

prepared plaintiffs' U.S. tax return for 2008 as well as their U.K. tax return for the U.K. tax year

ending April 5, 2008 (reflecting Ms. Gerowin Herrmann's employment with PELLP from

January 2008 to April 5, 2008).  Frank Hirth has continued to act on behalf of and to advise

plaintiffs on their tax reporting obligations to both the U.K. and the U.S., including preparing the

respective U.S. and U.K. tax returns on their behalf.

Trial testimony will establish that Frank Hirth prepared, and plaintiffs without alteration

timely filed, plaintiffs' original U.S. Form 1040 for the Taxable Year 2008 (the "Original 1040")

and included therein as income for 2008 the monthly payments Ms. Gerowin Herrmann received

from PELLP in 2008, but not the 2008 Bonus that she received in 2009.  Neither plaintiffs nor

their Tax Advisors had received a schedule K-1 or other equivalent U.S. tax information from

PELLP or anyone on PELLP's behalf in 2008, or in 2009 leading up to the filing of plaintiffs'

---

[11]  *See* Answer at ¶ 22  (stating "Admits that Frank Hirth PLC provides tax and accounting services and has offices in London and New York"); Complaint at ¶ 22.

2008 U.S. tax return. Accordingly, plaintiffs followed their Tax Advisors' advice: they reported in 2008 only cash received by them in 2008, just as they had done in 2007.

In 2009, in preparation for the filing of plaintiffs' 2008 U.S. tax return, the Herrmanns' Tax Advisors instructed them to make a request to PELLP for U.S. tax documents or information pertaining to Ms. Gerowin Herrmann's compensation for 2008. Ms. Gerowin Herrmann made several inquiries to PELLP personnel, including to Harry St. John Cooper, who was at that time a U.K. chartered accountant, and to Candace Allen, the newly appointed PELLP bookkeeper and accounting liaison to Paulson Inc. Ms. Gerowin Herrmann requested that PELLP provide Ms. Gerowin Herrmann with U.S. tax information or documentation necessary for the preparation of her 2008 U.S. tax return, and specifically asked both Harry St. John Cooper and Candace Allen whether any such documentation or information would be forthcoming. In response to those requests, Ms. Gerowin Herrmann was consistently told that no 2008 U.S. tax documentation or information existed and that none would be forthcoming. She was *not* informed that PELLP would allocate profit to her for 2008 for U.S. federal income tax purposes, and she did not receive a PELLP K-1 for 2008 reflecting any such allocation.

In light of that and the advice of the Tax Advisors, Frank Hirth, plaintiffs did not report the 2008 Bonus in their 2008 U.S. income tax return, inasmuch as they received that bonus in 2009. Given the repeated responses by PELLP that no Schedule K-1 or other equivalent U.S. tax information or documentation would be provided to Ms. Gerowin Herrmann for the 2008 Taxable Year, plaintiffs' Tax Advisors concluded that the 2008 Bonus should not be reported in Plaintiffs' original U.S. Form 1040, and it prepared the return accordingly, to be filed by plaintiffs. On or about July 6, 2009, plaintiffs filed their Original U.S. 1040 on the cash method

for the 2008 Taxable Year with the IRS.[12]  Plaintiffs reasonably relied on the advice of qualified

tax professionals both to determine their U.S. and U.K. tax liabilities and to prepare and file their

U.S. and U.K. income tax returns for 2008 and all relevant years, and they acted in good faith in

doing so.

In 2009, Frank Hirth prepared, and plaintiffs filed, plaintiffs' U.K. tax returns for the

U.K. taxable year ending April 5, 2009, and included in income the 2008 Bonus received in

January 2009.  Plaintiffs paid full tax on the 2008 Bonus to the U.K. for the tax year ending April

5, 2009 in a timely fashion and at a higher tax rate than the highest US tax rate.[13]  Thus, the 2008

Bonus was fully taxed.  By December 31, 2008 plaintiffs were able to predict with reasonable

accuracy what their U.K. tax would be for the U.K. taxable year ending April 5, 2009.  Before

that date, Ms. Gerowin Herrmann had been told the amount she would receive from PELLP as a

2008 Bonus.  Plaintiffs could not have avoided U.K. tax liability on the 2008 Bonus by giving up

residency in the U.K. after December 31, 2008.   U.K. income tax on the 2008 Bonus was

certain.

Trial testimony and documentary evidence will establish that plaintiffs' draft 2009 U.S.

Form 1040 originally prepared by plaintiffs' tax professionals did include the full amount of the

2008 Bonus received by Ms. Gerowin Herrmann on January 6, 2009.  However, in the fall of

2010 PELLP for the first time provided a PELLP K-1 to Ms. Gerowin Herrmann.  That K-1,

however, related to the 2009 taxable year, not to 2008.  Upon learning of that, Frank Hirth

instructed Ms. Gerowin Herrmann to ask yet again for U.S. tax documentation or information

relating to 2008, and this time, to request specifically a 2008 K-1 for Ms. Gerowin Herrmann in

light of the apparent switch by PELLP to the K-1 method of reporting with respect to the 2009

---

[12]  *See* Answer at ¶ 25; Complaint at ¶ 25.

[13]  *See* Answer at ¶ 27; Complaint at ¶ 27.

bonus. Ms. Gerowin Herrmann made yet another request for a 2008 K-1 to Candace Allen, the accounting liaison to Paulson Inc., and asked her to direct an inquiry for any 2008 K-1 to the New York accounting department of Paulson Inc., which was involved in the preparation of PELLP's tax returns. Candace Allen reported back to Ms. Gerowin Herrmann again that there was no 2008 PELLP K-1 for her, and that there would not be one for her. Plaintiffs learned years later that in addition to failing to supply a 2008 K-1 to Ms. Gerowin Herrmann, PELLP failed to file a 2008 K-1 for her with the IRS in PELLP's 2008 return.

Ms. Gerowin Herrmann conveyed Candace Allen's response to plaintiffs' Tax Advisors, Frank Hirth. On that basis, plaintiffs were advised by Frank Hirth in the Fall of 2010, when their 2009 US tax return was being prepared, that it was not uncommon for a mismatch to exist between cash payments and profit allocations to partners. Thus, the fact that the 2008 bonus payment was more than what was allocated on the 2009 K-1 was not unusual. Frank Hirth also advised plaintiffs that they must report for U.S. tax purposes in 2009 in a manner that was consistent with the information provided to Ms. Gerowin Herrmann by PELLP for 2009, that is, consistent with the numbers stated in the 2009 K-1. Frank Hirth further advised that "catch up" allocations likely would be made by PELLP in the future. For 2009 and all taxable years thereafter, years (unlike 2008) for which Ms. Gerowin Herrmann received timely Schedules K-1 from PELLP, plaintiffs reported for U.S. tax purposes consistent with the PELLP Schedules K-1 they received.

    C. The IRS illegally excluded plaintiffs from the PELLP TEFRA audit and consciously ignored plaintiffs' correct foreign tax credits.

Beginning on April 15, 2011, The IRS conducted a partnership or "TEFRA" audit of PELLP for its 2008 taxable year. The IRS was statutorily required to inform Ms. Gerowin Herrmann of the PELLP audit when it began. The IRS also was required to permit Ms. Gerowin

Herrmann to participate in the PELLP audit. The IRS team working on the PELLP audit knew about those statutory requirements, and, in fact, timely informed one of the PELLP partners— Paulson Ltd.—about the PELLP audit on April 22, 2011. In fact, the IRS had recognized Ms. Gerowin Herrmann to be a partner in PELLP since January 2011. Yet, the IRS did not inform Ms. Gerowin Herrmann about the PELLP audit when it notified Paulson Ltd. It did not even notify Ms. Gerowin Herrmann about the PELLP audit when it commenced a related audit of plaintiffs in April 2011.

The IRS did not notify plaintiffs or plaintiffs' representatives about the PELLP audit until mid-September 2011. Thus, the IRS team failed to notify plaintiffs of the PELLP audit until more than five months had passed from the beginning of that audit, even though the IRS team was aware the entire time of its statutory duty to tell plaintiffs about the audit. Ms. Gerowin Herrmann was, therefore, necessarily denied any and all participation in the PELLP audit before she was notified.

After the IRS notified plaintiffs about the existence of the PELLP audit, the IRS continued to exclude plaintiffs from all meetings, conference calls, and emails concerning the audit. Agent Joe Scott admitted during his deposition that plaintiffs did not participate in the PELLP audit until the PELLP closing conference in July 2012, fifteen months after the audit was commenced. Even during the PELLP closing conference, however, plaintiffs' representatives were denied the opportunity to raise any substantive issues—and thus plaintiffs were allowed no meaningful participation in that conference.[14]

---

[14] During the closing conference of plaintiffs' individual audit, Ms. Gerowin Herrmann participated in telephonic conference call with the IRS, during which Paul Hocking of Frank Hirth pointed out the error in the 2008 K-1 and asserted that Ms. Gerowin Herrmann should be allowed to participate fully in the TEFRA audit. During that call, the IRS claimed that Ms. Gerowin Herrmann was not even a notice partner in PELLP, even though it formally notified

In the summer of 2011, before the IRS notified Ms. Gerowin Herrmann of the PELLP audit, in the plaintiffs' individual audit the IRS presented Ms. Gerowin Herrmann with a purported PELLP K-1 for the year 2008. It was the first time she had seen a 2008 PELLP K-1. It had been obtained by the IRS from PELLP during the course of the PELLP audit.[15] PELLP in fact had not filed that 2008 K-1 with the IRS as a part of the PELLP 2008 tax return. This is demonstrated by PELLP's 2008 tax return, Form 1065, a copy of which Ms. Gerowin Herrmann obtained from the IRS in 2012, which lacked a Schedule K-1 for Ms. Gerowin Herrmann. The IRS transcript of plaintiffs' account for tax year 2008 also does not show income reported in a 2008 K-1 for Ms. Gerowin Herrmann and thus confirms that PELLP failed to file the purported original 2008 PELLP K-1 with the IRS.

That original 2008 PELLP K-1, presented to Ms. Gerowin Herrmann for the first time in the summer of 2011, was grossly inaccurate. It contained an error, later acknowledged by the IRS, that significantly understated the proper amount of foreign source income attributable to Ms. Gerowin Herrmann. That in turn resulted in a substantial understatement of the amount of foreign tax credit to which plaintiffs were entitled for 2008. That K-1 also incorrectly attributed to Ms. Gerowin Hermann "various" percentages of profit and loss and contained other errors.[16] The IRS denied Ms. Gerowin Herrmann the ability to contest the erroneous 2008 PELLP K-1.

The IRS issued the Notice of Computational Adjustment on April 13, 2012, well before the conclusion of the PELLP audit in August 2012 and, in violation of I.R.C. section 6225,

plaintiffs about the PELLP partnership audit in October 2011 and said then that she was a partner. *See* Ex. 2 of the Complaint, Email from IRS Senior Team Coordinator, J. Scott, to IRS Team Manager, E. Cirelli, dated July 6, 2012.

[15] Ex. 1 to the Complaint, Purported (and erroneous) 2008 PELLP K-1.

[16] Ex. 2 to the Complaint, Email from IRS Senior Team Coordinator, J. Scott, to IRS Team Manager, E. Cirelli, Summary of Herr Conf Call – Closing Conference 7-6-12, dated July 6, 2012.

without ever issuing a notice of final partnership administrative adjustment. The Notice of Computational Adjustment showed tax due of $6,686,901 plus interest. Shortly thereafter, plaintiffs received a Notice of Tax Due and Notice of Intent to Levy relating to the same amounts originally shown in the Notice of Computational Adjustment. The Notice of Intent to Levy, dated July 30, 2012, showed tax due of $7,487,516.47, a failure to pay penalty of $100,263.52, and interest due of $58,529.63.

The Notice of Computational Adjustment was premised on the IRS view that Ms. Gerowin Herrmann was a *bona fide* partner in PELLP for U.S. federal income tax purposes. If Ms. Gerowin Herrmann was a partner, as the IRS claimed, then under TEFRA the IRS was statutorily required to allow her to participate meaningfully in the PELLP audit. Yet even while the IRS maintained that Ms. Gerowin Herrmann was a partner by issuing the Notice of Computational Adjustment, as described above, it excluded Ms. Gerowin Herrmann from any meaningful participation in the PELLP audit, denied her access to information regarding PELLP, denied her the ability to challenge the merits of the IRS's factual and legal determinations, denied her the ability to assert any alternative position during the partnership audit, and effectively precluded any possibility that she might raise with the IRS the proper characterization of the 2008 Bonus—all in violation of TEFRA. She was also denied the ability to contest those matters in a separate partner-level proceeding, which should have been permitted on the basis that the tax attributable to the 2008 Bonus would depend on affected items in the Herrmanns' U.S. tax return. Meaningful participation in a partnership audit entails, at a minimum, being timely informed about the existence of the audit, receiving information about the audit, and being allowed to present information during the audit and to raise substantive issues during the audit. The IRS deprived plaintiffs of all of those rights.

Prior to issuing the Notice of Computational Adjustment, the IRS knew plaintiffs had approximately $4,400,000 of excess foreign tax credits for 2009 that could be carried back to 2008, even if the IRS's characterization of the 2008 Bonus as 2008 income was correct. The IRS ignored the carryback and issued the Notice of Computational Adjustment for an inflated amount nonetheless. Following the issuance of the Notice of Computational Adjustment, PELLP apparently acknowledged an error reflected in the purported original 2008 PELLP K-1 for Ms. Gerowin Herrmann that had been identified by Frank Hirth and brought to the attention of the IRS. PELLP then issued a revised 2008 K-1 (Ex. 3 of the Complaint, PELLP Revised 2008 K-1, Dated July 17, 2012) to Ms. Gerowin Herrmann that dramatically increased the amount of foreign source income allocated to her from $3,217,274 to $21,478,456. Two members of the audit team asserted that this $18 million difference was an insignificant change. Correspondingly, that dramatically increased the amount of foreign tax credit to which plaintiffs were entitled for 2008.

Thus, the IRS was reminded, before the deficiency amount reflected in the Notice of Computational Adjustment was paid by the Herrmanns, that plaintiffs were entitled to carry 2009 excess foreign tax credits back to 2008. The IRS itself even calculated the foreign tax credit attributable to the $21,478,456 of foreign source income. So, it fully understood that the Herrmanns were entitled to a substantial foreign tax credit carryback from 2009 to 2008 as a result. Yet the IRS deliberately and improperly failed to correct the Notice of Computational Adjustment.[17] Accordingly, the offset the IRS entered in line 8 of the Form 4549-A attached to the Notice of Computational Adjustment for foreign tax credits stood as a mere $87,871. The net effect of the IRS's understatement of the proper amount of foreign tax credit for plaintiffs was

_____

[17] *See* Exs. 22, 23 and 24 to the deposition of Agent Joe Scott.

that the IRS knowingly grossly overstated the alleged tax liability reflected in the Notice of Computational Adjustment by approximately $4,400,000, plus underpayment interest, for a total of approximately $5,200,000.

The corrected 2008 Schedule K-1 was provided to the IRS on July 17, 2012, several months after the issuance of the Notice of Computational Adjustment, and shortly before the audit Closing Conference on July 26, 2012. Despite this material change to a key tax document on which the Notice of Computational Adjustment was predicated, the IRS inexplicably did not revise or reissue the erroneous Notice of Computational Adjustment to account for the material change. In the face of the IRS' refusal to apply the foreign tax credits to plaintiffs' alleged tax liability, Frank Hirth then prepared for plaintiffs, and plaintiffs filed, an amended return for 2008, the Original Form 1040X, with the IRS Service Center in Austin, Texas on or about August 24, 2012.[18] In that return, plaintiffs reported the profit allocation from the revised 2008 Schedule K-1 for Ms. Gerowin Herrmann. Also in that return, plaintiffs validly elected under I.R.C. section 905(a) to compute their foreign tax credit under the accrual method for 2008 (and, effectively, subsequent years). Plaintiffs paid additional U.S. tax under the Original Form 1040X in the amount of $37,601, which amount took into account plaintiffs' proper foreign tax credit for 2008 under the accrual method.

Despite receipt of the amended return for 2008, the IRS would not relent. The IRS did not amend the erroneous Notice of Computational Adjustment, did not withdraw the Notice of Intent to Levy, and did not withdraw its prior assertion that if plaintiffs failed to pay the amount stated in the Notice of Computational Adjustment within six months of its date they would

---

[18] Copies of the Original Form 1040X were also filed with the Taxpayer Advocate Service, located at 1111 Constitution Avenue, NW, K 1500, Washington, D.C. 20224 on or about August 24, 2012.

forfeit any right to contest the flawed Notice of Computational Adjustment. To preserve their rights, plaintiffs were forced to pay a grossly overstated amount of additional putative U.S. federal income tax and related interest and then seek a refund.

Plaintiffs paid the full putative deficiency on October 11, 2012,[19] and filed a claim for refund on October 12, 2012 (the "Refund Claim"),[20] followed by a letter dated December 20, 2012, supplementing the Refund Claim (the "Supplemental Letter").[21] The IRS rejected the Refund Claim, augmented by the Supplemental Letter, and issued a Claim Disallowance Letter on September 10, 2013.[22]

The IRS admitted in the Claim Disallowance Letter that the Notice of Computational Adjustment was flawed, stating that "[t]he team recognized that the taxpayer should be allowed a carryback of Foreign Tax Credit (FTC) from 2009 to 2008. It was determined that this was the proper application of the FTC."[23] Throughout these proceedings defendant has consistently recognized that plaintiffs should be "permitted to carryback to 2008 a portion of the foreign tax credit related to the tax they paid to the U.K. during 2009" if the bonus is included in plaintiffs'

---

[19] *See* Ex. 4 to the Complaint, IRS Payment Voucher, Dated October 11, 2012; *See also* Answer at ¶ 38.

[20] *See* Ex. 6A to the Complaint, IRS Form 843; Ex. 6B of the Complaint, Statement in Explanation of Claim for Refund; and Ex. 6C of the Complaint, Enclosed CD-Rom Containing Forms 1040X Relating to the Tax Year 2008. Included in the Refund Claim filed at the King of Prussia, PA office of the IRS on October 12, 2012 were three separate Forms 1040X for the tax year 2008, as second amended, corresponding to each of the three alternative claims set forth in the Refund Claim. Forms 1040X for each of the years 2009 and 2010 corresponding to each of the three alternative claims set forth in the Refund Claim were similarly included, although, those are not material to this action.

[21] *See* Ex. 6D to the Complaint, Supplemental Letter. Note that Exhibits 6A, 6B, 6C, and 6D collectively comprise what is referred to herein as the Refund Claim.

[22] *See* Ex. 5 to the Complaint, Excerpt of IRS Claim Disallowance Letter.

[23] Ex. 5 to the Complaint, Excerpt of IRS Claim Disallowance Letter, at page 10 of 58.

2008 taxable year.[24]  Despite admitting plaintiffs are entitled to those substantial foreign tax credits, the IRS in its denial of the refund claim improperly ignored the approximately $4,400,000 of foreign tax credit carryback to which plaintiffs were entitled for 2008.

Throughout these proceedings the conduct of the IRS and the audit team reflected the erroneous beliefs of the audit Team Manager, Eric Cirelli.  Cirelli memorialized his erroneous views in an email dated August 3, 2012 to a representative of plaintiffs, which Cirelli then copied to the rest of the audit team.   In that email Cirelli stated:

> Again, I feel **it comes down to the basics of being a US citizen** and the applicable foreign tax laws in the 900 series of the code.  The facts remain the same;  the timing issue of **$6m of tax by a US citizen that should have paid in the US first was paid to another jurisdiction**.   (Emphasis added.)

Although ostensibly framed as an issue of timing—*i.e.*, the Herrmanns should have paid taxes to the "the US first"—Cirelli implies that Herrmanns' obligation to pay tax to the U.S. is preeminent to their obligation to pay tax to the U.K.  In other words, the Herrmanns should have paid tax to the U.S. and then claimed a credit for that tax against U.K. tax due *on the same earnings*.  As Cirelli wrote, this is what he feels about "the basics of being a US citizen."  But Cirelli and the audit team got the legal obligations of U.S. citizens exactly backward; under the U.S./U.K. Tax Treaty that is not the way the U.S./U.K. system of taxing US citizens who earn income in the U.K. works.  Under the treaty, the U.K. gets to tax U.S. persons residing in the U.K., and the U.S. gives the U.S. person a credit for that tax.  Cirelli's assertions to the contrary are completely baseless and shed light on why the IRS proceeded as it did in this case.

---

[24]  Defendant's Revised Interrogatory Responses, dated Sept. 29, 2016, at 4 (stating that "Defendant does not dispute that if the distribution Mina Gerowin Herrmann received from PELLP at the beginning of 2009 is determined to be properly included in the Herrmanns' 2008 tax year, then the Herrmanns are permitted to carryback to 2008 a portion of the foreign tax credit related to the tax they paid to the U.K. during 2009").

Plaintiffs went to great lengths to resolve this dispute administratively by filing a refund claim for 2008, and protesting the IRS's denial to IRS Appeals. Plaintiffs fully cooperated with the IRS throughout the entire process, extending the statute of limitations four times for affected years as requested by the IRS. Unable to obtain any relief administratively, plaintiffs filed a complaint (the "Complaint") in this Court on October 3, 2014 seeking relief under four individual counts.

*     *     *

In anticipation of the trial scheduled to begin on January 23, 2017, the following discussion is intended to inform the Court of the facts upon which *defendant* is expected to rely and plaintiffs' position with respect to those facts, the issues of fact and law before the Court, a summary of relevant law supporting plaintiffs' position, a summary of the legal arguments defendant will raise in support of its position, and plaintiffs' objections to defendant's witnesses and exhibits.

D.  Plaintiffs' Position with respect to the Facts on which Defendant is Expected to Rely

The facts upon which defendant is expected to rely depend on the particular count (summarized herein) being addressed. Accordingly, the following discussion organizes the facts that defendant is expected to rely on by each of those individual counts. However, plaintiffs note that they are largely unaware of the specific facts upon which defendant will rely despite plaintiffs' efforts to obtain discovery about those facts.

Plaintiffs issued interrogatories to defendant on June 17, 2016, which in part asked defendant to articulate all the facts that defendant contends are still in dispute with respect to each of the four counts. Defendant responded on August 22, 2016. After plaintiffs raised concerns over defendant's initial response, defendant issued revised interrogatory responses on

September 29, 2016 ("Revised Interrogatory Responses"). Defendant surprisingly said that it could not state definitely all facts that it may assert or positions it may take because it lacked complete knowledge as to plaintiffs' factual and legal theories. Defendant did, however, purport to list some of the facts on which it intends to rely.

Plaintiffs and defendant met on November 15, 2016, for the meeting of counsel (the "Meeting of Counsel") required by Appendix A of the Rules of the United States Court of Federal Claims ("Appendix A"). At the Meeting of Counsel, plaintiffs provided defendant with its written contentions of fact and law. Defendant, however, did not prepare anything in writing detailing its contentions of fact and law. Plaintiffs raised the requirement in Rule 13(c)(3) of Appendix A necessitating that both parties, including defendant, exchange contentions of fact and law, to which defendant replied that it is not the general practice of the Court of Federal Claims Section of the Tax Division to prepare written contentions of fact and law. Plaintiffs explained that defendant's position appears contrary to the express rule—and leaves plaintiffs unable fulfil their obligation to summarize and fully respond to defendant's positions in this memorandum. Defendant insisted that its obligation could be fulfilled by orally disclosing its contentions of fact and law. Accordingly, defendant attempted to orally describe its contentions of fact and law (noted below in sections II.D. and IV.B.). But defendant was unable to articulate its position with respect to numerous issues of fact and law. Where it did articulate a position, the position was not well defined and disclosed few relevant facts.

On the afternoon of November 21, 2016—nearly one week after the Meeting of Counsel, and on the cusp of the Thanksgiving holiday—defendant provided plaintiffs with a "Written Statement Regarding Defendant's Contentions as to Facts and Law." Defendant's untimely disclosure contained 69 paragraphs of "Contentions as to Facts," and 36 paragraphs of

"Contentions as to Law."  Some of the contentions had not been previously disclosed in any form.  None of the contentions were specifically linked by defendant to the Counts or defenses at issue in this case.  Defendant simply lumped all of its factual assertions into a fact section and all of its legal contentions into a law section, eschewing subheadings.  Defendant's failure in this regard is striking because plaintiffs' written Contentions as to Facts and Law—which defendant had in its possession for nearly a week—separately addressed the facts and law relevant to each of the four counts at issue in this case.  Defendant's untimely disclosure, shortly before a major national holiday, provided plaintiffs with less than one full work week to incorporate defendant's assertions into this filing.

Plaintiffs respond to the particular facts (and law in section IV.B., below) raised in the Revised Interrogatories Responses and orally during the Meeting of Counsel below.  Plaintiffs also attempt to address defendant's Contentions as to Facts and Law, although its untimeliness and lack of organization hinders plaintiffs' ability to do so.  In light of defendant's previously incomplete disclosures, as well as its untimely and unorganized Contentions as to Facts and Law, plaintiffs anticipate that it will be necessary to file a Response to defendant's Memorandum of Contentions as to Facts and Law.

### 1.  Count One

This Court has previously recognized that plaintiffs would be entitled to a carryback of the 2009 credits to 2008.  It also recognized that section 904(c) requires that, "Any excess foreign tax '*shall* be deemed taxes paid or accrued to foreign countries or possessions of the

United States in the first preceding taxable year and in any of the first 10 succeeding taxable years, *in that order* and to the extent not deemed taxes paid or accrued in a prior taxable year.'"[25]

Defendant stated in its Revised Interrogatory Responses that, "Defendant does not dispute that if the distribution Mina Gerowin Herrmann received from PELLP at the beginning of 2009 is determined to be properly included in the Herrmanns' 2008 tax year, then the Herrmanns are *permitted* to carryback to 2008 a portion of the foreign tax credit related to the tax they paid to the U.K. during 2009."[26]   Stating that plaintiffs are *permitted* to carryback to 2008 their 2009 excess foreign tax credits understates the rule of section 904(c) quoted by this Court above.  Section 904(c) goes beyond permitting taxpayers to carryback excess foreign tax credits to the previous year, it actually *requires* that the excess foreign tax credits in this case be carried back one year to 2008.

Despite defendant's understated acknowledgment of the operation of section 904(c), defendant argued in its Revised Interrogatory Responses that "[t]he Herrmanns are not permitted to use the same foreign tax credits twice."  It lists the facts relevant to that position, as "Ms. Gerowin Herrmann's receipt of the distribution from PELLP at the beginning of 2009, filing of U.S. tax returns, and payment of taxes to the U.K."  Plaintiffs are unsure what is meant by "filing of U.S. tax returns" as is quoted above.  Defendant's list of facts is confusing because it is confused.

Defendant also stated that "[t]o the extent it prevails on Counts Two and Three, the facts that support the proper resolution of Count One are the facts that relate to plaintiffs' ability to carry back foreign tax credits from 2009, and subsequent years, to 2008.  The facts include

---

[25]   *Herrmann v. United States*, No. 14-941T, Doc. No.33 filed October 23, 2015 at *16; 124 Fed. Cl. 56, at 69 (Ct. Fed. Cl. 2016) (emphasis added).

[26]   Revised Interrogatory Responses at 4 (emphasis added).

plaintiffs' payment of foreign taxes to the U.K. in 2009 on the amount Mina Gerowin Herrmann received in January 2009, the filing of plaintiffs U.S. tax returns claiming those foreign taxes, and plaintiffs' past application of those foreign tax credits to tax years other than 2008."[27] Defendant admits that there is no dispute as to the receipt of the 2008 Bonus in January 2009, or the payment by plaintiffs of all U.K. taxes in 2009 (and those facts are further supported by documentation).[28]  As for defendant's suggestion that plaintiffs may not be entitled to carry its excess 2009 U.K. taxes to 2008 because plaintiffs may have carried those excess taxes forward to 2010 and later years, such an argument based on a double use of foreign tax credits is not a reason to deny plaintiffs relief pursuant to Count One.   If plaintiffs claimed the excess 2009 foreign tax credits as a carryforward in 2010 and other years, but should have claimed them as a 2008 carryback, the IRS's proper recourse under the law is to allow plaintiffs to claim those excess 2008 foreign tax credits as a carryback to 2008, and then to disallow the use of those credits in 2010 and later years.  But here, the IRS will not need to go to the trouble of disallowing plaintiffs' foreign tax credit carryforwards.  Plaintiffs have stated that they do not intend to use foreign tax credits more than once, and that they would address affected years with defendant in computing the proper refund due to plaintiffs, under the supervision of the Court.

Plaintiffs contend that defendant has not articulated facts that would bar resolution of Count One in favor of plaintiffs, either in its Revised Interrogatory Responses, or orally during the Meeting of Counsel.  Indeed, defendant appeared to concede at the Meeting of Counsel that no issues of fact or law remain in dispute with respect to Count One, except for the issue of computation.  Defendant's Contentions as to Facts and Law also does not appear to raise an issue of material fact (or law) relevant to Count One.  Accordingly, plaintiffs should be entitled to

---

[27]  *Id.*

[28]  *See* Answer at ¶¶ 1, 27; Complaint at ¶¶ 1, 27.

carryback their excess 2009 foreign tax credits to 2008 and are entitled to a refund of approximately $5,200,000 with respect to Count One, plus overpayment interest, *unless* the Court decides plaintiffs are entitled to a full refund of the amount in controversy in this case based on one or more of the other Counts. If the Court finds that plaintiffs are entitled to a full refund, then the partial refund sought in Count I becomes moot.

### 2. Count Two

Defendant explained in its Revised Interrogatory Responses that the following list of purported facts form the basis of its position with respect to Count Two:

1. The distribution made to Mina Gerowin Herrmann at the end of 2008 was properly determined to be included in the Herrmanns' taxable income for tax year 2008.

2. Mina Gerowin Herrmann was a partner in PELLP.

3. Mina Gerowin Herrmann was not an employee of PELLP.

4. The reason that Mina Gerowin Herrmann received the distribution from PELLP at the beginning of January 2009 and the nature of that distribution.

5. The calculation of Mina Gerowin Herrmann's partnership distribution for 2008.

6. Mina Gerowin Herrmann's compensation from Paulson & Co., Inc, prior to her joining PELLP as a partner.

7. Mina Gerowin Herrmann's distribution from PELLP.

8. Mina Gerowin Herrmann joining PELLP as a partner.

9. Mina Gerowin Herrmann's role at Paulson & Co., Inc. and PELLP.

10. The activities performed by Mina Gerowin Herrmann at Paulson & Co., and PELLP.

11. The Herrmanns' filing of all tax returns for tax years 2008 – 2010 (and items of income and credit taken on those returns).

12. The distribution made to Mina Gerowin Herrmann at the end of 2008 was not a payment to her for services performed in a capacity other than as a partner.

13. The risk associated with Mina Gerowin Herrmann receiving the PELLP distribution made to her at the end of 2008.

14. The determination of the amount paid to Mina Gerowin Herrmann at the end of 2008 that is at issue in this case.

15. PELLP's receipt of fees.

16. The profits of PELLP.

17. Capital contributions to PELLP.

18. Mina Gerowin Herrmann's risk in PELLP.

19. PELLP distributions.[29]

Defendant did not provide any detail in its Revised Interrogatory Responses other than what is listed above. Many of the 19 items defendant lists are vague and unclear. Some are merely descriptions of defendant's position or arguments. Others confuse facts with issues of law. Some are topical categories. Very few are specific facts and none, in substance, support defendant. For example, items 1, 2, 3 and 12 are legal conclusions. Items 4, 18, and 19 are vague, and the remainder of the items are topical categories of facts. Plaintiffs specifically address only several items from defendant's list in its Revised Interrogatory Responses. Even that, however, will require plaintiffs to speculate about what defendant will attempt to prove.

a. *Bona fide* partner

Defendant also indicated at the Meeting of Counsel that it will argue Ms. Gerowin Herrmann was a PELLP partner for U.S. tax purposes because she signed the Deed of Adherence and made an initial contribution to PELLP of £30,000 pounds, and years later, made a further contribution of £12,000 pounds upon request by the PELLP bookkeeper. Plaintiffs do not dispute the contributions or that Ms. Gerowin Herrmann signed the Deed of Adherence. Those facts are not persuasive, however, because they are merely formalistic. As is described in more detail below, whether Ms. Gerowin Herrmann was a partner for U.S. federal tax purposes is a matter of substance, not mere form.[30] Plaintiffs will establish that Mrs. Gerowin Herrmann was not a partner because the substance of the arrangement and the totality of the facts demonstrate

---

[29] Revised Interrogatory Responses at 5-6.

[30] *TIFD III-E, Inc. v. U.S.*, 459 F.3d 220 (2d Cir. 2006) (Castle Harbour II); *ACM P'ship v. Comm'r*, 157 F3d 231 (3d Cir. 1998); *See also Frank Lyon Co. v. United States*, 435 US 561, 573 (1978) (stating that the Supreme Court has "looked to the objective economic realities of a transaction rather than the particular form the parties employed."); *Comm'r v. Culbertson*, 337 U.S. 733, 741-42 (1949) (citations omitted); *Comm'r v. Tower*, 327 U.S. 280 (1946).

that Ms. Gerowin Herrmann did not participate in profits of PELLP and was compensated and functioned in a manner equivalent to an employee.  Similarly, plaintiffs will show that even if Ms. Gerowin Herrmann was a partner for U.S. federal tax purposes, the 2008 Bonus was a payment to her in a non-partner capacity under section 707(a)(2)(A) based on substance rather than form.

Defendant also stated during the Meeting of Counsel that it will rely on two items to establish that PELLP had profits which it distributed to Ms. Gerowin Herrmann:  the PELLP Sub-Advisory Agreement and the payment of an "investment management fee" to PELLP by Paulson Inc.  As discussed above, the Sub-Advisory Agreement —which neither John Paulson nor Chris Bodak recognize, and which was signed on behalf of Paulson Inc. and PELLP by the same person—is a fiction.  It did not, in fact, have any impact on the relationship between Paulson Inc. and PELLP.  Nor, as explained below, did it alchemically convert the payments from Paulson Inc. to Ms. Gerowin Herrmann into a participation in PELLP profits.

During the Meeting of Counsel, defendant articulated for the first time its interpretation of the *Culbertson* case.  Defendant's interpretation included reference to a test consisting of six "factors" that in its view are relevant to the determination of whether Ms. Gerowin Herrmann was a *bona fide* partner of PELLP.   Although plaintiffs note that *Culbertson* has not been interpreted so rigidly, the "factors" as articulated by defendant were:  (1) "joint contribution," (2) "trade or business purpose for joining the partnership," (3) "ownership interests," (4) "share of profits and losses," (5) "control of the business", and (6) "representation to others that the business is a partnership."

Defendant stated that item (1) was met because Ms. Gerowin Herrmann made a contribution to PELLP;  item (2) was met because Ms. Gerowin Herrmann went to London to

find and make European investments and joined the partnership for that purpose; and item (3) was met because Ms. Gerowin Herrmann (just as with item (1)) made a contribution to PELLP. With respect to item (4), defendant stated that the payment from Paulson Inc. to PELLP a few days before the end of the 2008 calendar year comprised both "investment management fees" and 2008 profits for PELLP.  The portion of that payment that was immediately used to pay the 2008 Bonus was, in defendant's view, Ms. Gerowin Herrmann's share of PELLP profits. Regarding item (5), defendant stated that Ms. Gerowin Herrmann had managerial control of PELLP by virtue of her role in the partnership and the investment analyst services she provided with respect to the Paulson Inc. funds.  Defendant did not otherwise elaborate when asked for specific facts in support.  As for item (6), defendant stated that evidence exists that the partnership was held out to third parties as a partnership for U.S. tax law purposes.  Plaintiffs again asked for examples and defendant pointed only to the Partnership Agreement and Deed of Adherence.

As discussed in section IV.B.2 below, plaintiffs contend that defendant's reliance on the purported factors listed above is misplaced because those factors are formalistic and do not comport with the substance of Ms. Gerowin Herrmann's financial arrangement with Paulson Inc. and PELLP.  Notwithstanding, plaintiffs recognize that Ms. Gerowin Herrmann made capital contributions to PELLP.  But those capital contributions were *de minimis* compared to her annual bonuses and she rightfully expected them to be returned to her, which they were.  Plaintiffs deny that Ms. Gerowin Herrmann had a business purpose for joining PELLP.  She easily could have continued to perform in London the identical services for Paulson Inc. that she performed when in New York as an employee, but was asked to join PELLP in order to minimize Paulson's tax obligtions.  Plaintiffs do not understand defendant's contention relating to "ownership interests,"

as defendant did not distinguish it from item (1) or elaborate further during the meeting or subsequently.  Plaintiffs assert that under the Partnership Agreement, Ms. Gerowin Herrmann had no percentage interest in PELLP or voting rights in PELLP, which in substance was owned and controlled by John Paulson.  Furthermore, in regard to item (4), Ms. Gerowin Herrmann did not share in the profits of PELLP.  Ms. Gerowin Herrmann's bonus at calendar year end was determined pursuant to the same formula as before her move to London, that is, 2% of net incentive fees earned by Paulson Inc., not PELLP, in that calendar year, based on the performance of the Merger funds and the Event (Advantage) funds managed by Paulson, Inc.—and had no relationship to any profits of PELLP.  Ms. Gerowin Herrmann had no voting rights and no managerial authority with respect to PELLP, and thus could not have had "managerial control" as defendant contends.  Finally, Ms. Gerowin Herrmann did not represent to third parties that she was a partner for U.S. federal tax purposes, and instead ordinarily referred to herself as a "Managing Director," a standard industry term.  Neither did she represent to others that PELLP was a partnership for U.S. federal tax purposes.  Evidence will demonstrate that Paulson Inc. also did not hold out Ms. Gerowin Herrmann to investors as a partner in PELLP for U.S. federal income tax purposes.

In its Written Statement Regarding Defendant's Contentions as to Fact and Law, defendant also made the following additional factual assertions that could be relevant to whether Ms. Gerowin Herrmann was a *bona fide* partner:

    i.    On January 8, 2008, Mina Gerowin Herrmann signed on as a Member of PELLP. Mina Gerowin Herrmann agreed to 'observe and perform the terms and conditions' of PELLP's partnership agreement.

    ii.    Mina Gerowin Herrmann filed U.S. tax returns for 2009 thereafter until she resigned from PELLP on the basis that she was a partner in PELLP.  She held out that she was a partner for federal tax purposes in PELLP.

iii.    PELLP is governed by a partnership agreement.

iv.    PELLP receives its income under a sub-advisory agreement with Paulson & Co, Inc.

v.    PELLP and its members had a valid business purpose, and sought to earn profit.

vi.    PELLP paid partnership distributions out of profits.

vii.    Mina Gerowin Herrmann held a significant amount of experience in the hedge fund industry and she contributed services related to that expertise to PELLP.

viii.    Mina Gerowin Herrmann filed her tax returns in the U.S. and U.K. as a partner.

ix.    Mina Gerowin Herrmann shared in PELLP's earnings with other partners.

x.    Mina Gerowin Herrmann held herself out as the Managing Director of PELLP.

xi.    Mina Gerowin Herrmann held a profits interest in PELLP's earnings.

xii.    PELLP earned all of its income directly from Paulson & Co., Inc.

Plaintiffs contend, as explained in section II.A. above, that the Partnership Agreement and Sub-Advisory Agreement were ignored and certainly did not govern PELLP, that PELLP did not generate or distribute "earnings" or "profits," that Ms. Gerowin Herrmann held no interest in PELLP's "profits" or "earnings," and that she received no distribution of "earnings" or "profits" from PELLP.  As for plaintiffs' tax returns, as explained in section II.B., plaintiffs performed due diligence in attempting to meet all of their U.S. and U.K. tax obligations.  Plaintiffs also, in good faith, relied on the accounting firm Frank Hirth, highly qualified and respected tax advisors, to prepare all of their U.S. and U.K. tax returns.  Frank Hirth prepared, and plaintiffs without alteration timely filed, plaintiffs' U.S. Forms 1040 for the taxable years 2008 through 2010.  By

merely filing those returns, Ms. Gerowin Herrmann had no intention of holding herself out as a partner, in substance, for U.S. tax purposes. Likewise, Ms. Gerowin Herrmann never held herself out as *the* Managing Director of PELLP, as defendant contends. "Managing director" is a standard term in the hedge fund industry. Ms. Gerowin Herrmann was *a* managing director at PELLP. By 2009, Paulson Inc. also had adopted the title managing director for senior New York personnel. At trial, the totality of the evidence will establish that Ms. Gerowin Herrmann was not in substance a partner in PELLP for U.S. tax purposes.

b. Section 707(a)(2)(A)

At the Meeting of Counsel, defendant acknowledged the first five section 707(a)(2)(A) factors from the legislative history. Defendant did so again in its Contentions as to Facts and Law. With respect to the first factor, payments not subject to appreciable risk, defendant's view is that Ms. Gerowin Herrmann's bonus was subject to the same risks faced by Paulson Inc., and thus there was a risk that she would not be paid if the Merger and Event funds performed poorly. Defendant also asserted in its written Contentions as to Facts and Law that, "Mina Gerowin Herrmann's compensation was imbued with significant entrepreneurial risk and tied to the business success of the venture. Indeed, the majority of it was directly tied to – in fact, a direct percentage (2%) of – the net incentive fees earned by the Event Fund and Merger Fund." Plaintiffs agree that Ms. Gerowin Herrmann's compensation was based on 2% of the net incentive fees earned by Paulson Inc. from its management of the Merger funds and Event (Advantage) funds. Those net incentive fees, however, are subject to the entrepreneurial risk of *Paulson Inc*., not PELLP. The "venture" to which those net incentive fees relate likewise is *Paulson Inc*., not PELLP. Defendant capriciously conflates Paulson Inc. and PELLP in this

regard, while at all other times obstinately demarcates the two entities in its effort to elevate form over substance.

As for the second factor, transitory partner status, defendant asserted in its Contentions as to Facts and Law that, "Mina Gerowin Herrmann did not hold a transitory interest in PELLP." Notwithstanding, defendant agreed with plaintiffs at the Meeting of Counsel that that if partner status is *not* transitory it is of no relevance in determining whether section 707(a)(2)(A) applies.

Defendant asserted that the third factor, close temporal relationship between payments, favors defendant because, in its view, the payments made by PELLP to Ms. Gerowin Herrmann did not share a close temporal relationship with the services performed.  Defendant also stated in its Contentions as to Facts and Law that, "Plaintiffs have provided no evidence suggesting that Mina Gerowin Herrmann received a distribution in a time frame comparable to a time frame that PELLP made a payment to a non-partner service provider."  As discussed in section IV.A.2., below, the payments made by PELLP to Ms. Gerowin Herrmann *did* have a close temporal relationship with the services performed as illustrated by the legislative history.  Defendant's contention that plaintiffs must show that the 2008 Bonus payment to Ms. Gerowin Herrmann was comparable to payments made by PELLP to non-partner service providers is red herring. No such requirement exists under the statute, legislative history or regulations.

With respect to the fourth factor, tax avoidance purpose, defendant acknowledged that evidence exists in the record that PELLP adopted the form of a partnership to minimize its U.K. and U.S. employment tax liabilities.  Defendant disputed, however, whether as a matter of law tax minimization is tantamount to tax avoidance as contemplated by the section 707(a)(2)(A) factors described below.

Finally, regarding the fifth factor, disproportionately small interest in partnership profits in relation to the allocation, defendant believes the relevant "interest in" profits for purposes of the comparison is Ms. Gerowin Herrmann's bonus formula. Defendant further asserted in its Contentions as to Facts and Law that, "Mina Gerowin Herrmann had a valuable and continuing profits interest that was not small in relation to the payment she received." As discussed above and in section IV.A.2., below, Ms. Gerowin Herrmann had a disproportionately small interest in partnership capital in relation to the 2008 Bonus and did not participate at all in any purported profits of PELLP beyond the bonus payment in question, indicating that she had no interest in PELLP profits. Defendant's reference to Ms. Gerowin Herrmann's bonus formula once again conflates Paulson Inc. and PELLP. Her bonus formula was determined while she was an employee in New York and constituted an agreement with John Paulson and Paulson Inc.; it had nothing whatsoever to do with PELLP.

Defendant did not address its view on the totality of the factors.

Aside from the *Culbertson* and Section 707(a)(2)(A) discussions, defendant stated during the Meeting of Counsel that Ms. Gerowin Herrmann's compensation *was not* determined in accordance with the partnership agreement. Defendant also asserted that Ms. Gerowin Herrmann's compensation *was* determined by a formula established by John Paulson. Plaintiffs agree with both of those contentions of fact.

### 3. Count Three

Defendant stated in its Revised Interrogatory Responses that the following non-exhaustive list of facts form the basis of its position with respect to Count Three:

1. Plaintiffs originally filed Form 1040 for tax year 2008 elected to claim foreign tax credits on the cash basis. Plaintiffs attempted to change their election from the cash to accrual basis on a Form 1040X.

34

2. Plaintiffs paid foreign taxes imposed on Mina Gerowin Herrmann's 2008 partnership distribution to the U.K. in 2009.

3. The amount Mina Gerowin Herrmann received from PELLP in the beginning of 2008 was properly includable in the Herrmanns' 2008 U.S. tax year.

4. Plaintiffs did not validly elect to compute their foreign tax credit under the accrual method for 2008.

5. Plaintiffs' 2008/2009 U.K. tax liability was not fixed at the end of their 2008 U.S. tax year.

6. The Herrmanns are not owed a refund of $7,860,000.[31]

With respect to item 1, plaintiffs acknowledge that in their original 2008 Form 1040, plaintiffs used the cash basis for determining foreign tax credits. Plaintiffs contend that they did not "attempt" to elect to use the accrual basis for determining their 2008 foreign tax credits, but instead actually did make such an election by amended return. Regarding item 2, plaintiffs agree that they paid foreign taxes imposed on the 2008 Bonus to the U.K. in 2009. Plaintiffs disagree that the 2008 Bonus was a "partnership distribution." Items 3, 4, and 6 above are legal conclusions for which defendant has not cited any support. Defendant has neither produced nor pointed to any evidence that would support item 5. Defendant did not articulate any further facts during the Meeting of Counsel, or subsequently in its written Contentions as to Facts and Law. Accordingly, plaintiffs' position is that defendant has not identified any facts which would support defendant's position with respect to Count Three. Additionally, defendant's position with respect to Count Three is inconsistent with the U.S./U.K. Tax Treaty, an authority that plaintiffs clearly have relied on and discuss in depth in section IV.A.3., below.

### 4. Count Four

Defendant explained in its Revised Interrogatory Responses that the following non-exhaustive list of purported facts form the basis of its position with respect to Count Four:

---

[31] Revised Interrogatory Responses at 7.

1. The IRS did not exclude Mina Gerowin Herrmann from "meaningful participation" during the audit of PELLP.

2. The IRS did not "violate" TEFRA.

3. The IRS did not "violate" I.R.C. § 6225.

4. The Herrmanns' representatives did represent the Herrmanns on calls with the IRS that occurred during the audit of PELLP.

5. The IRS communicated with PELLP's tax matters partner during the PELLP audit.

6. The IRS sent correspondence to the Herrmanns with respect to tax year 2008 as required by the Internal Revenue Code.

7. Plaintiffs' representatives raised certain issues that were beyond the scope of the audit.

8. The Herrmanns' representatives had contact with numerous IRS officials from different IRS offices during the Herrmann's individual audit and the audit of PELLP.

Item 1 is a conclusory statement, and items 2 and 3 are legal conclusions. Item 4 omits the fact that the IRS concealed from the Herrmanns and their representatives the fact that the PELLP audit existed and was ongoing even though the IRS had a statutory obligation to disclose it. The IRS also was aware of that obligation and told PELLP about it. Plaintiffs intend to put into context items 5 through 8 (to the extent that they are true) through the use of documentary evidence, deposition testimony of Nicola Dunn, and trial testimony of plaintiffs and Paul Hocking. Defendant offered no additional contentions of fact with respect to Count Four at the Meeting of Counsel. In its Contentions as to Facts and Law, defendant also stated that, "Plaintiffs have not identified any advice from their advisors that explains plaintiffs' failure to report Mina Gerowin Herrmann's so-called bonus on any 2008 or 2009 U.S. Form 1040 prior to filing their claim for refund in 2012." That assertion is patently false, as detailed in section II.B., above.

While it has not yet done so expressly, plaintiffs note that defendant may assert in its defense to Count Four that a 2008 K-1 was provided by PELLP to the Herrmanns in 2009. As

mentioned previously, no admissible documentary or other credible evidence exists that would

support such an assertion.


III.     **Statement of Issues of Fact and Law**

This case requires the resolution of the following ultimate issues of fact and law for the

tax year 2008:

     A.  Whether plaintiffs are entitled to a refund of the portion of the October 11, 2012 payment (inclusive of interest) attributable to defendant's alleged error on the Notice of Computational Adjustment.

     B.  Whether Ms. Gerowin Herrmann was a *bona fide* partner in PELLP for U.S. federal income tax purposes.

     C.  Whether section 707(a)(2)(A) applies to the 2008 Bonus in the event that the Court finds that Ms. Gerowin Herrmann was a *bona fide* partner in PELLP for U.S. federal tax purposes.

     D.  Whether plaintiffs are entitled to use the accrual method with respect to foreign tax credits for 2008 and later years as a result of their section 905(a) accrual election.

     E.  Whether defendant violated TEFRA in its treatment of plaintiff during the audits of PELLP and of plaintiffs.


IV.     **Summary of Relevant Law**

A.  Plaintiffs' Position

Count One represents plaintiffs' claim that the IRS should refund to plaintiffs

approximately $5,200,000 of taxes and interest improperly assessed as a result of the foreign tax

credit error in the Notice of Computational Adjustment.  Count Two consists of two alternative

positions.  The position advanced in part (a) of Count Two is that Ms. Gerowin Herrmann was

not a *bona fide* partner in PELLP for U.S. federal income tax purposes. Part (b) of Count Two

represents plaintiffs' position that even if Ms. Gerowin Herrmann had been a *bona fide* partner

for U.S. federal tax purposes, section 707(a)(2)(A) would apply to the 2008 Bonus.  In either

case, the 2008 Bonus would not be income to the plaintiffs in the 2008 tax year. Count Three represents plaintiffs position that whether or not Ms. Gerowin Herrmann was a *bona fide* partner in PELLP, plaintiffs are entitled to use the accrual method to compute foreign tax credits as a result of their election to do so under section 905(a). The available foreign tax credits offset all asserted tax liability for 2008. Count Four overlays Counts One through Three in that it seeks redress for the misuse of TEFRA by the IRS throughout the audits of PELLP and plaintiffs.

Counts Two and Four survived defendant's motion to dismiss and are before the Court. Counts One and Three were not challenged by defendant and similarly remain before the Court. Plaintiffs filed a motion for partial summary judgment with respect to Count One, which was denied by the Court on grounds that it could not enter judgment on Count One until it has also reached a final disposition of Counts Two and Three. The Court did, however, recognize in its opinion resolving plaintiffs' motion that with respect to Count One, that the Herrmanns would be entitled to a substantial refund.

The law relevant to plaintiffs' position is explained below with respect to each of plaintiffs' four counts.

> 1. *Count One - Application of the Code to the instant facts requires that plaintiffs' 2009 excess foreign tax credits should have been carried back to 2008, entitling plaintiffs to a refund of approximately $5,200,000 of taxes and interest improperly assessed as a result of the error in the Notice of Computational Adjustment*

The law with respect to Count One was fully briefed by plaintiffs and defendant in prior proceedings before the Court.[32] In response, the Court issued an opinion on August 23, 2015

---

[32] Plaintiffs' Motion for Partial Summary Judgment and Memorandum in Support, 14-941T, Doc. No. 20, filed on Aug. 7, 2015; Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment, 14-941T, Doc. No.24, filed on Sept. 8, 2015; Plaintiffs' Reply to Defendant's Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment, 14-941T, Doc. No.26, filed on Sept. 17, 2015.

recognizing that section 904(c) requires the carryback of the excess 2009 foreign tax credits in

this case:

> [a]ny excess foreign tax credit 'shall be deemed taxes paid or accrued to foreign countries or possessions of the United States in the first preceding taxable year and in any of the first 10 succeeding taxable years, in that order and to the extent not deemed taxes paid or accrued in a prior taxable year.' In other words, the Herrmanns would be entitled to a one-year carryback to 2008 of foreign taxes paid to the U.K. in 2009, even if Ms. Herrmann is ultimately determined to have received her bonus early in 2009 as a partner.[33]

The Court further stated that the Herrmanns will be entitled to a substantial refund, but that the

amount of the refund would be determined only after all issues associated with 2008 are

resolved.[34]

Accordingly, if this Court resolves Counts Two, Three, and Four in favor of defendant,

the refund claimed by plaintiffs pursuant to Count One should be granted.  To further support

plaintiffs position with respect to Count One, plaintiffs will present deposition testimony of Joe

Scott, internal IRS emails and notes, trial testimony of plaintiffs and Paul Hocking, IRS

communications reflecting the audit of plaintiffs' foreign tax credits for 2008, communications

from plaintiffs' representatives providing substantiation to the IRS to enable the IRS to calculate

plaintiffs' foreign tax credits, IRS communications reflecting the IRS's calculation of plaintiffs'

foreign tax credits for 2008, and IRS Form 4549-A.

### 2. Count Two

Count Two of plaintiffs' complaint argues that Ms. Gerowin Herrmann was not a *bona*

*fide* partner for U.S. federal income tax purposes, and that even if she was, the 2008 Bonus was a

---

[33] *Herrmann v. United States*, No. 14-941T, Doc. No.33 filed October 23, 2015 at *16; 124 Fed. Cl. 56, at 69 (Ct. Fed. Cl. 2016) (Internal citations omitted).

[34] *Id.*

section 707(a)(2)(A) payment made to her in a non-partner capacity. Under either argument, the 2008 Bonus would be taxable to plaintiffs when it was received in 2009. The two alternative arguments raised by Count Two are addressed in turn.

> a. *Ms. Gerowin Herrmann was not a bona fide partner in PELLP for U.S. federal income tax purposes under the tests set forth in relevant caselaw and the 2008 Bonus should have been taxable when received by her in 2009*

If Ms. Gerowin Herrmann was not a *bona fide* partner in PELLP in 2008 under U.S. federal tax law, the 2008 Bonus was not a partnership distribution to her and the putative allocation of PELLP profit to her for 2008, on which the Notice of Computational Adjustment was based, was invalid. The result would be to characterize the 2008 Bonus as compensation for services rendered in 2008 but received by Ms. Gerowin Herrmann in 2009, taxable to her for U.S. federal income tax purposes in that year rather than 2008.

Section 761(a) defines the term "partnership" for purposes of the Code to include "a syndicate, group, pool, joint venture or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on" and which is not classified as a corporation, trust, or estate. A partnership that is otherwise validly formed under state law with two or more state law members will not necessarily be respected as a partnership for federal income tax purposes.[35] At issue here is Ms. Gerowin Herrmann's putative status as a partner. In the words of the Supreme Court, in determining a party's status as a partner for U.S. federal income tax purposes, the question is whether, considering all the facts, the party "intended to join . . . for the purpose of carrying on business and sharing in the profits or losses or both."[36] That

---

[35] *See* Treas. Reg. § 301.7701-1(a)(1) ("[w]hether an organization is an entity separate from its owners for federal tax purposes is a matter of federal tax law and does not depend on whether the organization is recognized as an entity under local law").

[36] *Comm'r v. Tower*, 327 U.S. 280 (1946).

test has been carried forward by the Supreme Court and has come to be known as the *Culbertson* test.[37]

In applying the principles of the Supreme Court's *Culbertson* test, the Court of Appeals for the Second Circuit recently said that it was, "compelled to look not so much at labels used by the partnership" in calling a party a partner, but instead should look at the underlying circumstances to determine whether the party's economic interest was "intertwined with the fortune of the business."[38] That is the case even if the partnership has some economic substance and serves a business purpose and, thus, is not a sham.[39]

Ms. Gerowin Herrmann was not a partner in PELLP for U.S. federal tax purposes, despite signing the Deed of Adherence and contributing capital to PELLP. A partner is one whose economic rewards are based on the entrepreneurial profits of the partnership. That, in substance, was not the case here. Ms. Gerowin Herrmann unequivocally did not share in the profits of PELLP. Ms. Gerowin Herrmann's bonus compensation, including the 2008 Bonus, was tied to the net incentive fees of Paulson Inc., not PELLP, earned from specific hedge funds that were sponsored and managed by Paulson Inc., not PELLP. Specifically, Ms. Gerowin Herrmann's 2008 bonus was based on 2% of the net incentive fees earned through the end of 2008 by Paulson Inc. from its management of the Merger funds and Event (Advantage) funds, exactly as her bonus had been determined in 2007 when she was an employee of Paulson. Inc. John Paulson, Chris Bodak and Ms. Gerowin Herrmann will all testify to this at trial, and defendant has produced no contrary evidence.

---

[37] *Culbertson*, 337 U.S. at 741-42 (citations omitted).

[38] *TIFD III-E, Inc. v. U.S.*, 459 F.3d 220 (2d Cir. 2006) (Castle Harbour II).

[39] *Id.*

Ms. Gerowin Herrmann's economic rewards were not based on the entrepreneurial profits of PELLP but instead on the success of Paulson, Inc. in profitably managing certain hedge funds. She did not share, in any meaningful way, in the fruits of the labors of others who were putative PELLP partners, nor did they share in hers, except to the extent those labors incidentally produced profits in specified hedge funds managed by Paulson Inc., not PELLP, to which her year end bonus was pegged.[40]  A finding that Ms. Gerowin Herrmann was not a *bona fide* partner would be consistent with the fact that the Partnership Agreement did not provide for a profit allocation for U.S. tax purposes that matched the formulaic bonuses or discretionary bonuses that were actually paid to PELLP members.  Indeed, there is no provision in the Partnership Agreement for paying bonuses at calendar year end while the PELLP fiscal year had three months left to run.  In effect, Ms. Gerowin Herrmann's 2008 Bonus would have been the same even if she had not joined PELLP and had remained an employee of Paulson Inc.  Her 2008 Bonus would have been the same if she had formally become an employee of PELLP, as was, at least initially, intended.  It would have been the same whether PELLP made a loss or a profit.  It would have been the same even if the other putative PELLP partners had not been members of PELLP but had themselves formally been employees.  In essence, the conduct of PELLP as a business was wholly irrelevant to Ms. Gerowin Herrmann's compensation.[41]  Ms. Gerowin Herrmann had no "meaningful stake in the success or failure of the enterprise" conducted by PELLP through its other members because her bonus – the vast majority of her total

---

[40]   Deposition of John Paulson at 150-151.

[41]   *See Castle Harbour II*. (holding that certain partners were not bona fide partners because only in a negligible fashion was their interest intertwined with the fortunes of the partnership's business).

compensation -- was calculated soley on the performance of other entities altogether.[42]  Under the formula, her compensation had nothing whatsoever to do with the enterprise of PELLP.

As is described in more detail in the facts above, Ms. Gerowin Herrmann's economic arrangement did not change in any material way as a result of joining PELLP.  Her duties, and thus the services she performed, were the same as before.  Her 2008 Bonus was determined by John Paulson the same way and under the same formula as it had been determined before (as were her PELLP bonuses in later years).  Moreover, her bonuses continued to be determined with reference to the performance of certain identified hedge fund entities managed by Paulson Inc., not PELLP.  And, very importantly, the 2008 Bonus was not determined or paid in conformity with the Partnership Agreement.[43]  Furthermore, PELLP lacked the funds needed to pay the 2008 Bonus.  The fact that cash sufficient to pay the 2008 Bonus was funneled at calendar year end from Paulson Inc. through PELLP to Ms. Gerowin Herrmann did not make her a *bona fide* partner in PELLP for U.S. federal tax purposes.

Not only was Ms. Gerowin Herrmann's compensation *not* determined by the profits of the enterprise, but Ms. Gerowin Herrmann had no managerial authority or control over the

---

[42]  *See Historic Boardwalk Hall, LLC v. Comm'r*, 110 A.F.T.R 2d 2012-5710 (3d. Cir. 2012), *rev'g* and *remanding* 136 T.C. 1 (2011) (holding that a party was not a *bona fide* partner because it lacked such a meaningful stake).

[43]  In essence, the money that the IRS argued PELLP distributed as "2008 profits" to Ms. Gerowin Herrmann and other PELLP members as the 2008 bonuses did not exist in PELLP until the last few working days of the calendar year, when Paulson, Inc. wired funds to PELLP specifically for the purpose of paying the year end bonuses, as determined by John Paulson.  The funds were wired to PELLP to be passed promptly to Ms. Gerowin Herrmann and other individual PELLP members as calendar year-end bonuses, in the respective specific amounts that had been individually determined by John Paulson at calendar year-end.  These supposed PELLP "profits" were not provided for in the Partnership Agreement, but rather were calculated at each calendar year end by John Paulson in New York, *irrespective* of PELLP's financial performance for any particular fiscal year ending March 31st as called for under the Partnership Agreement.  The bonuses of the three members were not even calculated in the same way.  Two were based on formulas tied to hedge funds managed by Paulson, Inc. and the third was wholly discretionary.

enterprise. As discussed above, Ms. Gerowin Herrmann also had no voting rights with respect to PELLP, whereas two other named partners purportedly did. In substance, Ms. Gerowin Herrmann continued on in 2008 to be an employee for U.S. federal income tax purposes and was not a *bona fide* partner in PELLP.

Plaintiffs respectfully request that the Court consider all the facts surrounding Paulson Inc., PELLP, and Ms. Gerowin Herrmann's participation in PELLP, such as it was, and whether the "actualities of their relation to the income did not change."[44] Those facts, on the whole, do not support the conclusion that Ms. Gerowin Herrmann was a *bona fide* partner in PELLP for U.S. federal income tax purposes, or that the 2008 Bonus represented a "profit" participation in PELLP by Ms. Gerowin Herrmann.

In support of the foregoing conclusion that Ms. Gerowin Herrmann was not a *bona fide* partner in PELLP, plaintiffs will present trial testimony of John Paulson, Chris Bodak, and Mina Gerowin Herrmann. In addition, plaintiffs will present documentary evidence, including compensation records for Ms. Gerowin Herrmann.

> b. *Even if Ms. Gerowin Herrmann had been a bona fide partner for U.S. federal tax purposes, application of the five factors set forth in the legislative history accompanying 707(a)(2)(A) require treating the 2008 Bonus as a payment to Ms. Gerowin Herrmann in a non-partner capacity and, therefore, taxable when received in 2009*

For the avoidance of doubt, application of section 707(a)(2)(A) would lead to the same ultimate treatment of the 2008 Bonus as would result if Ms. Gerowin Herrmann were found not to be a *bona fide* partner in PELLP for U.S. federal income tax purposes. Section 707(a)(2)(A) does so, however, by applying a more specific test and more specific factors than the caselaw described above. Section 707(a)(2)(A) is focused exclusively on the capacity in which a partner

---

[44] *Culbertson*, 337 U.S. at 746.

receives a payment from a partnership rather than her status as a partner.  It can apply to a particular payment, like the 2008 Bonus, even though the recipient is found to be, or is thought to be, a *bona fide* partner in the partnership for U.S. federal income tax purposes, and it does not require a finding to the contrary.

Defendant has treated the 2008 Bonus as a distribution of 2008 PELLP profit to Ms. Gerowin Herrmann accompanied by a 2008 profit allocation to her. That treatment was erroneous in light of applicable law, discussed above, which is relevant to Ms. Gerowin Herrmann's status with PELLP.  It also is erroneous pursuant to section 707(a)(2)(A).  Even if it is assumed that Ms. Gerowin Herrmann was a *bona fide* partner in PELLP in 2008, section 707(a)(2)(A) requires that the 2008 Bonus be treated as a payment by PELLP to Ms. Gerowin Herrmann in a capacity other than as a PELLP partner and therefore not included in her 2008 income.

As a general matter, payments made by a partnership to a partner may constitute distributions of partnership income or profit that is allocated to the partner under section 704. However, a purported partnership profit distribution is treated differently if section 707(a)(1) applies.  Section 707(a)(1) provides that when a partner engages in a transaction with a partnership in a non-partner capacity,  that transaction will be treated as occurring between the partnership and one who is not a partner.  A related provision, section 707(a)(2)(A), added to the Code in 1984, provides that:

> If -- (i) a partner performs services for a partnership or transfers property to a partnership, (ii) there is a related direct or indirect allocation and distribution to such partner, and (iii) the performance of such services (or such transfer) and the allocation and distribution, when viewed together, are properly characterized as a transaction occurring between the partnership and a partner acting other than in his capacity as a member of the partnership,

such allocation and distribution shall be treated as a transaction described in [section 707(a)(1)].

Thus, a "service transaction" meeting the requirements of section 707(a)(2)(A) is treated as governed by the section 707(a)(1) exception so that the purported profit distribution and allocation in question are treated as if they were a payment by the partnership to the partner as compensation for the performance of services rather than as a partnership profit distribution and allocation.

Section 707(a)(2)(A) was added to the Code by the Deficit Reduction Act of 1984 and has not been amended since then. The language of the statute does not define what is meant by the clause "a transaction occurring between the partnership and a partner acting other than in the capacity as a member of the partnership." Congress did provide guidance in legislative history, however, to distinguish between a partner acting in a capacity as a partner and a partner acting in a non-partner capacity under section 707(a)(2)(A).[45] Specifically, the legislative history accompanying the Deficit Reduction Act of 1984 as it relates to the enactment of section 707(a)(2)(A) provides six factors that Congress believed "should be considered in determining whether the partner is receiving the putative allocation and distribution in his capacity as a partner."[46] The five factors that are relevant here, described in greater detail below, analyze whether (1) the payment is subject to an appreciable risk, (2) the partner status of the recipient is transitory, (3) the distribution and allocation that are made to the partner are close in time to the partner's performance of services for or transfers of property to the partnership, (4) under all of the facts and circumstances, it appears that the recipient became a partner primarily to obtain tax benefits for himself or the partnership which would not have been available if he had rendered

---

[45] SENATE COMM. ON FINANCE, 98TH CONG., 2D SESS., DEFICIT REDUCTION ACT OF 1984, S. PRT. No. 169, VOL. I, at 227-30 (Comm. Print 1984).

[46] *Id*. at 227.

services to the partnership in his third party capacity, and (5) the value of the recipient's interest in general and continuing partnership profits is small in relation to the allocation in question.[47] Congress instructed that in applying the factors the "Treasury and courts should be careful not to be misled by possibly self-serving assertions in the partnership agreement as to the duties of a partner in his partner capacity, but should instead seek the substance of the transaction."[48]

The relevant five factors that underlie section 707(a)(2)(A) in a service partner context, like the instant one, confirm that the 2008 Bonus was a payment for services by PELLP to Ms. Gerowin Herrmann in a non-partner capacity under sections 707(a)(1) and 707(a)(2)(A). Those factors are discussed below.

### i) Payment Not Subject to Appreciable Risk

According to Congress, the first and most important factor under section 707(a)(2)(A) is whether the payment to the partner is subject to appreciable risk as to amount.[49] With respect to this factor, Congress provided that "[p]artners extract the profits of the partnership with reference to the business success of the venture while third parties generally receive payments which are not subject to the risk."[50] Allocations that subject the service partner to entrepreneurial risk of the partnership are generally considered a partnership distribution, whereas allocations that do not are viewed as fee payments.[51] Arrangements involving allocations under a formula or

---

[47] *Id.* at 227-28. The sixth factor asks whether the requirement that capital accounts be respected under section 704(b) makes income allocations which are disguised payments for capital economically unfeasible and, therefore, unlikely to occur. It is applicable only in the context of a transfer of property rather than a situation like the present one involving performance of services. Consequently, it is not discussed herein.

[48] *Id.* at 228.

[49] *Id.* at 227.

[50] *Id.*

[51] *Id.* at 227.

otherwise that are fixed, capped, or otherwise reasonably determinable without regard to the partnership under all of the facts and circumstances, serve to shield the service partner from entrepreneurial risk.[52]

Congress provided an example (Example 2 of the legislative history) to clarify the first factor.[53]  In the example, Congress said that "[t]here may be instances in which allocation/distribution arrangements that are contingent in amount may nevertheless be recharacterized as fees.  Generally, these situations arise only when (1) the partner in question normally performs, or has previously performed, or is capable of performing similar services for third parties; and (2) the partnership agreement provides for an allocation and distribution to such partner that effectively compensates him in a manner substantially similar to the manner in which the partner's compensation from third parties normally would be computed."[54]  Facts of the instant case closely fit that description, and those facts were not disputed by the IRS.  First, Ms. Gerowin Herrmann as a Paulson Inc. employee provided services that were identical to the services she subsequently performed for PELLP.  Second, the 2008 Bonus compensated Ms. Gerowin Herrmann for her services using the identical formula that Paulson Inc. used to compensate her for the same services when she was an employee there.  Her 2008 compensation—like her 2007 compensation—was based on the same formula tied to the net incentive fees received by Paulson Inc., not PELLP, from certain hedge funds managed by Paulson Inc., not PELLP.  The government, to date, has provided no contrary evidence.  Thus, under the first factor, the 2008 Bonus was a section 707(a)(2)(A) payment to Ms. Gerowin Herrmann other than in her capacity as a partner of PELLP.

---

[52]  *Id.*

[53]  *Id.* at 229-30.

[54]  *Id.* at 229.

Example 2 of the first factor goes on to describe a partnership that is formed to invest in stock and that admits a stock broker as a partner.[55] The broker partner receives a special allocation that is "contingent and not substantially fixed as to amount, [that] is computed by means of a formula like a normal brokerage fee and that, effectively, varies with the value and amount of services rendered rather than with the income of the partnership."[56] The example concludes that the contingent allocation should be treated as a fee under section 707(a), rather than as a distributive share and partnership distribution.

Just as the allocation in the example was intended to replicate a normal brokerage fee varying with the value and amount of services rather than the income of the partnership, here the 2008 Bonus was intended to replicate Ms. Gerowin Herrmann's formulaic compensation for services as an employee, varying with the net incentive fees paid to Paulson Inc., not to PELLP, by certain hedge funds, just as if she were still working for Paulson Inc. The IRS stated in the Claim Disallowance Letter that Ms. Gerowin Herrmann's 2008 Bonus was linked to profits of Paulson Inc., not to any profits of PELLP.[57] This is not precisely correct, as her bonus was linked to the net incentive fees paid by various hedge funds to Paulson, Inc. irrespective of whether Paulson, Inc. itself made a net profit. Ms. Gerowin Herrmann's bonus, what the defendant would characterize as her putative share of PELLP profit for 2008, was intended to replicate exactly what she would have been paid as an employee of Paulson, Inc. for the services

---

[55] *Id*. at 229-230.

[56] *Id*. at 230.

[57] IRS Claim Disallowance Letter, IRS Form 886-A (Primary Position) at 7 (stating that Ms. Gerowin Herrmann "had no rights to the bonus payment; it was subject to PCO's [Paulson & Co., Inc.'s] earnings and MG's [Ms. Gerowin Herrmann's] performance, which is exposed to the volatility of the hedge fund industry. Her bonus for each year was determined by JP [John Paulson] late in the year and he would make a verbal commitment to pay her an amount that was liked to PCO's [Paulson Inc.'s] profits.")

she rendered.  The 2008 Bonus was calculated just as it was in 2007, when she worked at Paulson, Inc., on the basis of net incentive fees paid to Paulson Inc. with respect to certain hedge funds, and then was funneled to Ms. Gerowin Herrmann through PELLP.  The 2008 Bonus was a payment to Ms. Gerowin Herrmann in a non-partner capacity.  The fact that her annual bonuses were subject to the variation inherent in the fluctuations of the net incentive fees earned by Paulson Inc. from year to year was not a risk *attributable to the business of PELLP*.  Thus, it is not the type of appreciable risk that Congress intended would require characterization of a service payment as a partnership distribution by PELLP under section 704.  Thus, this first, and most important, factor compels the conclusion, and confirms, that the 2008 Bonus was a section 707(a)(2)(A) payment to Ms. Gerowin Herrmann, not a distribution of partnership profits.

### ii)  Transitory Partner Status

The second factor analyzes the duration of partner status.[58]  "Transitory partner status in a service partner context suggests that a payment is a fee for services.  The fact that the partner status is continuing and not transitory, however, is of no particular relevance."[59]  The legislative history does not, however, define what is meant by the term "transitory."  As a result, it is difficult to determine whether Ms. Gerowin Herrmann's tenure with PELLP should be considered transitory.  On the one hand, it lasted several years.  On the other hand, she served at the whim of John Paulson who could have terminated her tenure whenever he chose to do so.  Thus, her status was at-will and unlike that of a true partner.  Arguably, because of situations like that, where tenure might appear long-term but in reality is not secure, Congress provided in describing this factor that if partner status is *not* transitory it is of no relevance in determining whether section 707(a)(2)(A) applies.

---

[58]  S. Prt. No. 169, at 227.

[59]  *Id.*

iii)     *Close Temporal Relationship Between the Payment and the Performance of Services*

The third factor requires consideration of whether the purported profit distribution and allocation to the partner are close in time to the partner's performance of services.[60]  An allocation close in time to the performance of services is more likely to be related to the services.[61]  Also, when the income subject to allocation arises over an extended period or is remote in time from the performance of services by a partner, the risk of not receiving payment (the first factor described above) may increase.[62]  Thus, a close temporal relationship between payment and performance of services is evidence that the purported distribution and allocation are, instead, a section 707(a)(2)(A) payment for services to a partner in a non-partner capacity.

The 2008 Bonus, like all bonus amounts received by Ms. Gerowin Herrmann for the years 2007 to 2011, was based on John Paulson's determination of Ms. Gerowin Herrmann's compensation tied to Paulson Inc.'s net incentive fees received from specified hedge funds in that year.  The 2008 Bonus was determined by John Paulson in late December 2008 to compensate Ms. Gerowin Herrmann for services performed that year.  Cash sufficient to pay her bonus was then funneled to PELLP by Paulson Inc., and $18,748,838 was, after conversion to British pounds, paid to her promptly, in a matter of days.  Those facts are characteristic of compensation under section 707(a)(2)(A).

Example 1 in the legislative history illustrates a close temporal relationship under circumstances involving a longer delay in payment than is presented by the annual bonuses in

---

[60]  *Id.*

[61]  *Id.*

[62]  *Id.*

this case.[63]  Example 1 involves a partnership's payments to an architect partner for architectural services related to construction of a commercial office building owned by the partnership.  The matching allocation of partnership gross income to the architect partner occurred during the first two years that the building was in operation.  Congress implicitly concluded that a time gap of one or two years between performance of services and payment (the time elapsed between completion of architectural services and the allocation payment made in the second year of the building's operation) was short enough to be temporally close for purposes of the third factor under section 707(a)(2)(A).[64]

The fact that the major portion of the 2008 Bonus, over 90 percent, was received in January 2009, within one week of the completion of Ms. Gerowin Herrmann's services during the 2008 calendar year, and the remainder was received within a matter of months, demonstrates an even closer temporal relationship than Congress contemplated in Example 1.  There was no risk that PELLP would not pay Ms. Gerowin Herrmann what she was due because at year end Paulson Inc. funneled cash to PELLP in an amount sufficient for prompt payment to Ms. Gerowin Herrmann and other individual members.  There was no practical risk that economic events attributable to PELLP or its business would affect payment to Ms. Gerowin Herrmann of the 2008 Bonus because the funds to pay her were provided by Paulson Inc. and then were promptly passed on to her by PELLP.  Those funds did not reside in PELLP for any significant time and not subject to the ostensible risk of PELLP's subsequently conducted business operations.  It is thus evident that the 2008 Bonus was a payment to Ms. Gerowin Herrmann in a non-partner capacity under section 707(a)(2)(A).

---

[63]  *Id.* at 228-29.

[64]  *Id*. at 229.

*iv)*     *Tax Avoidance Purpose*

The fourth factor asks "whether, under all of the facts and circumstances, it appears that the recipient became a partner primarily to obtain tax benefits for himself or the partnership which would not have been available if he had rendered services to the partnership in a third party capacity."[65]  However, the legislative history adds that "[t]he fact that a partner has significant non-tax motivations in becoming a partner is of no particular relevance."[66]

Paulson Inc. insisted that Ms. Gerowin Herrmann join PELLP as a member, rather than as an employee as originally intended.  This was suggested by Paulson Inc., in order to achieve an employment tax benefit for Paulson Inc. and PELLP under U.S. and U.K. law.  PELLP apparently was used by Paulson Inc. to avoid employment taxes that would otherwise have been applicable to compensation paid to people, like Ms. Gerowin Herrmann, who performed services for Paulson Inc. in the U.K.  PELLP's purpose in purporting to pay and allocate a share of profit to Ms. Gerowin Herrmann as a partner achieved significant tax avoidance *for Paulson Inc. and PELLP*.  That purpose fits squarely within the language of the legislative history and indicates that the 2008 Bonus was a payment to Ms. Gerowin Herrmann in a non-partner capacity under section 707(a)(2)(A).  Even if the Court were to conclude that avoidance of tax was irrelevant and Ms. Gerowin Herrmann joined PELLP solely for non-tax reasons (which is not supported by any evidence and which plaintiffs do not believe to be true), the fourth factor would simply be neutral, rather than indicate that the 2008 Bonus was a PELLP profit share to Ms. Gerowin Herrmann.

---

*Id.* at 228.

[66]  *Id.  See also In Re: G-I Holdings, Inc.,* 105 A.F.T.R. 2d 2010-697 (D. N.J. 2009).

The fifth factor asks "whether the value of the recipient's interest in general and continuing partnership profits is small in relation to the allocation in question."[67]  The fact that a partner's interest is "substantial, does not, however, suggest that the purported partnership allocation/distribution arrangement should be recognized."[68]

The purported 2008 PELLP K-1s that were eventually produced and given to Ms. Gerowin Herrmann in 2011 reflected an interest in PELLP held by Ms. Gerowin Herrmann of less than half of one percent.  Presumably, that was intended to represent her general and continuing share of PELLP purported profits.  The percentage of PELLP's putative profits for 2008 allocated to Ms. Gerowin Herrmann however, exceeded 25 percent of all year-end bonus payments.  Those two percentages, differing by more than fifty fold, are enormously disproportionate.  Her 2008 bonus – the purported allocation of 2008 PELLP profit --  dwarfed her miniscule general and continuing participation in PELLP as reflected in the 2008 PELLP K-1s.  That uncontroverted evidence indicates that under the fifth factor the 2008 Bonus was a section 707(a)(2)(A) payment to Ms. Gerowin Herrmann through PELLP and was not a partnership distribution.

*vi)*       *Totality of the Factors*

Based on the five factors under section 707(a)(2)(A), Congress must have intended that section 707(a)(2)(A) would apply to PELLP's payment to Ms. Gerowin Herrmann for her performance of services.  The IRS has acknowledged that the first factor is the most important

---

[67]    S. Prt. No. 169, at 228.

[68]    *Id.*

consideration in a determination of whether section 707(a)(2)(A) applies.[69]  That is consistent

with the prescription of Congress.  In the present case, the first factor leads inescapably to the

application of section 707(a)(2)(A) to the 2008 Bonus.  In addition, the third, fourth, and fifth

factors are present and confirm the applicability of section 707(a)(2)(A).  While the second

factor may be questionable here, by its own terms its absence is unimportant.  The IRS has

acknowledged as much in applying section 707(a)(2)(A).[70]

In light of the foregoing, section 707(a)(2)(A) applies to the 2008 Bonus.  It should be

treated as a payment for services by PELLP to Ms. Gerowin Herrmann in a non-partner capacity

and not as a distribution of partnership profits.  As such, it should be taxed to Ms. Gerowin

Herrmann in 2009, when she received it, and not in 2008.  The fact that the determination and

payment of the 2008 Bonus did not conform to the provisions of the Partnership Agreement and,

thus, appear to have violated the Partnership Agreement, also proves that PELLP was irrelevant

to the proper characterization of the 2008 Bonus.

In legislative history, Congress further provided that section 707(a)(2)(A) should lead to

the same consequences reached in Revenue Ruling 81-301[71] and in Revenue Ruling 81-300[72]

(except that the transaction in Revenue Ruling 81-300 should be treated as a transfer described in

707(a)).[73]  In Revenue Ruling 81-301, the IRS determined that distributions related to allocations

by a partnership, operating as an investment management company, to a general partner as

compensation for investment advice services were subject to section 707(a) (the precursor to

---

[69]  Priv. Ltr. Rul. 9219002 (Jan. 27, 1992).

[70]  *Id.*

[71]  Rev. Rul. 81-301, 1981-2 C.B. 144.

[72]  Rev. Rul. 81-300, 1981-2 C.B. 143.

[73]  S. PRT. NO. 169, at 230.

section 707(a)(2)(A)), and were thus deductible by the partnership. The services performed by the advisor partner for the partnership were substantially the same as those he rendered as an independent contractor or agent for persons other than the partnership. By adopting the conclusions reached in Revenue Ruling 81-301, Congress has in effect expressed its intent that transactions like the one described in the ruling should fall within section 707(a)(2)(A). The facts pertaining to the ruling are entirely consistent with the facts surrounding the 2008 Bonus at issue here. Accordingly, Revenue Ruling 81-301 supports treatment of the 2008 Bonus as a section 707(a)(2)(A) payment to Ms. Gerowin Herrmann other than in her capacity as partner.

Congress also affirmed Revenue Ruling 81-300, except Congress confirmed that the transaction in that ruling would be subject to section 707(a)(1) as a result of the enactment of section 707(a)(2)(A).[74] Revenue Ruling 81-300 involved facts that are "substantially similar" to the facts of the *Pratt* case discussed below, wherein a partnership was formed to purchase and operate a shopping center for which the general partners were to perform managerial services in exchange for a fee payment by the partnership. The IRS concluded that the managerial payments both in *Pratt* and in the ruling were *not* partnership distributions but instead were section 707(c) guaranteed payments. As noted in the legislative history, Congress agreed that the payments in Revenue Ruling 81-300 were not partnership distributions.[75] Congress also, however, required that they be treated as section 707(a)(1) payments by virtue of section 707(a)(2)(A).[76]

---

[74] S. PRT. NO. 169, at 230.

[75] *Id.*

[76] *Id.*

In light of the above, Count Two requires that the 2008 Bonus should not have been taxed to plaintiffs in 2008, the Notice of Computational Adjustment is wrong, and the refund claimed by plaintiffs should be granted.[77]

In support of the foregoing, plaintiffs anticipate presenting trial and deposition testimony of John Paulson, Chris Bodak, and Mina Gerowin Herrmann. In addition, plaintiffs anticipate presenting documentary evidence including various compensation documents for Ms. Gerowin Herrmann, a summary of the PELLP general ledger, the PELLP Partnership Agreement, and the Sub-Advisory Agreement. Plaintiffs also intend to present the work permit filed by PELLP with the U.K. immigration authorities on behalf of Ms. Gerowin Herrmann, and evidence of wire transfers made by Paulson Inc. and PELLP.

> 3. *Count Three – Plaintiffs' are entitled to accrue their U.K. taxes as of December 31, 2008 because plaintiffs' validly elected to adopt the accrual method under section 905(a) and the policy underlying the foreign tax credit requires that result*

If this Court were to determine that plaintiffs should have included the 2008 Bonus in income for U.S. federal tax purposes in 2008, as the IRS asserted in the Notice of Computational Adjustment, then plaintiffs' election to apply the accrual method under section 905(a) to determine their foreign tax credit for 2008 (and later years) should be allowed. Under section 901, a taxpayer may elect to credit foreign taxes against the taxpayer's U.S. tax liability rather than deducting foreign taxes in computing U.S. taxable income. The foreign tax credit is subject to limitations that depend, among other things, on the amount and categorization of plaintiffs' foreign source taxable income. An allocation of partnership foreign source profit is critical to and greatly affects a taxpayer's decision whether to elect to credit foreign taxes or to deduct

---

[77] The Form 1040X that corresponds to Ex. 6C to the Complaint, Alternative Claim # 1, reflects plaintiffs' foreign tax credit computed under the paid tax method.

them, the taxpayer's decision whether to elect to accrue foreign taxes under section 905(a), the

determination of the taxpayer's foreign source gross income, and the taxpayer's determination of

foreign source taxable income, among other things.

Section 905(a) provides in pertinent part that a taxpayer may make an election to apply

the accrual method to determine foreign taxes regardless of the method of accounting generally

followed by the taxpayer. There is *no requirement* in section 905(a) or regulations thereunder

that the election be made in the original U.S. income tax return filed by a taxpayer for a given

year.[78] While one out-of-date district court decision may have imposed such a requirement, it

should not be followed here.[79] The Treasury Regulations promulgated under section 905 clarify

that "[w]henever the taxpayer chooses, in accordance with paragraph (d) of §1.901-1, to claim

the benefits of the foreign tax credit, the claim for credit shall be accompanied by Form 1116 in

the case of an individual."[80] Section 1.901-1(d), through cross reference to section

6511(d)(3)(A), provides that the taxpayer can make the election within 10 years from the date for

filing the return for the year in which the foreign taxes were paid or accrued. Thus, the

regulatory regime applicable in this case, provides a high degree of flexibility to taxpayers with

respect to the foreign tax credit generally. Consistent with that and based on the language of

---

[78] *Compare* IRC § 905(a), *and* Treasury Regulations thereunder, *with* Treas. Reg. § 1.461-1(c)(3).

[79] *Strong v. Willcuts,* 36-1 U.S.T.C. 9032 (D. Minn. 1935). The result in *Strong,* which is discussed below, is not supported by the language of the Code or the Regulations. Indeed, the regulations postdate *Strong*, and it is well settled that agencies can supersede prior judicial interpretations through the issuance of regulations. *See, e.g., Nat'l Cable & Telecomm. v. Brand X Internet Servs*., 545 US 967, 982 (2005). In addition, the instant case is distinguishable from *Strong*.

[80] Treas. Reg. § 1.905-2(a)(1).

section 905(a) and the Treasury Regulations thereunder, plaintiffs should be allowed to follow their section 905(a) election.[81]

The purpose of the section 901 foreign tax credit is to enable U.S. taxpayers to avoid double taxation. The purpose of the section 905(a) accrual election is to enable U.S. taxpayers to match income with foreign tax paid thereon in order to avoid double taxation. Plaintiffs paid full U.K. tax on all of Ms. Gerowin Herrmann's income from PELLP (at a rate higher than their U.S. tax rate) and on the 2008 Bonus received by Ms. Gerowin Herrmann in 2009. They should not be taxed a second time by the U.S. on that same income. Their section 905(a) election avoids that result and should be permitted. In the circumstances of this case, reaching the right result for plaintiffs should outweigh the application of a single antiquated district court decision that is contrary to the intent of the statutory regime and subsequent regulations, as well as the intent of the U.S./U.K. Tax Treaty of 2001, and the purpose of which seems only to have been to protect the IRS from some vague notion of administrative confusion.[82]

If plaintiffs' section 905(a) election is respected, plaintiffs should be allowed to accrue for 2008, U.K. taxes paid subsequently with respect to the 2008 Bonus to the extent those taxes met the all events test.[83] Under that test, an item of expense accrues when the taxpayer's liability for it is fixed and the amount of it can be determined with reasonable accuracy. In the instant case, both of those requirements were met as of December 31, 2008. By that date, under U.K. law, since Ms. Gerowin Herrmann earned the 2008 Bonus by working in the U.K., it was clear

---

[81] *See Bookwalter v. Mayer*, 345 F.2d 476 (8th Cir. 1965); *Reaver v. Commissioner*, 42 T.C. 72 (1964); *Daniels Jewelers, Inc. v. United States*, 279 F.2d 226, 230-31 (1960)(Whitaker, J., dissenting).

[82] *Strong v. Willcuts,* 36-1 U.S.T.C. 9032 (D. Minn. 1935); *see* IRS Gen. Couns. Mem. 36176 (Feb. 28, 1975).

[83] The economic performance test need not be met in the case of foreign taxes. *See* Treas. Reg. § 1.461-4(g)(6)(iii)(B).

that she would be taxed on it by the U.K.  It also was clear that she would receive no

compensation from PELLP for the U.K. tax year ending April 5, 2009, other than her monthly

payments and the 2008 Bonus.  Moreover, plaintiffs knew as of December 31, 2008, that they

would have little or no offset against U.K. tax so that the full amount of the 2008 Bonus would

be taxed fully by the U.K. for the U.K. tax year ending on April 5, 2009.  Under those

circumstances, and in light of the purpose of the foreign tax credit provided by section 901,

plaintiffs should be allowed to accrue U.K. taxes as reflected in the Form 1040X filed by the

taxpayers on October 12, 2012.[84]

    There is also strong treaty-based authority that provides further reasons why plaintiffs

should be allowed to accrue U.K. tax.  As U.S. citizens and U.K. residents, plaintiffs are entitled

to the benefits of the Income Tax Convention in effect between those two countries (the

"U.S./U.K. Treaty").  Article 24 of the U.S./U.K. Treaty provides for the avoidance of double

taxation.  To the extent plaintiffs' section 905(a) election is not respected, double taxation would

occur.  While Article 24 references U.S. law with respect to the foreign tax credit to be allowed

to a U.S. citizen, that U.S. law should be applied in a manner that is consistent with the policy of

the U.S./U.K. Treaty.  The U.S. and the U.K. are members of the Organization for Economic

Cooperation and Development (OECD).  The OECD publishes and periodically updates a model

treaty on income taxation which is intended to provide a uniform basis for addressing the most

common problems of double taxation that arise in an international context and to serve as the

basis for bilateral treaties between OECD member states.  The model treaty consists of the model

---

[84] *See Ex. 6C to the Complaint, Alternative Claim # 2.*  It should be noted that allowing plaintiffs
to accrue U.K. tax as reflected in Ex. 6C to the Complaint, Alternative Claim # 2, would be
appropriate in light of section 706 which, as a general matter, requires partners to determine
partnership profit shares pro rata based on ownership of partnership interests throughout the
taxable year.  *See also Santa Fe Drilling Co. v. Riddell*, 217 F. Supp. 630 (S.D. Cal. 1963).

treaty itself and official commentaries on the interpretation of the provisions of the model treaty. Member states are entitled to have noted in the commentaries any reservations which they have to particular provisions of the model treaty or particular interpretations reflected in the commentaries, in the absence of which they are considered to have agreed to the provisions of the model treaty as interpreted in the commentaries. While this does not prevent member states from incorporating in their bilateral treaties provisions other than those contained in the model treaty, to the degree a treaty is based on the model treaty, or to the degree the commentaries are pertinent, they remain applicable. According to the introduction to the model treaty:

> "member countries, when concluding or revising bilateral conventions, should conform to this Model Convention as interpreted by the Commentaries thereon and having regard to the reservations contained therein and their tax authorities should follow these Commentaries, as modified from time to time and subject to their observations thereon, when applying and interpreting the provisions of the bilateral tax conventions that are based on the Model Convention."

The U.S./U.K. Treaty is based on the OECD model treaty. The OECD model treaty provides alternative provisions for elimination of double taxation, obliging the country of residence[85] either to exempt income derived in the country of source from taxation (the "exemption method") (Article 23A) or to allow a credit for tax paid to the country of source (the "credit method") (Article 23B). In the U.S./U.K. Treaty the parties have opted for the credit method, but rather than utilizing the language contained in Article 23B of the OECD model treaty they have provided (as noted above) that the provisions of their respective domestic laws for the allowance of credits shall be applied. The commentaries to the 2010 OECD model treaty, which contains

---

[85]  References to "country of residence" in the discussion should be read as "country of citizenship" in the case of the United States because it taxes its citizens regardless of where they are resident.

the same provisions concerning double taxation as the model treaty that was in effect when the

U.S./U.K. Treaty was concluded, now include a clause addressing the obligations of the treaty

partners in dealing with "timing mismatches":

> 32.8   The provisions of the Convention that allow the State of source to tax particular items of income or capital do not provide any restriction as to when such tax is to be levied (see, for instance, paragraph 2.2 of the Commentary on Article 15).   Since both Articles 23A and 23B require that relief be granted where an item of income or capital may be taxed by the State of source in accordance with the provisions of the Convention, it follows that such relief must be provided *regardless of when the tax is levied by the State of source.   The State of residence must therefore provide relief of double taxation through the credit or exemption method with respect to such item of income or capital even though the State of source taxes it in an earlier or later year.*   Some States, however do not follow the wording in Article 23A or 23B in their bilateral conventions and link the relief of double taxation that they give under tax conventions to what is provided under their domestic laws.   These countries, however would be expected to seek other ways (the mutual agreement procedure, for example) to relieve the double taxation which might otherwise arise in cases where the State of source levies tax in a different taxation year.   (Emphasis added.)

The U.S. did not express any reservation regarding the above.  As noted, OECD members are

expected to interpret their treaties based on the commentaries "as modified from time to time,"

so the above is just as relevant to the interpretation of the U.S./U.K. Treaty as if it had been in

the commentaries at the time that treaty was negotiated.  In other words it has the same force as

contemporaneous legislative history.

Paragraph 32.8 of the commentaries, quoted above, states generally that where a treaty

party commits to the credit method of Model Article 23B, it must be prepared to allow the credit

regardless of when tax is levied by the state of source, even if this is in a different year than when tax is levied by the state of residence. The final two quoted sentences are applicable to treaties such as the U.S./U.K. Treaty where the parties "link" the double tax relief to which they are committed under the treaty to the provisions of their domestic law. As noted, parties to treaties containing such provisions are "expected to" seek means of relieving double taxation that may otherwise arise due to timing differences resulting from differing taxable years in the respective jurisdictions. Mutual agreement (competent authority) procedures are given as one *example* of the ways which may be sought to relieve double taxation arising from "timing mismatches," but it is not the only way. This Court possesses the power and authority to interpret the U.S./U.K. Treaty and apply it in a manner to achieve a fair and just resolution by allowing plaintiffs to follow their section 905(a) election as reflected in the Form 1040X.[86]

For all of the reasons stated herein, plaintiffs' section 905(a) election should be allowed, and plaintiffs should be allowed to offset against U.S. tax for 2008, taxes paid for the U.K. tax year ending April 5, 2009. Plaintiffs intend to prove as much using Exhibit 6C to the Complaint,[87] trial testimony of Paul Hocking and plaintiffs, and deposition testimony of Nicola Dunn.

---

[86] *See* Ex. 6C to the Complaint, Alternative Claim # 2.

[87] *Id*. at bates pages HER000368 – HER000477.

4. *Count Four – the IRS violated the provisions of TEFRA in multiple ways that led to the erroneous issuance of the Notice of Computational Adjustment*

If Ms. Gerowin Herrmann had been a *bona fide* partner of PELLP, as Defendant claims, then under TEFRA she possessed an unequivocal statutory right to be notified of and to participate in the audit of PELLP. I.R.C. § 6224(a). Section 6224(a) reads in full:

> PARTICIPATION IN ADMINISTRATIVE PROCEEDINGS.—
> Any partner has the right to participate in any administrative proceeding relating to the determination of partnership items at the partnership level.

The Federal Circuit expressly recognized this statutory right in *Olson v. United States*, 172 F.3d 1311, 1317 (Fed. Cir. 1999). There, the Court stated that "[e]very partner has the right to participate in the IRS's examination of the partnership's information return."[88] This Court also cited *Olson* approvingly for the same proposition in its October 23, 2015 opinion.[89]

In violation of this express statutory right, the IRS denied Ms. Gerowin Herrmann any meaningful participation in the TEFRA administrative proceedings relating to the determination of purported partnership items at the partnership level.[90] Evidence in the record shows that meetings and calls occurred as part the TEFRA audit, but the IRS excluded Ms. Gerowin Herrmann from participating in them.[91] The IRS itself recognized that it violated TEFRA in excluding Ms. Gerowin Herrmann, but then tried to rationalize its violations by (mistakenly)

---

[88] *Id.* (citing I.R.C. § 6224(a)).

[89] *Herrmann v. United States*, No. 14-941T, Doc. No.33 filed October 23, 2015 at *14; 124 Fed. Cl. 56, at 68 (Ct. Fed. Cl. 2016).

[90] Pl. Resp. in Opp. To Def. Mot. Partial Dismissal, Ex. 1, M. Herrmann Declr.

[91] *See e.g*., Pl. Resp. in Opp. To Def. Mot. Partial Dismissal, Ex. 3, Email dated July 17, 2012 from J. Bortnick to IRS Agent J. Scott produced pursuant to FOIA request (also attached as Exhibit 9 to Plaintiffs' Motion for Partial Summary Judgment).

pointing to a separate statute having nothing to do with a partner's participation rights under Section 6224(a).[92]

The IRS imposed the tax liability at issue here by means of a "notice of computational adjustment" under TEFRA. It did so on the putative basis that the 2008 Bonus was a share of partnership profits allocated to Ms. Gerowin Herrmann. A notice of computational adjustment, however, is not subject to the statutory deficiency procedures required elsewhere under the Code.[93] Thus, a computational adjustment allows the IRS to bypass these statutory deficiency procedures and to make peremptory adjustments to a partner's tax return. I.R.C. § 6222(c). As the Second Circuit explained in *Callaway v. Comm'r*, "[s]uch peremptory adjustments of a partner's return are justified because the partner will already have benefitted from notice of and the right to participate in any proceeding under the TEFRA provisions to determine the partnership items at the partnership level."[94] Consequently, the Court continued,

> [t]he IRS may adjust partnership items only at the partnership level and only after following the TEFRA procedures. See I.R.C. §§ 6221, 6225(a); Temp. Treas. Reg. § 301.6221-1T(a). To audit a partnership return, the IRS must send notice of the beginning of an administrative proceeding ('NBAP') to the partners entitled to notice (the 'notice partners'). See I.R.C. § 6223(a). The Code further provides that *any partner has the right to participate in any administrative proceeding relating to the determination of partnership items at the partnership level.* I.R.C. § 6224(a).[95]

---

[92]  Doc. No. 25-1, Pl. Resp. in Opp. To Def. Mot. Partial Dismissal, Ex. 4, Email dated July 25, 2012 from IRS Agent, Joe Scott, to himself and his supervisor, Eric Cirelli, produced pursuant to FOIA request (stating that the "Team made a mistake. Mina is a Notice Partner but under IRC 6223 the Service is only obligated to provide a NBAP and FPAA to notice partners. NBAP was provided to Mina.")

[93]  *See* I.R.C. § 6230(a)(1), (b) (providing that subchapter B, sections 6211 through 6212 shall not apply to a notice of computational adjustment).

[94]  231 F.3d 106, 109 (2d Cir. 2000).

[95]  *Id.* (emphasis added; internal quotation marks omitted).

Thus, the statutory TEFRA provisions permitting partners the right to fully participate in the administrative stage serve to protect real and fundamental aspects of due process and fairness and are therefore integral to the operation of TEFRA.

Accordingly, the Notice of Computational Adjustment is invalid for several reasons. First, the IRS failed to timely notify of the commencement and then excluded plaintiffs from the PELLP audit in violation of TEFRA. Second, the IRS used TEFRA to issue the Notice of Computational Adjustment, which denied plaintiffs the benefit of the deficiency procedures, and denied plaintiffs their full statutory rights to contest the assessment during the partnership audit. Third, the IRS predicated its issuance of the Notice of Computational Adjustment on the patently false assumption that PELLP had timely filed a 2008 Schedule K-1 for Ms. Gerowin Herrmann with its 1065—and that plaintiffs filed inconsistently with it. Plaintiffs will demonstrate that PELLP failed to file a 2008 Schedule K-1 for Ms. Gerowin Herrmann with the IRS.[96] Because PELLP failed to file a 2008 Schedule K-1 for Ms. Gerowin Herrmann, plaintiffs did not file "inconsistently" with it or with PELLP's return.

Notably, after violating TEFRA and plaintiffs' rights at the administrative stage, defendant sought to use TEFRA affirmatively to strike plaintiffs' claims in both Count Two and Four. In its failed attempt to prevent the Court from hearing both of those counts, defendant purported to be the arbiter of what lies "at the heart of the TEFRA rules."[97]

Plaintiffs intend to support their claims with documentary evidence such as internal IRS communications, IRS transcript of account, purported and erroneous 2008 K-1s, the PELLP Form 1065 filed with the IRS for 2008, correspondence from Paulson Inc., and IRS notices sent

---

[96] Further, the IRS failed to issue any matching notice indicating that a K-1 had been filed with the IRS for Ms. Gerowin Herrmann.

[97] Doc. No. 21, Def. Mot. For Partial Dismissal, at 6.

to Paulson Ltd. and to plaintiffs. Plaintiffs will also present deposition testimony of Joe Scott and Nicola Dunn, as well as trial testimony of plaintiffs, Joe Scott and Paul Hocking.

## B. Defendant's Position

Defendant's anticipated position with respect to the relevant law governing Counts One through Four is described below, in turn.

### 1. Count One

Defendant does not dispute plaintiffs' explanation of the foreign tax credit regime under Code sections 901 and 904. Indeed, defendant admits that "plaintiffs are entitled to an appropriate foreign tax credit, pursuant to §§ 901 and 904 for foreign taxes paid."[98]

Defendant also does not dispute that section 904(c) requires any foreign tax credits which are unusable in a given taxable year because of the limitation in 904(a), to be carried back first to the prior taxable year and then, to the extent not used in the carryback year, they can be carried forward to later taxable years.[99] Nor does defendant dispute that section 904(c) "leaves no room for administrative discretion once a taxpayer makes an election to claim the credit under section 901(a)."[100] Defendant previously admitted (and still does not dispute) that plaintiffs paid full U.K. taxes on the 2008 Bonus and are entitled to a foreign tax credit for foreign taxes paid.[101]

Defendant did not articulate any relevant issues of law that remain in dispute with respect to Count One in its Revised Interrogator Responses, orally during the Meeting of Counsel, or in its written Contentions as to Facts and Law—other than the possibility that the 2009 excess foreign tax credits might have been claimed by plaintiffs in years other than 2008 and that

---

[98] Doc. No. 24, Def. Resp. to Pl. Mot. For Summary Judgment, at 8.

[99] Doc. No. 20, Pls.' Motion for Partial Summary Judgment, at 15-16.

[100] *Id.* at 16.

[101] Defendant's Answer ("Answer") at ¶ 27; Plaintiffs' Complaint ("Complaint") at ¶ 27.

granting Count One in favor of plaintiffs could allow for a double credit. If plaintiffs claimed the excess 2009 foreign tax credits as a carryforward in 2010 and other years, but should have claimed them as a 2008 carryback, the IRS's proper recourse under the law is to allow plaintiffs to claim those excess 2008 foreign tax credits as a carryback to 2008, and then to disallow the use of those credits in 2010 and later years. As was stated above, that is not necessary in this case, because plaintiffs have stated that they do not intend to use foreign tax credits more than once, and that they would address affected years with defendant in computing the proper refund due to plaintiffs, under the supervision of the Court. In any event, plaintiffs are willing to stipulate that all foreign tax credits can and will be used only once.

### 2. Count Two

In its Revised Interrogatory Responses, defendant took the position that Ms. Gerowin Herrmann was a partner and not an employee of PELLP. It offered, however, no legal support for that contention. Plaintiffs were left to guess that defendant will argue that form, rather than substance, should control the characterization of Ms. Gerowin Herrmann's compensation. At the Meeting of Counsel and in its written Contentions as to Facts and Law, defendant argued that *Culbertson* was determinative of partnership status and posited a multi-factor test described in section IV.B.2. above and discussed below. Plaintiffs believe that in addition to *Culbertson*, the authorities discussed above in Section IV.A.2. should control. Those authorities (one of which, *TIFD III-E, Inc.*, 459 F.3d 220, defendant also cited) do not support the formalistic approach proposed by defendant, particularly where the substance does not conform. Plaintiffs will establish through documentary evidence and testimony that Ms. Gerowin Herrmann was not in substance a partner in PELLP.

To the extent that defendant relies on the Sub-Advisory Agreement in its position with respect to Count Two, that reliance is misplaced for several reasons. First, as discussed immediately below, the Sub-Advisory Agreement is irrelevant to the question of whether Ms. Gerowin Herrmann was a partner in PELLP for U.S. tax purposes. Second, even if it were relevant to whether Ms. Gerowin Herrmann was a partner, the 2008 Bonus was a payment made to Ms. Gerowin Herrmann in a capacity other than a partner under section 707(a)(2)(A). Those points turn on other factors, described above, that defendant largely ignores. Neither John Paulson nor Chris Bodak have any awareness of the Sub-Advisory Agreement and there is no evidence that Paulson, Inc. or PELLP ever relied on it to determine the compensation of Ms. Gerowin Herrmann or other PELLP members. The arm's length nature of the Sub-Advisory Agreement is also dubious, having been signed by the same Paulson Inc. employee on behalf of PELLP and Paulson Inc. The provision in the Sub-Advisory Agreement for Paulson Inc. to pay compensation to PELLP is bereft of detail and basically says PELLP will get whatever Paulson Inc. decides to pay it – hardly an arrangement to which an independent enterprise in PELLP's position would have agreed. In practice, at the end of each calendar year, after John Paulson determined the bonuses of each of the members, Paulson, Inc. wired cash to PELLP to enable it pay out bonuses at year end, three months before the end of PELLP's fiscal year. Moreover, calling that cash payment from Paulson Inc. to PELLP an "investment management fee" under the Sub-Advisory Agreement does make it so; nor does it imbue with legitimacy a document that Paulson Inc. and PELLP otherwise ignored. In short, the Sub-Advisory Agreement does not support the notion that the business of PELLP generated profits to allocate to Ms. Gerowin Herrmann (or the other members) as a partnership for U.S. tax purposes.

Regarding defendant's specific contentions relating to application of the *Culbertson* "test" (discussed above in section IV.B.2.), plaintiffs contend that defendant's interpretation of the case and its gleaning of several "factors" is misguided. The ultimate purpose of the *Culbertson* inquiry is to determine, based on the totality of the facts and circumstances, whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise."[102] *Culbertson* is not so rigidly applied as defendant suggests. Nonetheless, plaintiffs address each of defendant's purported "factors" in turn. The "factors" as articulated by defendant were: (1) "joint contribution," (2) "trade or business purpose for joining the partnership," (3) "ownership interests," (4) "share of profits and losses," (5) "control of the business", and (6) "representation to others that the business is a partnership."

First, plaintiffs acknowledge that Ms. Gerowin Herrmann contributed £30,000 to PELLP in 2008. That fact is therefore not in dispute. However, that contribution is relatively *de minimis* when juxtaposed against Ms. Herrmann's 2007 and 2008 bonuses. It was not needed for the operation of PELLP. Further, Ms. Gerowin Herrmann rightfully expected it to be returned to her, which it was. Defendant's reliance on that relatively *de minimis* monetary contribution to support partner status elevates form over substance—and is opportunistically contrary to defendant's position in the vast majority of litigated judicial decisions in which defendant has insisted that substance is paramount to form.

Second, defendant asserted that the parties had a trade or business purpose for joining the partnership, as evidenced by Ms. Gerowin Herrmanns' move to London and the fact that she signed the Deed of Adherence. Plaintiffs' contend that in moving to London and signing the Deed of Adherence (without ever being given a copy of the Partnership Agreement), Ms.

---

[102] *Culbertson,* 337 U.S. at 742.

Gerowin Herrmann intended only to continue performing (and, in fact, did perform) the same services she performed while at Paulson Inc. in New York.  That is not tantamount to an intention to "join together in the present conduct" of PELLP.

Third, defendant argued that the supposed "ownership interests" factor was met. Defendant articulated no specific contention of fact in support of that conclusion, apart from Ms. Gerowin Herrmanns' *de minimis* contribution to PELLP, and instead simply insisted that this purported factor under *Culbertson* was met.  In positing ownership interest as a separate "factor," defendant attempts to double dip with respect to the purported first factor.  This effort is made all the more transparent by defendant's reliance on the identical fact in support of its contention that the third factor is met.  In any event, plaintiffs respond that Ms. Gerowin Herrmann lacked a *bona fide* ownership interest in PELLP, as evidenced by the failure to amend the partnership agreement to provide her with a defined ownership interest or voting rights, the fact that her status remained "at-will" throughout her time at PELLP, and the less than half of one percent capital interest she had in PELLP.

Fourth, defendant maintained that Ms. Gerowin Herrmann shared in the profits and losses of PELLP.  Defendant claimed that this is supported by the substantial payment from Paulson Inc. to PELLP a few days before the end of the 2008 calendar year, and asserted that the payment comprised both "investment management fees" under the Sub-Advisory Agreement, as well as 2008 profits for PELLP.  Yet PELLP had no profits of its own with which to share among its members.  It received payments from Paulson Inc. to pay its overhead and compensation to Mina Gerowin Herrmann and the other two individual members.  Indeed, the lion's share of payments received by PELLP represented formulaic bonus payments for Mina Gerowin Herrmann and Nikolai Petchenikov based on their respective percentage of net incentive fees earned by Paulson

Inc. through the end of 2008 from particular funds managed by Paulson Inc. In other words, and as described in greater detail above, Ms. Gerowin Herrmann's 2008 Bonus represented a portion of net incentive fees earned by Paulson Inc., not profits of PELLP.

Fifth, defendant alleged that Ms. Gerowin Herrmann had managerial control over PELLP, as demonstrated by virtue of her role in the partnership and the investment analyst services she provided with respect to the Paulson Inc. funds. However, Ms. Gerowin Herrmann did not advise PELLP about its business affairs. Rather, she provided investment analyst services to Paulson Inc. with respect to investments held by certain funds managed by Paulson Inc. The fact that those investment analysis services were the *identical* services she performed for Paulson Inc. as an employee in New York is supportive of non-partner status. She also had no voting rights with respect to PELLP and had no power to hire or fire personnel, which further belies managerial control and partner status.

Sixth, with respect to defendant's contention that PELLP held itself out to third parties as a partnership for U.S. tax purposes, at the Meeting of Counsel defendant pointed only to the Partnership Agreement and Deed of Adherence in support. Subsequently, in its written Contentions as to Facts and Law, defendant also mentioned plaintiffs' tax returns. Ms. Gerowin Herrmann did not receive a copy of the partnership agreement until the IRS audit in 2011. Although she signed the Deed of Amendment, it pertains to a U.K. juridical entity and she did not hold herself out as a partner of PELLP for U.S. federal tax law purposes. Moreover, Paulson Inc. did not hold out Ms. Gerowin Herrmann to investors as a partner in PELLP for U.S. federal income tax purposes. Regarding plaintiffs' tax returns, as discussed above, plaintiffs relied on the highly qualified and respected accounting firm Frank Hirth to prepare all of their U.S. and U.K. tax returns. Frank Hirth prepared, and plaintiffs without alteration timely filed, plaintiffs'

U.S. Forms 1040 for the taxable years 2008 through 2010.  By filing those returns, Ms. Gerowin Herrmann had no intention of holding herself out as a partner, in substance, for U.S. tax purposes.

We note that defendant inquired during the Meeting of Counsel whether plaintiffs' will argue that PELLP was not a *bona fide* partnership.  Defendant also asserted for the first time in its Contentions as to Facts and Law that, "Plaintiffs have never challenged PELLP's status as a partnership for U.S. tax purposes and are precluded from doing so now."  While evidence presented at trial may suggest that PELLP was not a *bona fide* partnership, the Court does not need to decide that issue to determine whether Ms. Gerowin Herrmann was or was not a *bona fide* partner in PELLP.

Defendant cited no law in its Revised Interrogatory Responses concerning section 707(a)(2)(A).  During the Meeting of Counsel, defendant argued for the first time that section 707(a)(2)(A) applies only to abusive transactions.  Yet section 707(a)(2)(A) does not require the transaction in question to be abusive for it to apply.  Neither the legislative history nor the regulations contain such a requirement.  Rather, the legislative history is clear that the provision applies "to allocations which are determined to be related to the performance of services for, or the transfer of property to, the partnership and which, when viewed together with distributions, have the substantive economic effect of direct payments for such property or services under the facts and circumstances of the case."[103]  Further, the legislative history accompanying the fourth factor, tax avoidance purpose, provides that if tax motivation is lacking, then the fourth factor has no particular relevance.  If the transaction had to be abusive to apply, then the absence of a tax motivating purpose would never be irrelevant.  Indeed, it's absence would be determinative.

---

[103] SENATE COMM. ON FINANCE, 98TH CONG., 2D SESS., DEFICIT REDUCTION ACT OF 1984, S. PRT. NO. 169, VOL. I, at 226 (Comm. Print 1984).

Furthermore, section 707(a)(2)(B), the companion provision to section 707(a)(2)(A) is widely followed by taxpayers and the IRS alike in contexts that are not deemed abusive.

Defendant also acknowledged the first five section 707(a)(2)(A) factors from the legislative history at the Meeting of Counsel. Defendant reiterated those factors in its written Contentions as to Facts and Law. With respect to the first factor, payments not subject to appreciable risk, defendant claimed that Ms. Gerowin Herrmann's bonus was subject to the same risks faced by Paulson Inc., and thus there was a risk that she would not be paid if the Merger and Event funds performed poorly. Defendant also asserted in its written Contentions as to Facts and Law that, "Mina Gerowin Herrmann's compensation was imbued with significant entrepreneurial risk and tied to the business success of the venture. Indeed, the majority of it was directly tied to – in fact, a direct percentage (2%) of – the net incentive fees earned by the Event Fund and Merger Fund." Plaintiffs agree that Ms. Gerowin Herrmann's compensation was based on 2% of the net incentive fees earned by Paulson Inc. from its management of the Merger funds and Event (Advantage) funds. However, the net incentive fees earned by the Event Fund and Merger Fund comprised earnings of Paulson Inc., not PELLP. Ms. Gerowin Herrmann's formula was based on those net incentive fees, not on PELLP's earnings. Any risk inherent in Ms. Gerowin Herrmann's compensation was based on the business risk of Paulson Inc., not the business or entrepreneurial risk of PELLP. Defendant thus focuses on the entrepreneurial risk of the wrong venture, and in so doing opportunistically attempts to conflate the operations of Paulson Inc. and PELLP.

Defendant stated that with respect to the second section 707(a)(2)(A) factor, transitory partner status, Ms. Gerowin Herrmann's status as a partner was not transitory. As noted above plaintiffs disagree, given the fact that her status was at-will and unlike that of a true partner.

Notwithstanding, defendant agreed with plaintiffs at the Meeting of Counsel that that if partner status is *not* transitory it is of no relevance in determining whether section 707(a)(2)(A) applies.

Defendant contended that with respect to the third factor, close temporal relationship between payments, the payments made by PELLP to Ms. Gerowin Herrmann did not share a close temporal relationship with the services performed. Plaintiffs respond, as explained above, that the amounts necessary to pay Ms. Gerowin Herrmanns' 2008 Bonus were wired to PELLP before the end of the 2008 taxable year, and hit Ms. Gerowin Herrmanns bank account within a week of the close of the taxable year. That is a closer temporal relationship than the examples illustrated by the legislative history. Defendant also stated in its Contentions as to Facts and Law that, "Plaintiffs have provided no evidence suggesting that Mina Gerowin Herrmann received a distribution in a time frame comparable to a time frame that PELLP made a payment to a non-partner service provider." But this is red herring, because no such requirement exists under the statute, regulations or legislative history.

With respect to the fourth factor, tax avoidance purpose, defendant acknowledged that evidence exists in the record that PELLP adopted the form of a partnership for U.S. tax purposes in order to minimize its U.K. and U.S. employment tax liabilities, citing the deposition of Ms. Gerowin Herrmann. Plaintiffs agree. Defendant disputed, however, whether as a matter of law tax minimization is tantamount to tax avoidance as contemplated by the section 707(a)(2)(A) factors. Defendant's novel theory, once again, is unsupported by the statute, regulations or legislative history.

Finally, defendant asserted that the fifth factor, disproportionately small interest in partnership profits in relation to the allocation, weighs in favor of defendant because a comparison of the interest in profits and the allocation is not disproportionate. To support this

contention, defendant argued that the relevant "interest in" profits for purposes of the comparison is Ms. Gerowin Herrmann's bonus formula. Similarly, defendant stated in its Contentions as to Facts and Law that, "Mina Gerowin Herrmann had a valuable and continuing profits interest that was not small in relation to the payment she received." As discussed in section IV.A.2., above, plaintiffs contend that under the legislative history the *relevant interest* in partnership profits concerns the partner's rights under the partnership. As reflected in the 2008 PELLP Schedule K-1, Ms. Gerowin Herrmann's capital interest was less than half of one percent (and she had zero interest under the Partnership Agreement). Because the percentage of PELLP's putative profits for 2008 allocated to Ms. Gerowin Herrmann exceeded 25 percent of all year-end bonus payments, those two percentages are enormously disproportionate. The only way that defendant can reach its desired result is to disavow Ms. Gerowin Herrmann's purported capital interest in PELLP as shown on the 2008 PELLP Schedule K-1. But that Schedule K-1 and what it represents are crucial to defendant's contention that Ms. Gerowin Herrmann was a *bona fide* partner, and to the validity of the Notice of Computational Adjustment. Defendant cannot rely on that Schedule K-1 to demonstrate that Ms. Gerowin Herrmann was a partner, and that the Notice of Computational Adjustment was valid, and then concomitantly disavow that same fact (if established at trial) for purposes of section 707(a)(2)(A). In any event, defendant's reference to Ms. Gerowin Herrmann's bonus formula once again conflates the operations of Paulson Inc. and PELLP. Her bonus formula was determined while she was an employee in New York and constituted an agreement with John Paulson and Paulson Inc.; it had nothing whatsoever to do with PELLP.

Defendant also argued during the Meeting of Counsel and in its Contentions as to Facts and Law that section 707(a)(2)(A) applies only where a partner provides services *unrelated* to

the underlying business of the partnership. Defendant argued that the services Ms. Gerowin Herrmann provided were related to the underlying business of PELLP and therefore section 707(a)(2)(A) does not apply. Plaintiffs contend, once again, that defendant's position is unsupported by the clear language of the statute, the regulations and legislative history accompanying section 707(a)(2)(A).

Plaintiffs anticipate that any other arguments defendant will advance will rely merely on form to argue that the 2008 Bonus was a profit distribution by PELLP. As was explained above, however, section 707(a)(2)(A) eschews form and follows substance. For those reasons, plaintiffs believe section 707(a)(2)(A) applies.

### 3. Count Three

Defendant indicated at the Meeting of Counsel and in its written Contentions as to Facts and Law that it would rely on *Strong v. Willcuts*[104]—and no other litigated decision—for the proposition that a taxpayer after filing on the cash method of accounting cannot later change his election for that year. Reliance on *Strong*, a district court case that was decided in 1935, that has never been followed in the 80 years since it was decided, and that was decided before the ratification of the U.S./U.K. Tax Treaty, is misguided, particularly given the strong policy rationale against double taxation described above. Moreover, in *Strong* it was not the mere fact that the taxpayer filed a return on the cash method which fixed the parties rights and purportedly foreclosed a later change of accounting method. Rather, the government also had accepted the taxpayer's return electing the cash method of accounting. It was the making of the election and claiming the benefits of that election *along with* the government's acceptance of that position

---

[104] *Strong*, 36-1 U.S.T.C. 9032 (D. Minn. 1935).

that fixed the parties rights and, therefore, prevented any later change in accounting method by the taxpayer.

The instant case presents facts that are distinguishable from those in *Strong*. Namely, even though plaintiffs filed their initial 2008 return on the cash method, the IRS did not accept that return. Instead, the IRS challenged that return as is evidenced by the Notice of Computational Adjustment and the IRS's current posture. Thus, the rights of the parties are not fixed in this case as they were in *Strong*, and the holding from that case should not apply here for that reason as well. Plaintiffs should have been free to amend and elect the accrual method of accounting under section 905(a), as they did with the August 24, 2012 and October 12, 2012 amended returns.

Defendant also asserted in its written Contentions as to Facts and Law that foreign taxes cannot be estimated and that the "all events test" must be followed. Here foreign taxes need not be estimated. By the end of 2008, plaintiffs' tax obligation to the U.K. with respect to the 2008 Bonus was known and immutable. As discussed above in section IV.A.3., plaintiffs meet the all events test, because all relevant events establish the fact of the liability, and the amount of the liability can be determined with reasonable accuracy. Furthermore, defendant admitted in its written Contentions as to Facts and Law that economic performance, another common element of the all events test, is "inapplicable with respect to the foreign tax credit."

### 4. Count Four

Defendant provided no supporting authority for its position with respect to Count Four in either in its Revised Interrogatory Responses or during the Meeting of Counsel. Defendant raised for the first time numerous statutory provisions and accompanying regulations in its written Contentions as to Facts and Law. Despite defendant's citation to and quotation of

78

multiple statutes and regulations pertaining to TEFRA, it did not explain why those provisions support defendant's positon. Remarkably, at least one of the very provisions cited by defendant clearly contradict its contentions that the IRS did not violate TEFRA. For instance, defendant cites Section 6223(d) for the notion that the IRS shall mail a notice of the beginning of an administrative proceeding to each partner ("the notice") and shall do so not later than "the 120th day before the day on which the notice" is mailed to the Tax Matters partner. Here, the IRS mailed the notice to the Tax Matters partner on April 22, 2011, and mailed the notice to plaintiffs on October 17, 2011—indisputably more than 120 days later. Defendant also asserted in its written Contentions as to Facts and Law that the IRS kept the Tax Matters partner informed about the PELLP audit, intimating that this relieved the IRS of its statutory duty to notify plaintiffs. As explained above in section IV.A.4., nothing could be further from the truth.

Defendant also takes facts completely out of context with respect to Count Four. For example, defendant stated in its Revised Interrogatory Responses (and in its written Contentions as to Facts and Law) that "[t]he Herrmanns' representatives did represent the Herrmanns on calls with the IRS that occurred during the audit of PELLP[,]" "[t]he IRS sent correspondence to the Herrmanns with respect to the tax year 2008 as required by the Internal Revenue Code[,]" and that "[t]he Herrmann's representatives had contact with numerous IRS officials from difference IRS offices during the Herrmann's individual audit and the audit of PELLP." [105] Although plaintiffs did have contact with the IRS, it was in the context of plaintiffs' *individual* audit, not the PELLP audit. Indeed, during much of the individual audit the IRS concealed from plaintiffs the very existence of the PELLP audit, despite the IRS' statutory duty to disclose it. The IRS eventually did send correspondence to plaintiffs regarding the PELLP audit, but did so over six

---

[105] Revised Interrogatory Responses at 7-8.

months after the commencement of the PELLP audit.  In short, plaintiffs were denied due process.  Plaintiffs will demonstrate through IRS internal communications, IRS notices sent to Paulson Ltd. and to plaintiffs, deposition and/or trial testimony of Joe Scott, plaintiffs, Paul Hocking, and Nicola Dunn that the communications described above did not constitute meaningful participation by the Herrmanns in the audit of PELLP.


**V.**     **Plaintiffs' Witness List, Plaintiffs' Exhibit List, and Plaintiffs' Objections to Defendant's Witnesses and Exhibits**

    A.  Plaintiffs' witness list is found at Attachment A.

    B.  Plaintiffs' exhibit list is found at Attachment B.

    C.  Plaintiffs' objections to defendants' exhibits are listed in Attachment C.

Respectfully Submitted,

/s/ Nathan E. Clukey
Nathan E. Clukey
  *Attorney of Record*
Abraham N.M. Shashy, Jr.
  *Of Counsel*
Ariana Wallizada
  *Of Counsel*
KING & SPALDING LLP
1700 Pennsylvania Ave., N.W.
Washington, DC  20006
Telephone:  (202) 737-0500
Facsimile:  (202) 626-3737
nclukey@kslaw.com
hshashy@kslaw.com
awallizada@kslaw.com

*Counsel for Plaintiffs Jeffrey W. Herrmann
and Mina Gerowin Herrmann*

DATED:  November 29, 2016

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2016, I electronically filed a copy of the foregoing

Pretrial Memorandum with the Clerk of the Court using the ECF system, which will send

notification of such filing to all ECF participants.

/s/ Nathan E. Clukey
Nathan E. Clukey

**November 29, 2016**

## PLAINTIFFS' TRIAL WITNESSES / DISCLOSURES

|  | Witness | Address | Phone | Topics | Anticipated Direct |
|---|---|---|---|---|---|
| 1. | **Mina Gerowin Herrmann** | Plaintiff – Contact Trial Counsel |  | (1) testimony concerning all counts the Complaint; (2); background (3) authentication, if necessary | 6 hrs.<br><br>Will call |
| 2. | **Jeffrey Herrmann** | Plaintiff – Contact Trial Counsel |  | (1) testimony concerning Counts One, Three and Four; (2) background; (3) authentication, if necessary | 2 hrs.<br><br>Will call |
| 3. | **Evan Cohen (summary witness)** | The Brattle Group, 44 Brattle Street Cambridge, MA 02138 | (617) 864-7900 | (1) testimony supporting summary exhibits | 1 hr.<br><br>Will call |
| 4. | **John Paulson** | Contact Marc Rosen<br><br>Kleinberg Kaplan 551 Fifth Avenue, 18th Floor New York, NY 10176 | (212) 880-9897 | (1) testimony concerning Count Two; (2) background | 4 hrs.<br><br>Will call |
| 5. | **Chris Bodak** | Contact Marc Rosen<br><br>Kleinberg Kaplan 551 Fifth Avenue, 18th Floor | (212) 880-9897 | (1) testimony concerning Counts Two and Four; (2) background | 2 hrs.<br><br>Will call |

| | | New York, NY 10176 | | | |
|---|---|---|---|---|---|
| 6. | **Paul Hocking**<br><br>DISCLOSURE: If health permits, Mr. Hocking will testify at trial; otherwise, plaintiffs intend to designate Mr. Hocking's deposition testimony.<br><br>Also, if necessary, plaintiffs intend to submit a certification of a custodian of records under Federal Rule of Evidence 902(11) & (12). | Contact Matt Hicks<br><br>Caplan & Drysdale, One Thomas Circle N.W., Suite 1100, Washington, D.C. 20005 | (202) 862-7852 | (1) testimony concerning all counts in the Complaint; (2) authentication, if necessary | 3 hrs.<br><br>Will call |
| 7. | **Joseph Scott** | Defendant | | (1) testimony concerning Counts One and Four | 4 hrs.<br><br>Will call |
| 8. | **Nicola Dunn**<br><br>DISCLOSURE: Plaintiffs have designated Ms. Dunn's deposition testimony and will file a Motion for Leave to File a Transcript of Deposition | Deposition transcript | | (1) deposition testimony concerning all counts in the Complaint | 1 hr.<br><br>Will call |
| 9. | **Document custodian, Paulson & Co. Inc.**<br><br>DISCLOSURE: Note that if necessary and in lieu of a document custodian, plaintiffs plan to submit a certification of a custodian of records under Federal Rule of Evidence 902(11) & (12). | Contact Marc Rosen<br><br>Kleinberg Kaplan 551 Fifth Avenue, 18th Floor New York, NY 10176 | (212) 880-9897 | (1) testimony concerning authentication, if necessary | 0.5 hrs<br><br>May call |

Plaintiffs' List of General Exhibits

Herrmann v. United States,  Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 1 | 2007 | Paulson & Co. and Affiliates | | | | HER-001078-79 | Will Use |
| 2 | 2007 | Paulson & Co. and Affiliates YTD Incentive Fees, January 1, 2007 to December 31, 2007 (with depo copy) | | | | Paulson_00003225 | Will Use |
| 3 | 2008 | Paulson & Co. and Affiliates 2008 YTD Incentive Fees (with depo copy) | | | | Paulson_00003224 | Will Use |
| 4 | 2009 | Paulson & Co. and Affiliates 2009 YTD Incentive Fees (with depo copy) | | | | Emailed by R. Tuchman to M. Lucey and N. Clukey on May 27 2016 | Will Use |
| 5 | 2008 | General Ledger (full, redacted) | | | | Paulson_00002285-520 | Will Use |
| 6 | 2008 | General Ledger (partial, unredacted) | | | | USA-008984-9067 | Will Use |
| 7 | 2008 | General Ledger (partial, redacted) | | | | Emailed by N. Clukey to M. Lucey | May Use |
| 8 | 2008 | General Ledger (M. Gerowin) | | | | USA-000517-20 | Will Use |
| 9 | 2008 | Wire Transfers | | Paulson Europe LLP | Cater Allen - Client team | USA-000604-28 | Will Use |
| 10 | 11/25/2008 | Email (with attachment) | Email chain regarding payroll summary and Bodak email | C. Allen | M. Gerowin Herrmann, C. Bodak, H. Cooper | HER-001127-30; HER-00158 | Will Use |
| 11 | 2009 | Payroll Summary for M. Herrman | | | | IRS0000702-04; HER-001130-31 | Will Use |
| 12 | 1/16/2009 | M. Gerowin and J. Herrmann Statement of account, Lloyds TSB | | | | HER-002102 | Will Use |
| 13 | 10/16/2009 | M. Gerowin and J. Herrmann Statement of account, Lloyds TSB | | | | Produced at Nov. 15, 2016 Meeting of Counsel; Ex. 0013.0001 | Will Use |
| 14 | 2011 | M. Gerowin Compensation Summary, 2005 - 2011 | | | | Paulson_00002706 | Will Use |
| 15 | 7/8/2009 | Letter (with attachment) | Letter regarding Rothstein Kass & Company, PC audit of Paulson & Co. Inc. financial statements | C. Bodak | M. Gerowin Herrmann | HER-001843-44 | Will Use |
| 16 | 12/31/2008 | Paulson Europe LLP Remeasurement of Members' Distributions | | | | USA-000679-84 | May Use |

Plaintiffs' List of General Exhibits
Herrmann v. United States, Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 17 | Dec. 2008 | Form 886-A: Explanation of Adjustments, Paulson Europe LLP | | | | USA-000731-44 | Will Use |
| 18 | 8/4/2010 | Letter and 2009 M. Gerowin Payroll Summary | Letter regarding Rothstein Kass & Company, PC audit of Paulson & Co. Inc. financial statements | C. Bodak | M. Gerowin Herrmann | Produced at Nov. 15, 2016 Meeting of Counsel; Ex. 0018.0001 - Ex. 0018.0002 | Will Use |
| 19 | 2007 | M. Gerowin W-2 Statement | | | | HER-001253 | Will Use |
| 20 | 2008 | M. Gerowin W-2 Statement | | | | HER-001070 | Will Use |
| 21 | 2009 | Paulson & Co. and Affiliates 2009 YTD Incentive Fees; M. Gerowin Final 2009 Bonus | | | | HER-001054-55 | Will Use |
| 22 | 2008-2009 | M. Gerowin Compensation Summary, 2008-2009 | | | | HER-001158-61 | Will Use |
| 27 | N/A | Paulson Europe LLP Organizational Chart (with depo copy) | | | | Paulson_00002601; Paulson_00001234 | Will Use |
| 28 | 11/1/2007 | Paulson & Co. Organizational Chart, Senior Personnel | | | | HER-01412 | Will Use |
| 30 | 6/30/2006 | Paulson Europe LLP Limited Liability Partnership Agreement | | | | Paulson_00000402-426 | Will Use |
| 31 | 7/25/2007 | Paulson Europe LLP Deed of Amendment to Limited Liability Partnership Agreement | | | | Paulson_000001205-08 | Will Use |
| 32 | 1/8/2008 | Paulson Europe LLP Deed of Adherence | | | | Paulson_00000384-85 | Will Use |
| 33 | 7/11/2006 | Sub-Advisory Agreement between Paulson & Co. Inc. and Paulson Europe LLP | | | | IRS0000209-23; Defendant's Ex. 2 to Deposition of John Paulson | Will Use |
| 39 | 6/11/2009 | Email (with attachment) | Email chain regarding M. Gerowin Herrmann 2008 US taxes | M. Gerowin Herrmann | N. Dunn | HER-001075-76 | Will Use |

**Plaintiffs' List of General Exhibits**
**Herrmann v. United States, Fed. Cl. No. 14-941 T**

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 40 | 1/30/2012 | Form 872-P: Consent to Extend the Time to Assess Tax Attributable to Partnership Items, Paulson Europe LLP | | J. Paulson | | USA-000923-24 | Will Use |
| 41 | N/A | Dissolved - Paulson Ltd. | Notification that Paulson Ltd. was struck off the register on October 30, 2007 and dissolved on November 6, 2007 | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0041.0001 | Will Use |
| 42 | 9/1/2008 | Order | Order to restore Paulson Ltd. to Register of Companies | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0042.0001 - Ex. 0042.0003 | Will Use |
| 46 | N/A | M. Gerowin Business Cards | | | | HER- 001252 | Will Use |
| 47 | 1/1/2005 | Letter | Letter regarding M. Gerowin Herrmann employment offer as senior analyst at Paulson & Co. Inc. | D. Pollack | M. Gerowin Herrmann | Paulson_00002687 | Will Use |
| 48 | N/A | Paulson Europe LLP Office Photo | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0048.0001 | Will Use |
| 49 | 2/10/2007 | Letter (with attachment) | Letter regarding M. Gerowin Herrmann work permit application | A. Rodgers | H. Cooper | Paulson_00001839-40 | Will Use |

**Plaintiffs' List of General Exhibits**
**Herrmann v. United States,  Fed. Cl. No. 14-941 T**

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 50 | 2007 | Work Permit Documents | | | | HER-1800-1805;  Also produced with Plaintiffs' Objections and Responses to Defendant's Interrogatories on August, 2016. | Will Use |
| 51 | Sep. 2011 | Paulson Europe LLP - Interaction with Paulson & Co. Inc. Organizational Chart (depo copy) | | | | HER-002021 | Will Use |
| 52 | 7/8/2009 | Letter (with attachment) | Letter regarding Rothstein Kass & Company, PC audit of Paulson & Co. Inc. financial statements | C. Bodak | M. Gerowin Herrmann | HER-001843-44 | Will Use |
| 60 | 9/10/2013 | HM Revenue & Customs Payments/credits received from M. Gerowin Herrmann, 2008-2013 | | | | HER-001829-42 | Will Use |
| 61 | 1/15/2010 | M. Gerowin and J. Herrmann Statement of account, Lloyds TSB | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0061.0001-03 | Will Use |
| 63 | 4/10/2014 | HM Revenue & Customs Payments/credits received from M. Gerowin Herrmann, 2008-2009 | | | | HER-001829 | Will Use |
| 64 | 7/4/2008 | Gerowin Herrmann U.K. Tax Return 2008 | | | | HER-002047-56 | Will Use |
| 65 | 6/4/2009 | Gerowin Herrmann U.K. Tax Return 2009 | | | | HER-00238-45 | May Use |
| 66 | 4/3/2012 | Email | Email regarding Foreign Tax Credits Summary - M. Gerowin Herrmann | N. Dunn | J. Scott, B. Abeyta, E. Cirelli, P. Hocking, A. Rose | USA-000170 | Will Use |
| 67 | 9/12/2011 | IRS Notes | IRS Notes regarding 2008 K-1 Reporting Discrepancy | | | USA-000371-72 | Will Use |

Plaintiffs' List of General Exhibits

Herrmann v. United States,  Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 68 | 7/13/2009 | Herrmann 2008 U.S. Tax Return (depo copy) | | | | USA-000390-475 | Will Use |
| 69 | 11/3/2010 | Herrmann 2009 U.S. Tax Return (depo copy) | | | | USA-0008293-8396 | May Use |
| 70 | 9/18/2012 | Herrmann 2008 Amended U.S. Tax Return (depo copy) | | | | Defendant's Ex. 5 to Hocking Deposition | Will Use |
| 71 | 10/12/2012 | Email (depo copy) | Email regarding Form 843 and Statement of Explanation of Claim for Refund | N. Dunn | J. Scott, P. Hocking, A. Rose, J. Herrmann, M. Gerowin Herrmann, H. Shashy, L. Gibbs, A. Wallizada, J. Casimir, T. Louthan, G. Clarke | USA-000052-74 | Will Use |
| 72 | 10/12/2012 | Herrmann 2008 Second Amended U.S. Tax Return (depo copy) | | | | Defendant's Ex. 7 Hocking Deposition | Will Use |
| 73 | N/A | Form 8082: Notice of Inconsistent Treatment or Administrative Adjustment Request (AAR), J. Herrmann and M. Gerowin Herrmann | | | | HER-000091-92 | Will Use |
| 74 | 4/3/2012 | Email (depo copy) | Email regarding Foreign Tax Credits Summary - M. Gerowin Herrmann | N. Dunn | J. Scott, B. Abeyta, E. Cirelli, P. Hocking, A. Rose | USA-000170-183 | Will Use |
| 75 | 9/12/2011 | IRS Notes (depo copy) | IRS Notes regarding 2008 K-1 Reporting Discrepancy | | | USA-000371-372 | Will Use |

Plaintiffs' List of General Exhibits

Herrmann v. United States,  Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---------|------|-------|-------------|--------|--------------|-------------|------------------|
| 76 | 4/13/2012 | Memorandum (depo copy) | Memorandum regarding telephone conference to discuss K1 true up quick/prompt assessment and foreign tax credit | | | Defendant's Ex. 12 Hocking Deposition | Will Use |
| 77 | 6/11/2009 | Email (depo copy, with attachment) | Email chain regarding M. Gerowin Herrmann 2008 US taxes | M. Gerowin Herrmann | N. Dunn | HER-001075-76; Ex. 14 to Hocking Deposition | Will Use |
| 78 | 9/22/2010 | Frank Hirth Notes (depo copy) | Frank Hirth Notes regarding meeting with M. Gerowin Herrmann and J. Herrmann to discuss US 2009 return review | | | HER-001049-50 | Will Use |
| 79 | 2016 | Frank Hirth Awards | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0079.0001 - Ex. 0079.0010 | Will Use |
| 80 | N/A | Frank Hirth Biography on P. Hocking | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0080.0001 - Ex. 0080.0003 | Will Use |
| 81 | 4/15/2011 | Form 4564: Information Document Request and Response, J. Herrmann and M. Gerowin Herrmann (depo copy) | | | | Defendant's Ex. 18 to Dunn Deposition | Will Use |

Plaintiffs' List of General Exhibits
Herrmann v. United States,  Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 82 | 9/28/2011 | Email (depo copy) | Email regarding Herrmann Form 4564 K-1 discrepancy followup IDR 7 | J. Scott | N. Dunn, B. Abeyta | Defendant's Ex. 20 Dunn Deposition; see also USA-00086-92 | Will Use |
| 83 | 8/19/2011 | Email (depo copy) | Email regarding Herrmann Form 4564 IDR Reconciliation IDR 6 | J. Scott | N. Dunn, B. Abeyta | Defendant's Ex. 21 Dunn Deposition | Will Use |
| 84 | 9/1/2011 | Email (depo copy, with attachment) | Email chain regarding Herrmann Form 4564 IDR Reconciliation IDR 6 | N. Dunn | J. Scott, B. Abeyta, P. Hocking, A. Rose | US-000081 | Will Use |
| 85 | 4/13/2012 | Form 4564: Information Document Request and Response, J. Herrmann and M. Gerowin Herrmann (depo copy) | | | | Defendant's Ex. 23 Dunn Deposition | Will Use |
| 86 | 3/20/2012 | Email (depo copy) | Email regarding Summary of Herrmann POA Conference Call | J. Scott | E. Cirelli | Defendant's Ex. 25 Dunn Deposition | Will Use |
| 87 | 4/13/2012 | Notice of Computational Adjustment (depo copy) | | J. Scott | J. Herrmann, M. Gerowin Herrmann | Defendant's Ex. 27 Dunn Deposition | Will Use |
| 88 | 9/10/2013 | Claim Disallowance (depo copy) | | E. Cirelli | J. Herrmann, M. Gerowin Herrmann | Defendant's Ex. 28 Dunn Deposition | Will Use |
| 89 | 7/16/2012 | Email (depo copy) | Email regarding request for an unmarked copy of 2008 Paulson Europe US Tax Return | M. Gerowin Herrmann | S. Merzer, C. Bodak, P. Hocking, J. Casimir, N. Dunn, J. Blackburn, A. Rose | HER-001077 | Will Use |

Plaintiffs' List of General Exhibits

Herrmann v. United States, Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 90 | 7/17/2012 | Email (depo copy, with attachment) | Email chain regarding Paulson 2008 amended Europe K1 | J. Bortnick | J. Scott, N. Dubnoff | Defendant's Ex. 30 Dunn Deposition; IRS0000926-41 | Will Use |
| 91 | 2016 | The Spears' 500 entry: P. Hocking, Frank Hirth | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0091.0001 - Ex. 0091.0003 | Will Use |
| 99 | 9/28/2009 | Form 1065: U.S. Return of Partnership Income, Paulson Europe LLP (depo copy) | | | | Plaintiffs' Ex. 13 Bodak Deposition | Will Use |
| 100 | 2008 | Original Erroneous 2008 Schedule K-1, M. Gerowin Herrmann (depo copy) | | | | USA000513-516 | Will Use |
| 101 | 2008 | Corrected 2008 Schedule K-1, M. Gerowin Herrmann | | | | Plaintiffs' Complaint Ex. 3 at HER-000007 | Will Use |
| 102 | 2008 | 2008 Schedule K-1s for all Paulson Europe LLP Partners | | | | USA-000693-709 | Will Use |
| 103 | 2009 | 2009 Schedule K-1, M. Gerowin Herrmann | | | | USA004470-73 | Will Use |
| 105 | 9/1/2005 | Paulson Advantage and Paulson Advantage Plus Presentation | | | | HER-001278-304 | Will Use |
| 106 | 11/30/2006 | The 2006 Paulson Funds Annual Review | | | | Paulson_00003444-88 | Will Use |
| 107 | 11/29/2007 | The 2007 Paulson Funds Annual Review | | | | Paulson_00003250-94 | Will Use |
| 108 | 11/17/2008 | The 2008 Paulson Funds Annual Review | | | | Paulson_00003295-341 | Will Use |
| 109 | 11/16/2009 | The 2009 Paulson Funds Annual Review: Creating the Foundation for Returns Through 2011-2012 | | | | Paulson_00003792-840 | Will Use |
| 110 | 11/15/2010 | The 2010 Paulson Funds Annual Review: 2010-2012 Investment Outlook | | | | Paulson_00003841-94 | May Use |
| 111 | 2011 | The Paulson Funds 2011 Year-End Firm Report | | | | Paulson_00003342-43 | May Use |
| 115 | 11/29/2007 | The 2007 Paulson Funds Annual Review (color) | | | | HER-001845-95 | May Use |

**Plaintiffs' List of General Exhibits**

**Herrmann v. United States, Fed. Cl. No. 14-941 T**

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 117 | 6/17/2009 | The 2009 Paulson Funds Mid-Year Review: "Profiting in the Current Environment" | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0117.0001 - Ex. 0117.0048 | Will Use |
| 118 | 2009 | The Paulson Funds 2009 Year End Report (depo copy) | | | | Paulson_00003744-91 | May Use |
| 119 | July 2015 | Paulson Merger Funds Standard Due Diligence Questionnaire | | | | HER-002016-20; HER-001847 | Will Use |
| 120 | 11/15/2010 | The 2010 Paulson Funds Annual Review: 2010-2012 Investment Outlook (color) | | | | Paulson_00003841-94 | May Use |
| 121 | 6/14/2006 | Paulson & Co. Inc. Merger and Event Arbitrage 2006 Mid-Year Review | | | | HER-001305-43 | May Use |
| 122 | 2005-2008 | Paulson Organizational Charts | | | | HER-001136; HER-001378; Paulson_00003662; HER-001282 | Will Use |
| 197 | 8/10/2012 | Email | Email chain regarding draft comparative between US and UK tax return | D. Carmody | B. Abeyta, J. Scott, R. Phillips | USA-006362-63 | Will Use |
| 198 | 2008-2012 | M. Gerowin Herrmann: 2008-12 Examination UK vs. US Comparative Request | | | | USA-000253-65 | Will Use |
| 199 | 3/10/2003 | IRS Offers Tips for Accurate Schedule K1 Reporting , IR 2004-51 | | | | Plaintiffs' Ex. 1 to Scott Deposition | Will Use |
| 200 | Dec. 2014 | IRS Publication 1: Your Rights as a Taxpayer | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0200.0001 | Will Use |
| 201 | 4/10/2012 | Request for Tax Computation Specialist (TCS) Service, J. Herrmann and M. Gerowin Herrmann | | | | HERRINT00037419 | Will Use |
| 202 | 2008 | Form 886-A: Explanation of Items, J. Herrmann and M. Gerowin Herrmann | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0202.0001 - Ex. 0202.0012 | Will Use |
| 203 | N/A | M. Gerowin Herrmann: 2008-12 Examination UK vs. US Comparative Request | | | | USA-000253-89 | Will Use |

Plaintiffs' List of General Exhibits
Herrmann v. United States, Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---------|------|-------|-------------|--------|--------------|-------------|------------------|
| 204 | N/A | IRS Workpaper, IE Computation of the Foreign Tax Credit | | | | USA-008557 | Will Use |
| 205 | 2008 | Form 886-A: Explanation of Items, J. Herrmann and M. Gerowin Herrmann | | | | USA-000323-35 | Will Use |
| 206 | N/A | Form 4549-A, Income Tax Discrepancy Adjustments, J. Herrmann and M. Gerowin Herrmann | | | | USA-000300-01 | Will Use |
| 207 | N/A | Email | Email regarding Form 5701 Notice of Proposed Adjustment FTC | J. Scott | N. Dunn, B. Abeyta, E. Cirelli | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0207.0001 - Ex. 0207.0004 | Will Use |
| 208 | 4/13/2012 | Email | Email regarding TEFRA report | N. Elfant | B. Abeyta, J. Scott | IRS0000655 | Will Use |
| 209 | 11/6/2012 | Email | Email regarding Herrmann update - summary of conference call | J. Scott | E. Cirelli | USA-006132-34 | Will Use |
| 210 | 6/22/2011 | Letter | Letter regarding Paulson Europe LLP IDR Responses 1-5 | J. Bortnick | G. Takahashi, C. Wade | Paulson_00001794-99 | Will Use |
| 211 | 8/16/2011 | Email (with attachment) | Email chain regarding Paulson Europe - Questions for 8/17 conference call | J. Bortnick | J. Scott, N. Dubnoff | Paulson_00001945-70 | Will Use |
| 212 | 5/24/2011 | Email | Email regarding Paulson Europe LLP - organizational documents | J. Bortnick | J. Scott | Paulson_00002973 | Will Use |

Plaintiffs' List of General Exhibits

Herrmann v. United States,  Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 220 | 4/10/2012 | Email (with attachment) | Email chain regarding partial assessment - true up K-1 | E. Cirelli | J. Scott, B. Abeyta | USA-006481-85 | Will Use |
| 221 | 10/1/2010 | 4.31.3.4.4.2 (10-01-2010) Schedule K-1 Discrepancy | | | | USA-000831-32 | Will Use |
| 222 | 4/13/2012 | Memorandum | Memorandum regarding telephone conference to discuss K1 true up quick/prompt assessment and foreign tax credit | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0222.0001 - Ex. 0222.0003 | Will Use |
| 223 | 9/15/2010 | Email (depo copy) | Email regarding 2010 K-1 | C. Bodak | M. Gerowin Herrmann | HER-001071 | Will Use |
| 224 | 11/22/2011 | Email | Email regarding Paulson Europe IDR 10 and 11 | J. Bortnick | J. Scott, N. Dubnoff, J. Bortnick | Paulson_00001723-25 | Will Use |
| 225 | 6/28/2012 | 2008 Tax Return Transcript, J. Herrmann and M. Gerowin Herrmann | | | | Ex. 7 to the Motion for Partial Summary Judgment (Doc. # 20) | Will Use |
| 226 | 2008 | Paulson Europe LLP Reconciliation of Schedule K to Schedules K-1, 2008-12 | | | | USA-000833-37 | Will Use |
| 227 | 7/30/2012 | 2008 Wage and Income Transcript, M. Gerowin | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0227.0001 - Ex. 0227.0011 | Will Use |
| 228 | 7/19/2011 | IRS Form 4564: Information Document Request Attachment 7A to Paulson Europe LLP | | J. Scott | Paulson Europe LLP | Paulson_00002911 | Will Use |
| 229 | 10/3/2012 | Email (with attachment) | Email chain regarding Herrmann K-1 | E. Cirelli | L. Beard, J. Scott | IRS0000637-40; Produced at USA-000248-49 | Will Use |

Plaintiffs' List of General Exhibits

Herrmann v. United States, Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 230 | 6/20/2012 | Letter | Letter regarding summary report on the examination of Paulson Europe LLP | J. Scott | Paulson Europe LLP | USA-000865-70 | Will Use |
| 231 | 7/17/2012 | Email (with depo copy, attachment) | Email chain regarding Paulson 2008 amended Europe K1 | J. Bortnick | J. Scott, N. Dubnoff | IRS0000926-38 | Will Use |
| 232 | 7/17/2012 | Email | Email regarding corrected summary report for Paulson Europe LLP | J. Scott | J. Bortnick, N. Dubnoff, B. Abeyta, D. Carmody | Paulson_00001399 | Will Use |
| 233 | 7/20/2012 | Email | Email regarding corrected summary report for Paulson Europe LLP | J. Scott | J. Bortnick, B. Abeyta, D. Carmody, E. Cirelli | Paulson_00000001 | Will Use |
| 234 | 7/25/2012 | Fax of Email | Fax of email regarding revised 2008 K-1 | J. Scott | J. Casimir | HER-002099-101 | Will Use |
| 235 | N/A | M. Gerowin UK Return - per transcript | | | | USA-000524-29 | Will Use |
| 236 | 7/19/2012 | Email (with attachment) | Email chain regarding request for an unmarked copy of 2008 Paulson Europe US Tax Return | M. Gerowin Herrmann | P. Hocking, J. Casimir, N. Dunn, J. Blackburn, J. Herrmann, A. Rose | HER-001806-08 | Will Use |
| 237 | N/A | Form 886-A: Explanation of Items, J. Herrmann and M. Gerowin Herrmann, 2008-2010 | | | | IRS0000577-614; HER-001011-48 | Will Use |

Plaintiffs' List of General Exhibits
Herrmann v. United States,  Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 238 | 3/7/2012 | Email | Email chain regarding K1 true computational adjustment | J. Scott | R. Phillips, E. Cirelli, B. Abeyta | IRS0000661-62 | Will Use |
| 239 | 4/5/2012 | Email | Email chain regarding partial assessment - true up K-1 | D. Carmody | J. Scott, B. Abeyta, E. Cirelli, A. Malik, E. Alair, J. Fee | USA-006474-77 | Will Use |
| 240 | 4/10/2012 | Email | Email chain regarding partial assessment - true up K-1 | E. Cirelli | J. Scott, B. Abeyta | USA-006481-85 | Will Use |
| 241 | 4/16/2012 | Special Handling Notice for Examination Case Processing | | J. Scott | | USA-006466-67 | Will Use |
| 242 | 7/26/2012 | Email | Email regarding "Computational Adjustment Summary Points" | D. Carmody | D. Hansberry, L. Beard, R. Phillips, E. Cirelli, S. Bonanni, J. Scott, J. Fee, M. Stabile | USA-006280 | Will Use |
| 243 | 8/30/2012 | No Adjustments Letter | | J. Joseph | Paulson Europe LLP | USA-000502 | Will Use |
| 244 | 9/26/2012 | Email | Email chain regarding "Computational Adjustment" | D. Carmody | J. Scott, B. Abeyta, E. Alair, J. Fee | USA-006277-79 | Will Use |
| 245 | 10/10/2012 | Email | Email chain regarding DC 02 case | K. Papathanasis | J. Scott | USA-006274-75 | Will Use |

Plaintiffs' List of General Exhibits
Herrmann v. United States,  Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 246 | 1/17/2013 | Email | Email chain regarding IRP Requestfor M. Herrmann for 2005-2007 | J. Scott | M. Robbins, B. Abeyta, E. Cirelli | USA-006967 | Will Use |
| 247 | 4/8/2011 | Examining Officer's Activity Record for J and M Herrmann | | J. Scott | | USA-006391-95 | Will Use |
| 250 | 8/3/2012 | Email (with attachment) | Email chain regarding meeting | E. Cirelli | J. Scott, J. Fee, D. Carmody, R. Phillips | USA-006407-10 | Will Use |
| 251 | 4/9/2004 | IRS Newsire, "IRS Offers Tips for Accurate Schedule K-1 Filing" (depo copy) | | | | Plaintiffs' Ex. 1 to Scott Deposition | Will Use |
| 252 | 4/15/2011 | Letter (depo copy) | Letter regarding notification of federal return examination | J. Scott | J. Herrmann, M. Gerowin Herrmann | Plaintiffs' Ex. 2 to Scott Deposition | Will Use |
| 253 | May 2005 | IRS Publication 1: Your Rights as a Taxpayer | | | | Plaintiffs' Ex. 3 to Scott Deposition | Will Use |
| 254 | N/A | M. Gerowin Herrmann 2008 and 2009 Comparative Facts (depo copy) | | | | USA-000897-99 | Will Use |
| 255 | 4/15/2011 | Form 4564: Information Document Request and Response, J. Herrmann and M. Gerowin Herrmann (depo copy) | | | | USA-000228; USA-000213-14 | Will Use |
| 256 | 4/15/2011 | Letter (depo copy) | Letter regarding notification of federal return examination | J. Scott | Paulson Europe LLP | USA-000818-19 | Will Use |
| 257 | 4/22/2011 | Notice of Beginning of Administrative Proceeding (with depo copy) | | T. Venable | Paulson, Ltd., Paulson Europe LLP | Paulson_00001690-701 | Will Use |
| 258 | 10/17/2011 | Notice of Beginning of Administrative Proceeding (depo copy) | | T. Venable | M. Gerowin Herrmann | Plaintiffs' Ex. 8 to Scott Deposition | Will Use |

**Plaintiffs' List of General Exhibits**
**Herrmann v. United States, Fed. Cl. No. 14-941 T**

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 259 | 9/12/2011 | IRS Notes (depo copy) | IRS Notes regarding 2008 K-1 Reporting Discrepancy | | | USA-000371-72 | Will Use |
| 260 | 4/15/2011 | Form 4564: Information Document Request and Response, Paulson Europe LLP (depo copy) | | | | USA-000878-84 | Will Use |
| 261 | 6/22/2011 | Email (depo copy) | Email regarding Paulson Europe IDR responses 1-5 | J. Bortnick | J. Scott, N. Dubnoff | Paulson_00000349; Paulson_00001794-99 | Will Use |
| 262 | 5/20/2011 | Email (depo copy, with attachment) | Email chain regarding John Paulson and Paulson Europe | J. Bortnick | J. Scott, N. Dubnoff | USA-000829; USA-000895; Paulson_00002841-44 | Will Use |
| 263 | 8/16/2011 | Email (depo copy) | Email regarding Paulson Europe - questions for 8/17 conference call | J. Bortnick | J. Scott, N. Dubnoff | Paulson_00000810-33 | Will Use |
| 264 | 5/23/2011 | Letter | Letter regarding signed Paulson Europe MOU | J. Bortnick | J. Scott | USA-000906-10 | Will Use |
| 265 | N/A | LB&I Examination Plan for 2008-2012, Paulson Europe LLP (depo copy) | | | | USA-000886-92 | Will Use |
| 266 | 10/3/2012 | Email (depo copy, with attachment) | Email chain regarding Herrmann 2008 K-1 | E. Cirelli | L. Beard, J. Scott | USA-000248-49 | Will Use |
| 267 | 11/22/2011 | Email (depo copy) | Email regarding Paulson Europe IDR 10 and 11 | J. Bortnick | J. Scott, N. Dubnoff | Paulson_00001723-25 | Will Use |
| 268 | 2008 | 2008 Schedule K-1, M. Gerowin Herrmann (depo copy) | | | | Plaintiffs' Ex. 18 to Scott Deposition | Will Use |

**Plaintiffs' List of General Exhibits**
**Herrmann v. United States, Fed. Cl. No. 14-941 T**

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 269 | 7/25/2012 | Fax of Email (depo copy) | Fax of email regarding computational adjustment | J. Scott | J. Casimir | Plaintiffs' Ex. 19 to Scott Deposition | Will Use |
| 270 | 7/17/2012 | Email (depo copy, with attachment) | Email chain regarding Paulson 2008 amended Europe K1 | J. Bortnick | J. Scott, N. Dubnoff | IRS0000926-41 | Will Use |
| 271 | 2/17/2012 | Form 5701: Notice of Proposed Adjustment and Form 886-A: Explanation of Items, J. Herrmann and M. Gerowin Herrmann | | E. Cirelli | | USA-000005-18 | Will Use |
| 272 | 8/7/2012 | Email (depo copy) | Email chain regarding timing between US 1040 and UK Return | D. Carmody | J. Scott, R. Phillips, E. Cirelli, B. Abeyta | USA-000930-32 | Will Use |
| 273 | 4/3/2012 | Email (depo copy) | Email chain regarding update on additional information | N. Dunn | J. Scott, B. Abeyta, P. Hocking, A. Rose | USA-000171-72 | Will Use |
| 274 | 4/13/2012 | Memorandum (depo copy) | Memorandum regarding telephone conference to discuss "K1 True Up quick/prompt assessment and Foreign Tax Credit" | | | Plaintiffs' Ex. 24 to Scott Deposition | Will Use |

**Plaintiffs' List of General Exhibits**
**Herrmann v. United States,  Fed. Cl. No. 14-941 T**

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 275 | 12/19/2013 | Memorandum for Appeals Team Manager | Memorandum regarding rebuttal to Herrmann claim disallowance protest dated October 30, 2013 | E. Cirelli | | Plaintiffs' Ex. 25 to Scott Deposition | Will Use |
| 276 | 7/26/2012 | Agenda for TEFRA Proceedings - Closing Conference | | | | Plaintiffs' Ex. 26 to Scott Deposition | Will Use |
| 277 | 7/26/2012 | Email (depo copy) | Email regarding Summary of Paulson Europe Closing Conference | J. Scott | E. Cirelli | Plaintiffs' Ex. 27 to Scott Deposition | Will Use |
| 278 | 12/5/2012 | Email (depo copy) | Email chain regarding AAR letters | B. Abeyta | J. Scott, R. PhilliPs, E. Cirelli | IRS0000823-27 | Will Use |
| 279 | 9/23/2015 | Declaration of J. Scott (depo copy) | | | | Plaintiffs' Ex. 29 to Scott Deposition | Will Use |
| 280 | N/A | Internal Revenue Code §6227 Administrative adjustment requests (depo copy) | | | | Plaintiffs' Ex. 30 to Scott Deposition | Will Use |
| 281 | 1/18/2013 | Email (depo copy) | Email chain regarding disallowance AAR | J. Parker | J. Scott | Plaintiffs' Ex. 31 to Scott Deposition | Will Use |
| 282 | N/A | IRS Notes (depo copy) | IRS Notes on M. Gerowin Herrmann regarding Computational Adjustment Summary Points | | | Plaintiffs' Ex. 32 to Scott Deposition | Will Use |

Plaintiffs' List of General Exhibits
Herrmann v. United States,  Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 283 | 7/15/2016 | IRS Memorandum (depo copy) | IRS Memorandum regarding Herrmann v. United States | P. Graziano | J. Scott | Plaintiffs' Ex. 33 to Scott Deposition | Will Use |
| 284 | 1/18/2013 | Email | Email chain regarding disallowance AAR | J. Parker | J. Scott | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0284.0001 - Ex. 0284.0002 | Will Use |
| 285 | 4/15/2011 | Form 4564: Information Document Request | | J. Scott | Paulson Europe LLP | USA-000883-85 | Will Use |
| 286 | 2008-2012 | LB&I Examination Plan for 2008-2012, J. and M. Herrmann | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0286.0001 - Ex. 0286.0007 | Will Use |
| 287 | 3/6/2012 | Email | Email regarding Form 5701 - Notice of Proposed Adjustment - Partnership Income | J. Scott | N. Dunn, B. Abeyta, E. Cirelli | USA-000503 | Will Use |
| 288 | 3/20/2012 | Email | Email regarding Summary of Herrmann POA Conference Call 3-20-12 | J. Scott | E. Cirelli | USA-000532 | Will Use |
| 289 | 5/2/2011 | Initial Interview Questions and Notes | Notes regarding J. and M. Herrmann | J. Scott | | USA-000365 | Will Use |
| 290 | 11/6/2012 | Email | Email chain regarding Herrmann update - summary of conference call | J. Scott | E. Cirelli | USA-006132 | Will Use |

Plaintiffs' List of General Exhibits

Herrmann v. United States, Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 291 | 7/6/2012 | Memorandum | Memorandum regarding Form 8832, Check the Box Election | | | USA-000933-34 | Will Use |
| 292 | 1/17/2013 | Email | Email chain regarding IRP Requestfor M. Herrmann for 2005-2007 | J. Scott | M. Robbins, B. Abeyta, E. Cirelli | USA-006967 | Will Use |
| 293 | 5/24/2011 | Email | Email regarding Paulson Europe LLP - organizational documents | J. Bortnick | J. Scott | Paulson_00002973 | Will Use |
| 294 | 9/30/2011 | Email | Email regarding Paulson Europe LLP Form 4564 Special Allocations IDR 11 | J. Scott | J. Bortnick, B. Abeyta | Paulson_00002834-35 | Will Use |
| 295 | 3/7/2012 | Meeting Notes | Notes regarding meeting to discuss status of Paulson Europe LLP 2008-2012 examination | | | USA-000893-94 | Will Use |
| 296 | 7/6/2012 | Email | Email regarding summary of Herrmann conference call - closing conference 7-6-12 | J. Scott | E. Cirelli | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0296.0001 - Ex. 0296.0002 | Will Use |

Plaintiffs' List of General Exhibits

Herrmann v. United States, Fed. Cl. No. 14-941 T

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 297 | 7/10/2012 | Email | Email chain regarding notice partner | B. Abeyta | J. Scott, D. Carmody | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0297.0001 - Ex. 0297.0002 | Will Use |
| 298 | 7/25/2012 | Email | Email chain regarding answers to partnership questions | J. Scott | E. Cirelli | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0298.0001 - Ex. 0298.0004 | Will Use |
| 299 | 4/18/2012 | Email | Email regarding K-1 True Ip Assessment Notification Letter | J. Scott | N. Dunn, B. Abeyta, C. Shimonis | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0299.0001 - Ex. 0299.0005 | Will Use |
| 300 | 1/18/2013 | Email | Email regarding conference call 1-18-13 summary - claim disallowance letters write-up | J. Scott | E. Cirelli | USA-006070 | Will Use |
| 301 | N/A | Purported 2008 PELLP K-1, Provided to Taxpayer in the Summer of 2011 (Complaint Exhibit 1) | | | | HER-000001-04 | Will Use |
| 302 | 7/6/2012 | Email (Complaint Exhibit 2) | Email regarding summary of Herrmann conference call - closing conference 7-6-12 | J. Scott | E. Cirelli | HER-000005-06 | Will Use |
| 303 | 7/17/2012 | PELLP Revised 2008 K-1 (Complaint Exhibit 3) | | | | HER-000007-10 | Will Use |
| 304 | 10/11/2012 | IRS Payment Voucher for J. Herrmann and M. Gerowin Herrmann (Complaint Exhibit 4) | | C. McManus | | HER-000011-13 | Will Use |
| 305 | 9/10/2013 | Excerpts of IRS Claim Disallowance Letter (Complaint Exhibit 5) | | J. Scott | H. Shashy | HER-000014-23 | Will Use |

**Plaintiffs' List of General Exhibits**
**Herrmann v. United States, Fed. Cl. No. 14-941 T**

| Exhibit | Date | Title | Description | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---|---|---|---|---|---|---|---|
| 306 | 10/12/2012 | Form 843: Claim for Refund and Request for Abatement, J. Herrmann and M. Gerowin Herrmann (Complaint Exhibit 6A) | | P. Hocking | | HER-000024-26 | Will Use |
| 307 | 10/12/2012 | Statement in Explanation of Claim for Refund of M. Gerowin Herrmann and J. Herrmann for Taxable Year 2008 (Complaint Exhibit 6B) | | | | HER-000027-45 | Will Use |
| 308 | 10/12/2012 | Forms 1040X Relating to the Tax Year 2008 (Complaint Exhibit 6C) | | J. Herrmann, M. Gerowin Herrmann | | HER-000046-1010 | May Use |
| 309 | 12/20/2012 | Supplemental letter (Complaint Exhibit 6D) | Letter regarding Herrmann Claim for Refund | H. Shashy | E. Cirelli | HER-001011-36 | Will Use |
| 310 | 2015 - 2016 | Collection of United States' Responses to Plaintiffs' Interrogatories | | M. Lucey | N. Clukey | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0310.0001 - Ex. 0310.0026 | Will Use |
| 311 | 6/18/2015 | United States' Response to Plaintiffs' First Set of Requests for Admission | | M. Lucey | N. Clukey | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0311.0001 - Ex. 0311.0008 | Will Use |
| 312 | 2008 | PELLP Structure Chart | | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0312.0001 | Will Use |
| 313 | 4/15/2011 | Form 4564: Information Document Request, Paulson Europe LLP | | J. Scott | Paulson Europe LLP | USA-000871-84 | Will Use |
| 314 | N/A | Summary Exhibit Produced by Brattle Group | | E. Cohen | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0314.0001 - Ex. 0314.0003 | Will Use |
| 315 | 10/13/2008 | IRS Form 1065 | Paulson Europe LLP 2007 Tax Return | | | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0315.0001 - Ex. 0315.0024 | Will Use |
| 316 | 6/1/2008 | Barclays USD Capital Call Account Statement for Client | | Barclays Wealth | Mina Gerowin Herrmann | Produced at Nov. 15, 2015 Meeting of Counsel; Ex. 0316.0001 - Ex. 0316.0002 | Will Use |

**Plaintiffs' List of Attorney's Eyes Only Exhibits**
**Herrmann v. United States, Fed. Cl. No. 14-941 T**

| Exhibit | Date | Title | Author | Recipient(s) | Bates Range | Will Use/May Use |
|---------|------|-------|--------|--------------|-------------|------------------|
| 1001 | 2006 | Paulson & Co. and Affiliates YTD Incentive Fees 1-1-06 to 12-31-06 | | | Paulson_00005142 | Will Use |
| 1002 | 2007 | Paulson & Co. and Affiliates YTD Incentive Fees 1-1-07 to 12-31-07 | | | Paulson_00005143 | Will Use |
| 1003 | 2008 | Paulson & Co. and Affiliates 2008 YTD Incentive Fees | | | Paulson_00005144 | Will Use |
| 1004 | 2009 | Paulson & Co. and Affiliates 2009 YTD Incentive Fees | | | Paulson_00005145 | Will Use |
| 1005 | 2005 | Paulson & Co. and Affiliates Net Incentives Fees Earned 1-1-05 to 12-31-05 | | | Paulson_00005141 | Will Use |
| 1006 | 2008 | PELLP Accounts Data | | | Paulson_00004787-5022 | Will Use |
| 1007 | | Summary of Payments to/(from) M. Gerowin Herrmann, N. Petchenikov, and H. Cooper | E. Cohen | | Produced at Nov. 15, 2016 Meeting of Counsel; Ex. 1007.0001 | Will Use |

# ATTACHMENT C

## Plaintiffs' Objections to Defendant's Exhibits

| EXHIBIT NO. | DESCRIPTION | BATES BEG or Other Location | BATES END | Objection (O) or Joint Ex. (J) |
|---|---|---|---|---|
| 1. | Plaintiffs' Complaint and Exhibits | Docket / HER-000001 | HER-001036 | J |
| 2. | September 22, 2010 US Return Review by Frank Hirth Plc ("Frank Hirth") | HER-001049 | HER-001050 | J |
| 3. | Paulson and Co. Inc. ("Paulson and Co.") and Affiliates Compensation Summary | HER-001078 | HER-001080 | J |
| 4. | Jan 3, 2012 Email from Candace Allen to Mina Herrmann *et al.* requesting additional capital contribution | HER-001058 | HER-001059 | O: Auth.; Hearsay |
| 5. | Sept. 15, 2010 Email from Chris Bodak to Mina Herrmann transmitting 2009 K-1 | HER-001071 | HER-001071 | J |
| 6. | Paulson and Co. and Affiliates 2009 YTD Net Incentive Fees and 2009 Final Bonuses | HER-001072 | HER-001074 | J |
| 7. | June 11, 2009 Email chain ending with email from Mina Herrmann to Nicola Dunn re: 2008 US taxes | HER-001075 | HER-001076 | J |
| 8. | July 16, 2012 Email from Mina Herrmann to Stuart Merzer re: percentage share of core capital | HER-001077 | HER-001077 | |
| 9. | Frank Hirth K-1 Summary for Tax Year 2008 | HER-001088 | HER-001088 | |
| 10. | 2008 to 2010 Income Reporting Schedule prepared by Frank Hirth | HER-001089 | HER-001089 | Rule 408 Settlement Document; Auth.; Hearsay |
| 11. | June 28, 2012 Email from Stuart Merzer to Mina Herrmann re: summary report and waiver of closing conference and attachment | HER-001091 | HER-001092 | O: Auth.; Hearsay |

| 12. | Letter re: two-year work Permit Application of Paulson Europe LLP ("PELLP") on behalf of Mina Herrmann dated Sept. 19, 2007 | HER-001138 | HER-001142 | J |
|---|---|---|---|---|
| 13. | May 24, 2012 Compromise Agreement Between Paulson & Co., Inc., John Paulson, and Mina Gerowin Herrmann | **Produced by plaintiffs without Bates numbering** | | **O: Rule 408 settlement document; Auth.; Hearsay** |
| 14. | Mar 18, 2008 Letter from Henry St. John "to Whom it May Concern" re: Mina Herrmann's compensation | **Produced by plaintiffs without Bates numbering** | | **O: Auth.; Hearsay** |
| 15. | March 27, 2012 Email from Lauren Wright to Mina Herrmann and attached bio of Mina Herrmann | HER-001154 | HER-001156 | **O: Auth.; Hearsay** |
| 16. | March 19, 2012 Email from Chris Bodak to Mina Herrmann *et al.* re: update on status of PELLP audit | HER-001157 | HER-001157 | **O: Auth.; Hearsay** |
| 17. | Feb. 19, 2009 Email chain from Chris Bodak to Mina Herrmann re: balances in vested/unvested accounts | HER-001800 | HER-001800 | **O: Auth.; Hearsay** |
| 18. | Paulson Advantage K-1 | HER-002220 | HER-002228 | **O: Auth.; Hearsay** |
| 19. | January 16, 2009 Lloyd's TSB Statement of Account (with 12 mill. pounds) | HER-002102 | HER-002102 | J |
| 20. | Appointment of a Member to a Limited Liability Partnership, PELLP, and attachments | HER-002546 | HER-002635 | **O: Improper compilation; Auth.; Hearsay** |
| 21. | Appointment of a Member to a Limited Liability Partnership | HER-002591 | HER-002591 | **O: Auth.; Hearsay** |
| 22. | PELLP 2007-2008 UK Tax Return | HER-002604 | HER-002609 | **O: Auth.; Hearsay** |
| 23. | July 27, 2009 Representation Form for Members LLPs | HER-002610 | HER-002617 | |
| 24. | June 17, 2008 Representation Form for Members LLPs | HER-002629 | HER-002634 | |
| 25. | Herrmanns' UK Tax Return for April 2007– April 2008 | HER-002636 | HER-002654 | J |
| 26. | Herrmanns' UK Tax Return for April 2008 – April 2009 | HER-002655 | HER-002671 | J |

| 27. | Herrmanns' UK Tax Return for April 2009 – April 2010 | USA-000143 | USA-000164 | |
|---|---|---|---|---|
| 28. | Jan. 1, 2005 Employment Agreement btwn. Mina Herrmann and Paulson & Co. | HER-001217 | HER-001217 | J |
| 29. | March 18, 2008 Letter from PELLP to Whom It May Concern re: Mina Herrmann | HER-001235 | HER-001235 | O: Auth.; Hearsay |
| 30. | UK Border and Immigration Work Permit Application for Mina Herrmann | HER-001236 | HER-001251 | J |
| 31. | Copy of Paulson & Co. Inc. and PELLP Business Cards | HER-001252 | HER-001252 | J |
| 32. | Paulson International LTD. Snapshot, Merger Arbitrage & Event Arbitrage, May 31, 2005 | HER-001271 | HER-001277 | O: Auth.; Hearsay |
| 33. | Statement of Deferred Compensation Account, Paulson International LTD. – 2008 | HER-001794 | HER-001794 | O: Auth.; Hearsay |
| 34. | July 19, 2012 Email from Stuart Merzer to Mina Herrmann *et al.* re: request for an unmarked copy of 2008 PELLP US Tax Return | HER-001806 | HER-001808 | J |
| 35. | Oct. 9, 2012 Letter from PELLP to New York State Department of Taxation and Finance re: Herrmanns | HER-001809 | HER-001809 | O: Auth.; Hearsay |
| 36. | Record of UK Tax Paid, Mina Herrmann | HER-001829 | HER-001842 | J |
| 37. | July 8, 2009 Letter from Paulson & Co. to Mina Herrmann and July 20, 2009 Response | HER-001843 | HER-001844 | J |
| 38. | Paulson Europe LLP – Interaction with Paulson & Co. | HER-002021 | HER-002021 | J |
| 39. | Nov 28, 2011 Letter from Frank Hirth to Internal Revenue Service re: Herrmanns and attachments | HER-002061 | HER-002068 | J |
| 40. | August 31, 2012 Fax from Thomas Louthan, to Lucy Ambroz, Taxpayer Advocate Service, re: Mina Herrmann | HER-002090 | HER-002091 | |

| 41. | Sept. 11, 2012 Fax from Thomas Louthan to Lucy Ambroz, Taxpayer Advocate Service, re: Mina Herrmann | **HER-002092** | **HER-002093** | |
|---|---|---|---|---|
| 42. | Sept. 7, 2012 Email from Jim Casimir to Redigo Phillips *et al.* re: Notice of Deficiency | **HER-002103** | **HER-002103** | |
| 43. | Mina Herrmann's 2008 Appointment Calendar | **HER-002112** | **HER-002125** | |
| 44. | Herrmanns' 2009 US Tax Organizer | **HER-002319** | **HER-002545** | **O: Auth.; Hearsay; Improper compilation (227 pages)** |
| 45. | PELLP Report and Financial Statements for year ended 2009 | **HER-002573** | **HER-002590** | **O: Auth.; Hearsay** |
| 46. | PELLP Report and Financial Statements for year ended 2010 | **HER-002547** | **HER-002564** | **O: Auth.; Hearsay** |
| 47. | IDR Response 5 | **USA-000079** | **USA-000079** | **O: Incomplete document** |
| 48. | November 11, 2011 Letter from Frank Hirth to IRS re: Herrmanns | **USA-000083** | **USA-000083** | **J** |
| 49. | IDR 6 and Response | **USA-000084** | **USA-000085** | |
| 50. | IDR 7 and Response | **USA-000086** | **USA-000092** | |
| 51. | IDR 8 and Response | **USA-000093** | **USA-000124** | **O: Auth.; Hearsay; Attachment is Rule 408 Settlement Document** |
| 52. | Spreadsheet produced in response to IDR 2 listing Herrmanns' 2008 partnership interests | **USA-000166** | **USA-000166** | **O: Incomplete document** |
| 53. | Mina Herrmann's UK Tax Payment Schedule | **USA-000173** | **USA-000177** | **O: Incomplete document** |
| 54. | April 3, 2012 Email from Nicola Dunn to Eric Cirelli *et al.* and Mina Herrmann's UK tax statements A to D | **USA-000170**<br><br>**USA-000178** | **USA-000170**<br><br>**USA-000183** | |
| 55. | Herrmanns' 2008 Original U.S. Return | **USA-000390** | **USA-000500** | **J** |

| 56. | Aug. 7, 2012 Email chain from Daniel Carmody to Joseph Scott *et al.* re: timing between US 1040 and UK Return | USA-000930 | USA-000932 | J |
|---|---|---|---|---|
| 57. | Herrmanns' 2008 Amended Return dated August 7, 2012 | USA-004574<br><br>USA-007804 | USA-004781<br><br>USA-008010 | J (Duplicates) |
| 58. | Mina Herrmann's Statement to the IRS | USA-000184 | USA-000187 | |
| 59. | Paulson Europe LLP Report and Financial Statements for the Year Ended 31 March 2008 | USA-008794 | USA-008811 | O: Auth.; Hearsay |
| 60. | Listing of 2008 Payments Wired from PELLP to Cater Allen Bank | USA-000604 | USA-000628 | J (unredacted) / O: Redacted document |
| 61. | Paulson Europe Remeasurement of Members' Distributions | USA-000679 | USA-000684 | O: Redacted / Incomplete document |
| 62. | July 10, 2012 Email from J. Scott to Jeffrey Bortnick re: closing conference agenda | USA-000725 | USA-000725 | J |
| 63. | Closing Conference Agenda | USA-000726 | USA-000726 | J |
| 64. | November 28, 2011 Frank Hirth (N. Dunn) Cover Letter to IDR Responses 6-8 | USA-000083 | USA-000083 | J (Duplicate of Def. Ex. 48) |
| 65. | Spreadsheet with PELLP payments to Mina Herrmann during 2008 | USA-000517 | USA-000521 | J |
| 66. | August 10, 2012 Request for Collection Due Process (CDP) request and attachments | USA-007047 | USA-007058 | |
| 67. | August 28, 2012 Fax from Thomas Louthan to Lucy Ambroz, Taxpayer Advocate Service, re: Herrmanns' Amended Returns and attachment | Casimir Dep. Exh. 14 | | |
| 68. | October 1, 2012 Letter from Casimir Consulting International to Christopher Wagner, Chief of Appeals, re: Herrmanns' CDP hearing | Produced at Jim Casimir Deposition | | |
| 69. | Spreadsheet Detailing PELLP Income and Expenses (Federal Tax Trial Balance Report), December 31, 2008 | USA-000669 | USA-000674 | O: Auth.; Hearsay |

| 70. | Spreadsheet Detailing Distributions to PELLP Partners | USA-000675 | USA-000676 | O: Redacted / Incomplete document; Auth.; Hearsay |
|---|---|---|---|---|
| 71. | PELLP Analysis Of Book/Tax Capital, 2006-2008 | USA-000667 | USA-000668 | O: Redacted / Incomplete document; Auth.; Hearsay |
| 72. | Spreadsheet Detailing PELLP Receipts and Payments for 2008 | USA-008984 | USA-009067 | J |
| 73. | PELLP Deed of Amendment | USA-000635<br><br>USA-000926 | USA-000638<br><br>USA-000929 | J |
| 74. | PELLP Partnership Agreement | USA-000639 | USA-000663 | J |
| 75. | PELLP Org. Chart | USA-000664 | USA-000664 | J |
| 76. | PELLP Allocation of Member's Equity | USA-000665 | USA-000666 | O: Redacted / Incomplete document; Auth.; Hearsay |
| 77. | PELLP Reallocation Of Income | USA-000675 | USA-000676 | O: Redacted / Incomplete document; Auth.; Hearsay |
| 78. | Mina Herrmann's 2009 K-1 | USA-000830<br><br>USA-004470 | USA-000830<br><br>USA-004473 | J |
| 79. | Oct. 17, 2011 Notice of Beginning Of Administrative Proceeding re: Mina Herrmann | USA-000838 | USA-000839 | J |
| 80. | July 18, 2012 Email from Jim Casimir to Joe Scott re: Paul Hocking questions | USA-000861 | USA-000862 | J |
| 81. | Summary of PELLP Closing Conference | USA-000863 | USA-000864 | J |
| 82. | IDR 1 – IDR 5 and attachments | USA-000875 | USA-000885 | J (if corrected) / O: Incomplete document; missing attachments 1A and 1B |
| 83. | Note to File Regarding Conference Call with PELLP Reps. re: Forms to Use to Close Out PELLP Exam | USA-000896 | USA-000896 | J |
| 84. | Form 2848 Power of Attorney, PELLP | USA-000903 | USA-000905 | J |

| 85. | Notice of Proposed Adjustment and Form 886 (decrease in Foreign Tax Credit) | USA-001092 (also USA-006726) | USA-001105 (also USA-006739) | J |
|---|---|---|---|---|
| 86. | Notice of Proposed Adjustment and Form 886 (PELLP distributive share) | USA-001109 (also USA-006689) | USA-001120 (also USA-006699) | J |
| 87. | Notice of Proposed Adjustment and 886 (Penalty) | USA-001121 (also USA-006700) | USA-001142 (also USA-00672)1 | |
| 88. | Sub-Advisory Agreement between PELLP and Paulson & Co. | USA-001164 (also Herrmann depo Ex. 3) | USA-001177 | J |
| 89. | July 20, 2012 IRS Letter to Paul Hocking re: Mina Herrmann's Notice of Computational Adjustment | USA-001220 | USA-001222 | |
| 90. | September 11, 2012 IRS Letter to James Casimir re: Response to Email of Sept. 11, 2012 | USA-001231  USA-001233 | USA-001232  USA-001233 | |
| 91. | Response to IDR 1 and 3 | USA-001240 | USA-001320 | O:  Incomplete document |
| 92. | Oct. 12, 2012 Email From Nicola Dunn transmitting Form 843 filed on October 12, 2012 | USA-001321 | USA-001321 | J |
| 93. | Form 843 Filed (Without Attached Returns) on October 12, 2012 with Frank Hirth Cover Letter and Statement in Support Of Claim for Refund | USA-001322 | USA-001343 | J |
| 94. | Herrmanns' Second Amended and First Amended 2008 Returns Filed On October 12, 2012 – Alt. 2 | USA-001345 | USA-001665 | J |
| 95. | Herrmanns' Second Amended And First Amended 2009 Returns Filed On October 12, 2012 | USA-001666 | USA-001982 | J |
| 96. | Herrmanns' Second Amended and First Amended 2010 Returns Filed On October 12, 2012 | USA-001983 | USA-002236 | J |
| 97. | Herrmanns' Second Amended And First Amended 2008 Returns Filed On October 12, 2012 – Alt. 3 | USA-002237 | USA-002558 | J |

| 98. | Herrmanns' Second Amended And First Amended 2009 Returns Filed On October 12, 2012 – Alt. 3 | USA-002559 | USA-002868 | J |
|---|---|---|---|---|
| 99. | Herrmanns' Second Amended And First Amended 2010 Returns Filed On October 12, 2012 – Alt. 3 | USA-002869 | USA-003121 | J |
| 100. | Herrmanns' Second Amended And First Amended 2008 Returns Filed On October 12, 2012 – Alt. 1 | USA-003122 | USA-003443 | J |
| 101. | Herrmanns' Second Amended And First Amended 2009 Returns Filed On October 12, 2012 – Alt. 1 | USA-003444 | USA-003753 | J |
| 102. | Herrmanns' Second Amended And First Amended 2010 Returns Filed On October 12, 2012 – Alt. 1 | USA-003754 | USA-004008 | J |
| 103. | Dec 20, 2012 Letter from King & Spaulding to IRS re: Herrmann Claim for Refund | USA-004009<br><br>USA-004022 | USA-004021<br><br>USA-004034 | J |
| 104. | Oct. 25, 2012 Email from Nicola Dunn to Joe Scott *et al.* stating that Taxpayer Advocate Service Request, CDP Request, and Refund Claims filed | USA-000075 | USA-000076 | |
| 105. | Memo To File Summarizing April 13, 2012 Meeting between IRS and Mina Herrmann's Reps. | USA-000239 | USA-000241 | J |
| 106. | Oct. 10, 2012 Email from Lisa Beard to Larry Gibbs *et al.* re: payment/partial abatement | USA-000242<br><br>USA-000245 | USA-000244<br><br>USA-000247 | |
| 107. | Oct. 9, 2012 Email from Lisa Beard to Larry Gibbs *et al.* re: payment/partial abatement (2nd email) | USA-000250 | USA-000252 | |
| 108. | PELLP Members Distribution Listing For Mina Herrmann for 2008 | USA-000517 | USA-000520 | J (Duplicate of Def. Ex 65) |
| 109. | Examiner Officer's Activity Record | USA-006391 | USA-006395 | J |

| 110. | Summary of Conference Call between IRS and Paul Hocking/Nicola Dunn on K-1 Reporting Discrepancy – September 12, 2011 | USA-000371 | USA-000372 | J |
|------|------|------|------|------|
| 111. | Summary of Conference Call Between IRS and Paul Hocking/Nicola Dunn – March 20, 2012 | USA-000532 | USA-000532 | J |
| 112. | November 14, 2011 Memo From Joseph Heavey to Department of Treasury in Response To IDR Request 9 (enclosing PELLP Remeasurement of Members' Distributions); IDR Reponse 9 | USA-000677<br><br>USA-000685 | USA-000679<br><br>USA-000685 | O: Auth.; Hearsay; 701; Redacted document |
| 113. | July 17, 2012 Email from Joe Scott to Jeffrey Bortnick *et al.* re: Form 886-S | USA-000748 | USA-000748 | J |
| 114. | Appeals Case Memorandum | USA-007393 | USA-007414 | J |
| 115. | Herrmanns' Protest To Appeals dated October 31, 2013 | USA-007477 | USA-007700 | |
| 116. | IRS Rebuttal to Herrmanns' Protest to Appeals | USA-007702 | USA-007709 | |
| 117. | Mina Herrmann's 2010 K-1 | USA-008397 | USA-008397 | |
| 118. | Herrmanns' 2009 Original Return | USA-008402 | USA-008505 | |
| 119. | PELLP 2008 UK Partnership Tax Return | USA-000551 | USA-000561 | |
| 120. | Summary of December 7, 2012 Conference Call between IRS and Mina Herrmann's Reps. | USA-006072 | USA-006074 | |
| 121. | July 31, 2012 Summary of Meeting Between Eric Cirelli and Jim Casimir | USA-006376 | USA-006377 | |
| 122. | September 7, 2012 Email from Jim Casimir to Eric Cirelli *et al.* re: Computational Adjustment assessment | USA-006402<br><br>USA-006407 | USA-006403<br><br>USA-006410 | |
| 123. | August 7, 2012 from Jim Casimir to Eric Cirelli re: resolving Mina | USA-006418<br><br>USA-000295 | USA-006419<br><br>USA-000298 | |
| 124. | | | | |

| 125. | January 3, 2012 Email from Candace Allen to Mina Herrmann *et al.* requesting an increase in capital | USA-005185 | USA-005186 | O:  Auth.; Hearsay |
|------|------|------|------|------|
| 126. | October 30, 2013 King And Spalding Appeals Protest | USA-005189 | USA-005258 | (Duplicate of Def. Ex 115) |
| 127. | October 17, 2013 Notice Of Claim Disallowance | USA-007554 | USA-007586 | J |
| 128. | Aug. 15, 2011 Letter from the IRS to Herrmanns Stating That Return Selected For Exam | USA-006204 | USA-006205 | J |
| 129. | IDR Request 2 | USA-000213 <br><br> USA-000228 | USA-000214 <br><br> USA-000228 | J |
| 130. | Form 886-A with Notations | USA-005182 | USA-005184 | O:  Incomplete document |
| 131. | The Paulson Funds 2011 Year-End Firm Report | Paulson_00003342 | Paulson_00003443 | J |
| 132. | Paulson Organizational Chart, Nov. 2006 | Paulson_00003447 | Paulson_00003447 | J |
| 133. | Presentation entitled "The Paulson Funds" | Paulson_00003622 | Paulson_00003675 | |
| 134. | The Paulson Funds 2009 Year End Report | Paulson_00003744 | Paulson_00003791 | |
| 135. | The 2009 Paulson Funds Annual Review | Paulson_00003792 | Paulson_00003840 | J |
| 136. | PricewaterhouseCoopers (PwC") London Review of Transfer Pricing Methodology for FY 2007 | Paulson_00004486 <br><br> Paulson_00005026 <br><br> Paulson_00005122 | Paulson_00004508 <br><br> Paulson_00005034 <br><br> Paulson_00005130 | O:  Auth.; Hearsay; Prepared for litigation |
| 137. | PwC Review of Transfer Pricing Methodology for Year Ended March 2009 | Paulson_00004496 | Paulson_00005131 | O:  Auth.; Hearsay; Prepared for litigation |
| 138. | PELLP's 2009 Partnership Tax Return | Paulson_00004520 | Paulson_00004530 | O: Attorney's eyes only designation unnecessary |
| 139. | Paulson Version of the PELLP Partnership Agreement | Paulson_00005035 | Paulson_00005059 | O: Attorney's eyes only designation unnecessary; Duplicate |

| 140. | PELLP Allocation of Member's Equity | **Paulson_00005060** | **Paulson_00005061** | **O: Auth.; Hearsay; Attorney's eyes only designation unnecessary** |
|---|---|---|---|---|
| 141. | PELLP analysis of Book/Tax Capital 2006-2008 | **Paulson_00005103** | **Paulson_00005104** | **O: Auth.; Hearsay; Attorney's eyes only designation unnecessary** |
| 142. | Spreadsheet Detailing PELLP Income and Expenses (Federal Tax Trial Balance Report) | **Paulson_00005105** | **Paulson_00005110** | **O: Auth.; Hearsay; Attorney's eyes only designation unnecessary** |
| 143. | PELLP 2008 Remeasurement | **Paulson_00005114** | **Paulson_00005121** | **O: Auth.; Hearsay; Attorney's eyes only designation unnecessary** |
| 144. | PELLP 2008 Incentive Fee Listing | **Paulson_00005144** | **Paulson_00005144** | **J (Attorney's eyes only designation unnecessary)** |
| 145. | PELLP 2009 Incentive Fee Listing | **Paulson_00005145** | **Paulson_00005145** | **J (Attorney's eyes only designation unnecessary)** |
| 146. | September 21, 2011 Email From Chris Bodak to Nikolai Petchenikov *et al.* re: PELLP Audit | **Paulson_00002174** | **Paulson_00002176** | **O: Auth.; Hearsay** |
| 147. | Bodak email to Petchenikov, St. John Cooper, and Gerowin dated March 19, 2012 | **Bodak Dep. Exh. 3** | | **O: Auth.; Hearsay** |
| 148. | Form 8082, Notice of Inconsistent Treatment or Administrative Adjustment Request ("AAR") | **Hocking Dep. Exh. 8** | | **J** |
| 149. | April 3, 2012 E-mail from Nicola Dunn to Joseph Scott *et al.* re: summary of UK tax payments with attachments | **Hocking Dep. Exh. 9** | | **J** |
| 150. | June 11, 2009 Email from Mina Herrmann to Nicola Dunn re: 2008 US Taxes | **Hocking Dep. Exh. 14** | | **J** |

| 151. | IDR 2 and Response, Herrmann Audit | **Dunn Dep. Exh. 17** | | **J** |
|------|-----------------------------------|----------------------|--|-------|
| 152. | IDR 1 & 3 and Response, Herrmann Audit | **Dunn Dep. Exh. 18** | | **J** |
| 153. | IDR 5 and Response, Herrmann Audit | **Dunn Dep. Exh. 19** | | **J** |
| 154. | IDR 7 and Response, Herrmann Audit | **Dunn Dep. Exh. 20** | | **J** |
| 155. | Sept. 1, 2011 Email from Nicola Dunn to Joe Scott *et al.* re: IDR 6 | **Dunn Dep. Exh. 22** | | **J** |
| 156. | IDR 9 and Response, Herrmann Audit | **Dunn Dep. Exh. 23** | | **J** |
| 157. | December 5, 2012 Email from Bobbette L. Abeyta to Joseph Scott *et al.* re: AAR | **Scott Dep. Exh. 28** | | **J** |
| 158. | January 18, 2013 Email from Jackie Parker to Joseph Scott re: Disallowance of AAR | **Scott Dep. Exh. 31** | | **J** |
| 159. | PELLP Deed of Adherence | **Herrmann Dep. Exh. 1** | | **O: Barely legible duplicate** |
| 160. | PELLP Partnership Agreement | **Herrmann Dep. Exh. 2**<br><br>**Bodak Dep. Exh. 16** | | **O: Confusing and improper compilation** |
| 161. | PELLP's 2008 Form 1065 | **Herrmann Dep. Exh. 6**<br><br>**Bodak Dep. Exh. 13** | | **O: Redacted / Incomplete document** |
| 162. | 2008 to 2010 Income Reporting Schedule Prepared by Frank Hirth | **Herrmann Dep. Exh. 9** | | **Rule 408 Settlement Document; Auth.; Hearsay** |
| 163. | Proposed Adjustment Letter and Form 886-A to PELLP Tax Matters Partner – June 20, 2012 | **Herrmann Dep. Exh. 10** | | **O: Redacted / Incomplete document;** |
| 164. | June 28, 2012 Email from Stuart Merzer to Mina Herrmann re: summary report and waiver of closing conference | **Herrmann Dep. Exh. 12** | | **O: Auth.; Hearsay** |
| 165. | July 16, 2012 Email from Mina Herrmann to Stuart Merzer re: unmarked copy of 2008 PELLP US Tax Return | **Herrmann Dep. Exh. 13** | | **O: Barely legible duplicate** |

| 166. | Claim Disallowance Letter and 886-A – Oct 12, 2012 | **Herrmann Dep. Exh. 16** | | **O: Incomplete document; Barely legible duplicate** |
|---|---|---|---|---|
| 167. | Mina Herrmann's 2008 K-1 | **Herrmann Dep. Exh. 17** | | **J** (Duplicate) |
| 168. | Mina Herrmann's 2010 and 2011 US Tax Returns | **Herrmann Dep. Exh. 19** | | |
| 169. | Form 2848 Power of Attorney, Mina Herrmann | **Casimir Dep. Exh. 1** | | |
| 170. | June 12, 2012 Email from Eric Cirelli to Jim Casimir re: early referral of issue | **Casimir Dep. Exh. 2** | | |
| 171. | July 6, 2012 Email from Joe Scott to Eric Cirelli re: closing conference 7-6-12 | **Casimir Dep. Exh. 3** | | **J** (Duplicate) |
| 172. | July 20, 2012 Letter from IRS to Paul Hocking re: Notice of Computational Adjustment and time period for filing refund claim | **Casimir Dep. Exh. 5** | | |
| 173. | July 24, 2012 Email from Jim Casimir to Joe Scott re: time period for filing refund claim | **Casimir Dep. Exh. 6** | | |
| 174. | Summary of closing conference – July 26, 2012 | **Casimir Dep. Exh. 8** | | **J** (Duplicate) |
| 175. | July 26, 2012 Email from Jeffrey Bortnick to Jim Casimir confirming 8832 election and July 26, 2012 Email from Jim Casimir to Jeffrey Bortnick re: today's conference call | **Casimir Dep. Exh. 9** | | |
| 176. | August 16, 2012 Fax from Thomas Louthan to Lucy Ambroz, Tax Payer Advocate Service re: Closing Conference | **Casimir Dep. Exh. 13** | | |
| 177. | Sept. 5, 2012 Email from Mina Herrmann to Jim Casimir *et al.* attaching No Adjustments Letter | **Casimir Dep. Exh. 15** | | |
| 178. | The 2007 Paulson Funds Annual Review, Nov. 29, 2007 | **Paulson Dep. Def.'s Ex. 9** | | **J (if complete) / O: Incomplete document** |
| 179. | The 2006 Paulson Fund Annual Review, Nov. 30, 2006 | **Paulson Dep. Def.'s Ex. 10** | | **J (if complete) / O: Incomplete document** |

| 180. | The **2008** Paulson Funds Annual Review, Nov. 17, 2008 | **Paulson Dep. Def.'s Ex. 11** | | **J (if complete) / O: Incomplete document** |
|---|---|---|---|---|
| 181. | Paulson Funds 2011 Year-End Firm Report | **Paulson Dep. Def.'s Ex. 13** | | **J (if complete) / O: Incomplete document** |
| 182. | Paulson & Co. and Affiliates 2008 YTD Incentive Fees | **Paulson Dep. Def.'s Ex. 14** | | **J (Attorney's eyes only designation unnecessary)** |
| 183. | The 2011 Paulson Funds Annual Workshops, Paulson Advantage Funds (excerpt) | **Paulson Dep. Def.'s Ex. 15** | | **O: Incomplete** |
| 184. | The Paulson Funds 2009 Year End Report | **Paulson Dep. Pls.' Exh. 16** | | **J** |
| 185. | Paulson & Co. and. Affiliates Compensation Summary | **Paulson Dep. Pls.' Exh. 17** | | **J** |
| 186. | Paulson & Co. and Affiliates YTD Incentive Fees, 1-1-07 to 12-31-07 | **Paulson Dep. Pls.' Exh. 18** | | **J** |
| 187. | Paulson & Co. and Affiliates 2008 YTD Incentive Fees | **Paulson Dep. Pls.' Exh. 19** | | **J** |
| 188. | Paulson & Co. and Affiliates 2009 YTD Incentive Fees | **Paulson Dep. Pls.' Exh. 20** | | **J** |
| 189. | Paulson & Co. & Affiliates Net Incentive Fees Earned, 1-1-05 to 12-31-05 | **Paulson Dep. Pls.' Exh. 21** | | **J (Attorney's eyes only designation unnecessary)** |
| 190. | Affidavit of Mina Herrmann (Aug. 4, 2015) | **Pls.' Mot. for Partial Summ. J. Exh. 1 (Doc. 20-1)** | | |
| 191. | Internal Revenue Service, Notice of Computational Adjustment Issued to Herrmanns (Apr. 13, 2012) | **Pls.' Mot. for Partial Summ. J. Exh. 5 (Doc. 20-2)** | | **J** |
| 192. | IRS Tax Return Transcript for Tax Period Ending Dec. 31, 2008 (June 26, 2012) | **Pls.' Mot. for Partial Summ. J. Exh. 7 (Doc. 20-2)** | | **J** |
| 193. | July 17, 2012 Email from Jeffrey Bortnick to Joe Scott re: PELLP Amended K1s | **Pls.' Mot. for Partial Summ. J. Exh. 9 (Doc. 20-3)** | | **J (Incomplete)** |
| 194. | IRS No Adjustments Letter for PELLP (Aug. 30, 2012) | **Pls.' Mot. for Partial Summ. J. Exh. 11 (Doc. 20-3)** | | **J** |

| 195. | Form 4605 issued to PELLP | **Def.'s Mot. to Dismiss Exh. 7 (Doc. 21-2)** | | **O: Redacted / Incomplete document** |
|---|---|---|---|---|
| 196. | Letter 1807 issued to PELLP | **Def.'s Mot. to Dismiss Exh. 8 (Doc. 21-2)** | | **O: Redacted / Incomplete document** |
| 197. | Letter 4735, Notice of Computational Adjustment | **Def.'s Mot. to Dismiss Exh. 9 (Doc. 21-2)** | | **J (Duplicate)** |
| 198. | Letter 569, IRS Disallowance Letter | **Def.'s Mot. to Dismiss Exh. 10 (Doc. 21-2)** | | **J (Duplicate)** |
| 199. | Declaration of Mina Herrmann (Sept. 9, 2015) | **Exhibit 1, Plaintiff's Response to Defendant's Motion to Dismiss** | | |
| 200. | IRS document titled "RE: Computational Adjustment Summary Points," received from the IRS in 2013 pursuant to a Freedom of Information Act request | **Pls.' Resp. to Def.'s Mot. to Dismiss Exh. 2 (Doc. 25-1)** | | **J (Duplicate)** |
| 201. | July 25, 2012 Email from Joe Scott to himself and Eric Cirelli received from the IRS in 2013 pursuant to a Freedom of Information Act request | **Pls.' Resp. to Def.'s Mot. to Dismiss Exh. 4 (Doc. 25-1)** | | **J (Duplicate)** |
| 202. | IRS document depicting emails among IRS Exam Team members on December 5, 2012 received from the IRS in 2013 pursuant to a Freedom of Information Act request | **Exhibit 5, Plaintiff's Response to Defendant's Motion to Dismiss** | | **J** |
| 203. | Jim Casimir email to Nina Olson, the National Taxpayer Advocate dated July 24, 2012 | **Produced to plaintiffs at deposition of Jim Casimir** | ` | |
| 204. | Thomas Louthan email to Rosty Shiller *et al* dated July 30, 2012 | **Produced to plaintiffs at deposition of Jim Casimir** | | |

| | | | |
|---|---|---|---|
| 205. | Email string beginning with Jim Casimir email dated August 3, 2012 (8:47am) and ending with Eric Cirelli email dated August 3. 2012 (9:24am) | **Produced to plaintiffs at deposition of Jim Casimir** | | **J** |
| 206. | Eric Cirelli email to Jim Casimir dated August 8, 2012 (10:28am) regarding the chain of command | **Produced to plaintiffs at deposition of Jim Casimir** | | **O: Auth.; Hearsay** |
| 207. | Casmir email to Redigo Phillips with cc to Eric Cirelli dated August 30, 2012 (4:40 pm) | **Produced to plaintiffs at deposition of Jim Casimir** | | |
| 208. | Form 4605 and 886 issued to PELLP with respect to 2008 audit | **USA-000727 (also produced by Plaintiffs' at HER-1093-** | **USA-000744** | **O: Redacted / Incomplete document** |
| 209. | Joseph Scott email to Nicola Dunn dated March 6, 2012 with the subject line regarding "5701-Notice of Proposed Adjustment-Partnership Income" | **USA-001042** | **USA-001042** | **J** |
| 210. | Spreadsheet summarizing the Herrmanns' amended returns for tax years 2008 to 2010 | **USA-006075** | **USA-006098** | **O: Auth.; Hearsay** |
| 211. | Financial Conduct Authority Registration | | | **O: Auth.; Hearsay** |
| 212. | Paulson Europe LLP Pillar 3 Capital & Remuneration Disclosure 31 March 2016 | | | **O: Relevance; Auth.; Hearsay** |
| 213. | Paulson & Co., Inc. website company description | | | **O: Relevance; Auth.; Hearsay** |
| 214. | PELLP Forms 1065 for years 2009-2010 | | | **O: Redacted / Incomplete document** |
| 215. | Transcript of deposition of Mina Gerowin Herrmann | | | **O: Hearsay; Relevance; All recorded and preserved objections** |

| 216. | Form 4340 for Herrmanns' 2008 tax year | | | **O: Document not produced to plaintiffs as of 11/28/2016; R.C.F.C., Appendix A** |
|---|---|---|---|---|
| 217. | Congressional testimony of John Paulson | | | **O:  Relevance; Auth.;  Hearsay** |
| 218. | Herrmanns' 2010 Form 1040 as originally filed | **USA-007719** | **USA-007803** | |
| 219. | Herrmann payroll summary | **HER-001129** | **HER-001131** | **J** |
| 220. | PELLP 2009 Final Bonus | **HER-001051** | **HER-001057** | **J (Duplicates)** |
| 221. | Herrmann payroll summary | **HER-001157** | **HER-001161** | **O: Improper compilation; Auth.;  Hearsay** |
| 222. | Draft Letter Agreement | **HER-001165** | **HER-001171** | **O:  Auth.; Hearsay** |
| 223. | Paulson & Co., Inc. Estimated Firm Value Sheet | **HER-001081** | **HER-001081** | **O:  Auth.; Hearsay** |
| 224. | IRS Summary Report to PELLP | **HER-001093** | **HER-001125** | **O: Redacted / Incomplete document** |
| 225. | Spreadsheet re: Mina Gerowin U.S. Tax Return | **HER-001143** | **HER-001144** | **O:  Rule 408 settlement document; Auth.; Hearsay** |