# 𝕴𝖓 𝖙𝖍𝖊 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕱𝖊𝖉𝖊𝖗𝖆𝖑 𝕮𝖑𝖆𝖎𝖒𝖘

### No. 14-941T

(Filed: January 13, 2017)

| | |
|---|---|
| JEFFREY W. HERRMANN and MINA GEROWIN HERRMANN, | Pre-trial motions *in limine*; testimony by witnesses in person at trial rather than by contemporaneous video transmission; RCFC 43(a); RCFC 45(c); removal of attorneys' eyes only designation for certain documents and information; testimony of a witness who prepared summaries; Fed. R. Evid. 1006 |
| Plaintiffs, | |
| v. | |
| UNITED STATES, | |
| Defendant. | |

Nathan E. Clukey, King & Spalding LLP, Washington, D.C. for plaintiffs.  With Mr. Clukey on the briefs were Abraham N.M. Shashy, Jr., Kevin M. Dinan, and Ariana F. Wallizada, King & Spalding LLP, Washington, D.C.

Matthew D. Lucey, Attorney, Tax Division, United States Department of Justice, Washington, D.C. for defendant.  With Mr. Lucey on the briefs were Sophia Siddiqui and Blaine G. Saito, Trial Attorneys, Court of Federal Claims Section, Caroline D. Ciraolo, Principal Deputy Assistant Attorney General, Tax Division, David I. Pincus, Chief, Court of Federal Claims Section, and G. Robson Stewart, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

Marc R. Rosen, Kleinberg, Kaplan, Wolff & Cohen, P.C., New York, New York, for non-parties John Paulson, Christopher Bodak, Paulson & Co. Inc., and Paulson Europe LLP. With Mr. Rosen on the briefs was Robert M. Tuchman, Kleinberg, Kaplan, Wolff & Cohen, P.C., New York, New York.

## ORDER

LETTOW, Judge.

Pending before the court in this tax case are three pre-trial motions *in limine*, filed December 21, 2016.  The first motion *in limine*, submitted by non-parties John Paulson, Christopher Bodak, Paulson & Co. Inc., and Paulson Europe LLP ("PELLP"), seeks permission for Mr. Paulson and Mr. Bodak to testify at trial via contemporaneous video transmission rather than in person.  Trial is scheduled to begin in Washington, D.C. on January 23, 2017, and Mr. Paulson and Mr. Bodak request that the court hear their testimony by transmission from New York, New York.  The second motion *in limine*, filed by plaintiffs, asks the court to modify the protective order in this case to remove attorneys' eyes only designations from certain documents

so plaintiffs may review the documents in preparation for trial and be present throughout the trial.  The third motion *in limine*, filed by the government, seeks to exclude two summary exhibits prepared by Evan Cohen, CFA, as well as the testimony of Mr. Cohen.  Also pending before the court is plaintiffs' motion for leave to designate portions of the transcript of the deposition testimony of Nicola Dunn, a tax accountant residing in London, England, in lieu of Ms. Dunn's testimony at trial, filed November 29, 2016, and defendant's corresponding cross-motion, filed December 16, 2016.  The motions have been fully briefed and are ready for disposition.  For the reasons stated below, the non-parties' motion *in limine* to testify via video transmission is denied, plaintiffs' motion *in limine* to remove the attorneys' eyes only designations is granted, the government's motion *in limine* to exclude summary exhibits is denied, and plaintiffs' motion and the government's cross-motion to designate deposition testimony are granted.

## BACKGROUND

Primarily at issue in this tax case is a payment of $18,748,838 to plaintiff Mina Gerowin Herrmann by her employer, PELLP.  *See Herrmann v. United States* ("*Herrmann I*"), 124 Fed. Cl. 56, 58 (2015).  PELLP ordered the payment to be issued on the last day of 2008, but Ms. Herrmann did not receive it in her bank account until a few days later, in early January 2009.  *Id.* Plaintiffs, who are U.S. citizens resident in London, paid taxes on this payment to the United Kingdom in 2009 at a higher rate than the rate applicable under U.S. tax law.  *Id.*  Following an audit of PELLP that began in 2011, the Internal Revenue Service ("IRS" or "government") classified the payment as a partnership distribution to Ms. Herrmann, and not as a bonus or other payment for services in a capacity other than as a partner within the ambit of 26 U.S.C. § 707(a)(2)(A).  *Id.*  This classification meant that plaintiffs should have reported the payment as income on their 2008 U.S. federal tax return.  *Id.*  Plaintiffs dispute this characterization of the payment and challenge the IRS's handling of the PELLP audit and treatment of plaintiffs' foreign tax credits.  *Id.*  Plaintiffs seek a tax refund of $7,860,434.87 for taxes and interest paid for the 2008 tax year.  *Id.*

## ANALYSIS

The four motions at issue were filed in anticipation of the trial scheduled to begin on January 23, 2017.

### A. *Non-Parties' Motion* in Limine *to Testify via Contemporaneous Video Transmission*

Non-parties John Paulson, Christopher Bodak, Paulson & Co. Inc., and PELLP ask the court to allow Mr. Paulson and Mr. Bodak to testify at trial via contemporaneous video transmission.  Mr. Paulson is the chief executive officer of Paulson & Co. Inc. and PELLP (collectively, "Paulson"), and Mr. Bodak is Paulson's chief financial officer.  *See* Mem. in Support of Mot. to Permit Test. by Contemporaneous Transmission from a Different Location ("Non-Parties' Mem.") at 1, ECF No. 66-1.  The government issued subpoenas to Mr. Paulson and Mr. Bodak on November 3, 2016, directing them to appear in Washington, D.C., to testify in person at trial, and plaintiffs issued comparable subpoenas to them on November 4, 2016.  *See* Pls.' Opp'n to the Mot. to Permit Test. by Contemporaneous Transmission from a Different

Location Filed by Non-Parties John Paulson and Christopher Bodak ("Pls.' Opp'n to Non-Parties' Mot.") at 2, ECF No. 74.  Mr. Paulson and Mr. Bodak filed their motion *in limine* on December 21, 2016.

Both Mr. Paulson and Mr. Bodak reside and work in New York, New York.  *See* Non-Parties' Mem. at 1.  They have each submitted affidavits describing personal and professional obligations that limit their ability to travel to Washington to testify at trial.  Specifically, Mr. Paulson has primary responsibility for managing Paulson on a day-to-day basis, and he has numerous in-person business meetings with his investment team, employees, and clients during the time scheduled for trial.  *See* Aff. of John Paulson ¶¶ 1, 4, ECF No. 66-3.  Mr. Bodak will be leading Paulson's audit and tax work during the pertinent time, which includes in-person meetings with outside auditors, and he has ongoing childcare responsibilities that require him to be in New York.  *See* Aff. of Christopher Bodak ¶¶ 4-5, ECF No. 66-2.

Rule 43(a) of the Rules of the Court of Federal Claims ("RCFC") states the general principle that "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise."  The rule thus reflects the traditional preference for the testifying witness's physical presence in court.  *See* 8 James Wm. Moore, et al., *Moore's Federal Practice* § 43.02[2] (3d ed. 2012).  This rule also provides, however, that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."  RCFC 43(a).  Relatedly, RCFC 45(d)(3)(A) states that the court "must quash or modify a subpoena that . . . requires a person who is neither a party nor a party's officer to comply beyond the limitations specified in RCFC 45(c)," which in turn provides that the court "may command a person to attend a trial . . . only . . . within 100 miles of where a person resides, is employed, or regularly transacts business in person," or "at any place within the United States if the person . . . is a party or party's officer," or if the person "is commanded to attend a trial and would not incur substantial expense."[1]

Live testimony is heavily favored under the rules of this court, and Mr. Paulson and Mr. Bodak must present compelling reasons to overcome that traditional preference and to justify testifying via contemporaneous video transmission.  "The most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different

---

[1] RCFC 45(c)(1)(B) differs materially from Fed. R. Civ. P. 45(c)(1)(B) in pertinent respects because of this court's nationwide jurisdiction.  RCFC 45(c)(1)(B) allows a subpoena to command a person to attend trial "*at any place within the United States* if the person . . . would not incur substantial expense." (emphasis added).  By contrast, Fed. R. Civ. P. 45(c)(1)(B) limits a subpoena to command a person to attend a trial "*within the state* where the person resides, is employed, or regularly transacts business in person, if the person . . . would not incur substantial expense." (emphasis added).

place." Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment.[2]  The circumstances identified by Mr. Paulson and Mr. Bodak reflect quotidian business and personal obligations, not unanticipated emergencies or conflicts.  They have presented no evidence to show why they could not, for example, reschedule meetings, delegate responsibilities to coworkers, and make alternate childcare arrangements in anticipation of traveling to Washington, D.C. for trial.  Their circumstances are also made less compelling by the fact that both Mr. Paulson and Mr. Bodak were made aware of the trial and the anticipated need for their testimony far in advance of the trial date.  They received notice by e-mail on September 9, 2016 that the trial was set for January 23-31, 2017, and received trial subpoenas from the parties in early November 2016.  *See* Pls.' Opp'n to Non-Parties Mot. at 2; Def.'s Opp'n to Non-Parties' Mot. to Permit Test. by Contemporaneous Transmission from a Different Location ("Def.'s Opp'n") at 2, ECF No. 75.  This notice gave Mr. Paulson and Mr. Bodak ample time to arrange their personal and professional obligations to accommodate an obligation to testify in person at trial.  Although a non-party is in a more favored position than a party in applying RCFC 43(a), the potentially ameliorating effects of significant advanced notice nonetheless have a bearing on the court's evaluation of the circumstances at hand.  *See* Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment ("A party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances.").

Further, Mr. Paulson and Mr. Bodak will not incur substantial expense by traveling from New York to Washington, D.C. to appear at trial.  That consideration was important to the result in other cases.  In *Katzin v. United States*, 124 Fed. Cl. 122, 125 (2015), the witness permitted to testify via video transmission lived in Miami, Florida, more than 900 miles from both of the two trial locations, San Juan, Puerto Rico and Washington, D.C., and in *Scott Timber*, 93 Fed. Cl. at 500, the relevant witness resided across the country in Oregon and the trial took place in Washington, D.C.  Contrastingly, New York is only approximately 200 miles from the trial location in Washington, D.C.  This is not a "substantial geographic distance" meriting testimony via contemporaneous video transmission.  *Katzin*, 124 Fed. Cl. at 125 (citing *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 714 (Fed. Cir. 2005); *Scott Timber*, 93 Fed. Cl. at 500 & n.2).  Trains and planes run frequently between the two cities, and the trip is completed in less than a few hours.  The witnesses have also denoted that the potential need to stay overnight in Washington, D.C. for an extended period of time during trial would be a major inconvenience in light of their professional and personal obligations.  *See* Non-Parties' Mem. at 3.  This concern, however, has been ameliorated by the parties' indicated willingness to schedule the witnesses' testimony so that they might be able to return to New York promptly after completing their testimony, without having to stay in Washington overnight and with minimal interruption to the witnesses' professional and personal obligations.  *See, e.g.*, Pls.' Opp'n to Non-Parties' Mot. at 8 ("For example, Mr. Paulson's and Mr. Bodak's testimony could begin in the mornings of the second and third days of trial, respectively, which should eliminate the possibility that their testimony could not be completed in one day."); Def.'s Opp'n at 6 ("[B]oth plaintiffs and

---

[2]This court has previously noted the persuasive value of the advisory committee notes to the Federal Rules of Civil Procedure where the rules are analogous to the Rules of the Court of Federal Claims.  *See Scott Timber, Inc. v. United States*, 93 Fed. Cl. 498, 501 n.3 (2010).

defendant have agreed to have Mr. Paulson testify first for plaintiffs and then immediately after for defendants.  The parties have also agreed to the same arrangement for Mr. Bodak.").  In short, Mr. Paulson and Mr. Bodak have shown that traveling to Washington, D.C. to appear at trial would be inconvenient.  But, use of contemporaneous video "[t]ransmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial," Fed. R. Civ. P. 43 advisory committee's note to 1996 amendment, and the witnesses have not presented sufficiently compelling circumstances to warrant receiving their testimony in this manner.

The utility of evaluating the verisimilitude of the witnesses' testimony in person outweighs the time and expense to be incurred by Mr. Paulson and Mr. Bodak in appearing at trial.  Unlike in *Katzin*, 124 Fed. Cl. at 125, where the witness's testimony was expected to be brief and was reflected in an earlier declaration, both witnesses here are expected to offer several hours of testimony bearing on the key issue in this case based on their interactions with Ms. Herrmann and their positions within Paulson and PELLP.  Although the parties deposed both individuals during discovery, neither Mr. Paulson nor Mr. Bodak has testified in person under oath before the court.  This circumstance stands in contrast with the facts in *Scott Timber*, where the witness permitted to testify via video transmission had previously testified live before the court during the liability phase of trial.  93 Fed. Cl. at 501.  The court values the ability to evaluate the witnesses' credibility and demeanor in person, and that factor becomes particularly significant in light of the importance of their testimony in this case.  Accordingly, the non-parties' motion *in limine* to testify via contemporaneous video transmission is denied.  Mr. Paulson and Mr. Bodak must comply with the subpoenas and appear in court to testify at trial.

### B. Plaintiffs' Motion in Limine *to Remove Attorneys' Eyes Only Designations*

Plaintiffs have filed a motion *in limine* requesting that the court issue an order to remove confidential attorneys' eyes only designations from nine documents.  Pls.' Mot. *in Limine* to Remove Att'ys' Eyes Only Designations ("Pls.' Mot. *in Limine*") at 1, ECF No. 67.  These designations had been made in accord with the specific terms of the protective order previously entered in this case.  *Id.*  Removal of the attorneys' eyes only designations would enable plaintiffs to see the pertinent documents in advance of trial and to hear testimony about the documents during trial.  *Id.*  These nine documents include information regarding the compensation of PELLP partners and individuals employed by Paulson in New York between 2005 and 2009, and have been identified by plaintiffs as defendant's exhibits 136, 137, 138, 140, 141, 142, 143, and 189, and plaintiffs' exhibit 1006.  *Id.* at 4-5.

Paulson provided the documents to the parties' attorneys during discovery with the attorneys' eyes only designations following the court's order to compel document production that was issued on May 20, 2016.  *Id.* at 4-6; *see Herrmann v. United States* ("*Herrmann II*"), 127 Fed. Cl. 22 (2016).  In resolving the discovery issue, the court ordered Paulson to produce documents regarding the aforementioned compensation information, while addressing Paulson's privacy concerns by limiting access to those documents to attorneys' eyes only and permitting Paulson to "redact the names of all individuals from this information, providing instead designations such as 'Employee A,' 'Employee B,' and so forth."  *Herrmann II*, 127 Fed. Cl. at 43.  The government does not oppose plaintiffs' motion to gain access to these documents in advance of trial.  *See* Pls.' Mot. *in Limine* at 6.

A provision of the operative protective order enables the court to lift the attorneys' eyes only limitation and allow persons generally admitted under the protective order to "be furnished, shown or disclosed" "any Confidential Information that includes information about the compensation or ownership interests of individuals currently or formerly associated with Paulson, other than Mina Gerowin Herrmann."  Am. Protective Order ¶ 12 (May 18, 2016), ECF No. 54.  Plaintiffs invoke this provision, contending that the posture of the parties and the passage of time have caused the limitation to be inappropriate.  Paulson recognizes that the attorneys' eyes only designation "limits somewhat plaintiffs' ability to assist counsel in formulating questions to be put to non-party witnesses," Paulson's Opp'n to Pls.' Mot. *in Limine* to Remove Att'ys' Eyes Only Designations ("Paulson's Opp'n") at 7, ECF No. 72, and that "maintaining the non-disclosure of information concerning other individuals' compensation from the Herrmanns at trial may present certain practical challenges," *id.* at 8.  Nonetheless, Paulson argues that the privacy interests Paulson and its employees have in closely restricting disclosure of the pertinent information about compensation is sufficiently strong that the attorneys' eyes only designation should remain in place.  *Id.*

In this case, plaintiffs will be prejudiced if they do not receive access to the nine identified documents designated as attorneys' eyes only.  The documents at issue contain information at the core of plaintiffs' primary claims in this case – namely, whether Ms. Herrmann was a bona fide partner in PELLP and, if so, whether the payment of approximately $18 million was a partnership distribution or a payment for services performed in a capacity other than as a partner.  Pls.' Mot. *in Limine* at 9.  Plaintiffs' review of these documents would be helpful in preparing for their own testimony with regard to this claim, as well as in assisting counsel in preparing for the testimony of Mr. Paulson and Mr. Bodak.  *Id.*  In addition, by keeping these documents marked as attorneys' eyes only, plaintiffs would necessarily have to leave the courtroom for the portions of the trial when these documents would be addressed in testimony.  *Id.* at 10.  Those aspects of the trial are likely to be the most important factual predicates for resolution of the dispute at the heart of the case.  Further, the government has had access to much of the information about compensation as early as 2011 as a result of the IRS's audit of PELLP.  *Id.*

Paulson's concerns in maintaining the attorneys' eyes only designations have become more attenuated.  First, even with the removal of the attorneys' eyes only designation, the compensation information would still be subject to the confidentiality restrictions of the protective order.  Second, the documents contain information regarding compensation of PELLP partners and Paulson employees from 2005-2009.  As noted by plaintiffs in their motion, this information is more than seven years old, is not proprietary, and "does not involve patents, trade secrets, or competitively sensitive information deserving heightened protection."  Pls.' Mot. *in Limine* at 10-11.  The age and nature of the information, along with the fact that Ms. Herrmann is no longer affiliated with Paulson and is not a competitor of Paulson, limits Paulson's privacy interests in maintaining the attorneys' eyes only designations and weighs in favor of granting plaintiffs access to the documents for trial purposes.  *See Fairholme Funds, Inc. v. United States*, 2016 WL 1551672, at *2 (Fed. Cl. Apr. 11, 2016) (allowing the removal of a "Protected Information" designation from documents that were over three years old and did not contain matters of national security, proprietary information, or trade secrets).  Third, six of the

documents (specifically, defendant's exhibits 136, 140, 141, 142, and 143 and plaintiffs' exhibit 1006) contain information that either the government or plaintiffs possessed prior to discovery. Pls.' Mot. *in Limine* at 11.  The terms of the protective order do not "apply to documents or information that were in the possession of plaintiffs or the United States prior to the production of the Discovery Materials."  Protective Order ¶ 2 (Mar. 31, 2016), ECF No. 42.  Thus, any information in the identified documents that was in the possession of either party prior to discovery is not subject to the attorneys' eyes only designation.[3]

The safeguards in the protective order to preserve the privacy of the remaining attorneys' eyes only documents and information (including the entirety of defendant's exhibits 137, 138, and 189) are significant.  The recipients of confidential information under the protective order must only use the information for purposes of this case, including for trial preparation, and must not disclose confidential information to persons not covered by the protective order.  Protective Order ¶¶ 4-5.  By removing the attorneys' eyes only designations, plaintiffs are subject to these terms and must maintain the confidentiality of the documents, using the information solely for the limited purposes of preparing for and conducting trial.  Finally, as previously noted, the anonymity of the compensation information shall be maintained in providing plaintiffs with access to the documents.

---

[3]As Paulson points out, 26 U.S.C. § 6103 limits the disclosure of taxpayer information. *See* Paulson's Opp'n at 9 n.6.  But, Subparagraph 6103(e)(1)(C) permits the disclosure of taxpayer information in the case of a partnership to any individual "who was a member of such partnership during any part of the period covered by the return."  A caveat to this exception however, states–

> Limitation on certain disclosures under this subsection.–In the case of an inspection or disclosure under this subsection relating to the return of a partnership, S corporation, trust, or an estate, the information inspected or disclosed shall not include any supporting schedule, attachment, or list which includes the taxpayer identity information of a person other than the entity making the return or the person conducting the inspection or to whom the disclosure is made.

26 U.S.C. § 6103(e)(10).  Information *in the IRS's possession* regarding compensation of other Paulson partners and employees arguably might be "return information" within the ambit of Section 6103 because it might have been disclosed in the IRS audits of, or tax returns filed by, Paulson and PELLP.  *Compare Hull v. Internal Rev. Serv.*, 656 F.3d 1174, 1183-92 (10th Cir. 2011) (holding that records relating to pension plan's requests to IRS for approval to make adjusted pension payments were "return information"), *with Baskin v. United States*, 135 F.3d 338, 340-43 (5th Cir. 1998) (determining that checks payable to taxpayer obtained by a grand jury investigating a non-tax matter and possessed by an IRS agent supporting the grand jury were not "return information").  In entering the protective order at issue, the court had honored the spirit of the caveat to the partnership exception of Section 6103 by requiring that *Paulson's*, not the IRS's, disclosure in discovery of compensation of individuals who had not previously been identified be listed anonymously, *viz.*, "Employee A," "Employee B," and so forth.  *See Herrmann II*, 127 Fed. Cl. at 43.

In sum, plaintiffs' motion *in limine* is granted.  The attorneys' eyes only designations shall be removed from defendant's exhibits 136, 137, 138, 140, 141, 142, 143, and 189 and plaintiffs' exhibit 1006 such that plaintiffs may have access to them in advance of trial and may be present when the exhibits and information are addressed at trial.

### C. Defendant's Motion in Limine *to Exclude Summary Exhibits and Testimony of Evan Cohen*

The government has filed a motion *in limine* requesting that the court exclude plaintiffs' summary exhibits (exhibit numbers 314 and 1007) as well as the testimony of Evan Cohen, a certified financial accountant with the Brattle Group who prepared the exhibits.  Def.'s Mot. *in Limine* to Exclude "Summary" Exhibits and Testimony of Evan Cohen, CFA ("Def.'s Mot. *in Limine*"), ECF No. 68.  Exhibit 314 purports to summarize distributions to and from PELLP's 2008 general ledger, payments to and from Ms. Herrmann and PELLP in 2008, and expenses and reimbursements for Ms. Herrmann.  Def.'s Mot. *in Limine* App. ("Def.'s App.") at 1-3, ECF No. 68-1.  Exhibit 1007 purports to summarize payments to and from three PELLP partners, including Ms. Herrmann, and PELLP.  Def.'s App. at 4.  The government claims that the exhibits are not proper summaries under Fed. R. Evid. 1006 and should thus be excluded.  Def.'s Mot. *in Limine*, at 6-11.  Further, even if the summaries are deemed admissible, the government claims that Mr. Cohen should not be permitted to testify because "plaintiffs seek to offer [him as] an expert in disguise" in contravention of the parties' agreement that expert testimony would not be addressed in this case.  *Id.* at 2, 11-13.

Summary exhibits may be admitted at trial "to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  The admission of summary exhibits is a matter guided by the requirements of Rule 1006.  *See Jade Trading, LLC v. United States*, 67 Fed. Cl. 608, 613 (2005) (citations omitted).  Under the rule, a proponent of a summary exhibit must lay the foundation for its admissibility by establishing four requirements:

> First, the summarized writings must be so voluminous . . . as to be unable to be conveniently examined in court.  Second, the underlying evidence must itself be admissible.  Third, the original or copies of the summarized writings must be made available to the opposing party.  And, fourth, the proposed summary (or chart or calculation) must accurately summarize (or reflect) the underlying document(s) and only the underlying document(s).

*Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 244-45 (2003) (citing *Bath Iron Works Corp. v. United States*, 34 Fed. Cl. 218, 232-33 (1995), *aff'd*, 98 F.3d 1357 (Fed. Cir. 1996)).  Plaintiffs have listed the six documents upon which Mr. Cohen relied in preparing the exhibits in their disclosure of contentions of facts and law, and the government has these documents in its possession.  *See* Def.'s App. at 97-98.  In its motion *in limine*, the government does not object to the admissibility of the underlying documents, which consist of three iterations of the PELLP general ledger, a log of wire payments from PELLP, PELLP's IRS Form 886-A, and payroll summaries and e-mails.  The second and third requirements under Rule 1006 are therefore not at issue.

The government argues that exhibit 314 should be excluded because it does not accurately summarize the underlying documents. Def.'s Mot. *in Limine* at 6-10. First, the government alleges that the summary contains "legal conclusions" because the payment made to Ms. Herrmann on December 31, 2008 is labeled as a "bonus" rather than as a "member distribution." *Id.* at 6-8. The government is correct in stating that the nature of the payment to Ms. Herrmann as a partnership distribution or as a payment for services other than in a partnership capacity is the key legal issue in this case, which the court anticipates will be addressed extensively at trial. The summary is not inaccurate in that respect, however, because General Ledger 3 specifically reflects the payment of £12,764,732 to Ms. Herrmann and describes that payment as "(1200) Members Distribution – Bonus." Pls.' Resp. to Def.'s Mot. *in Limine* to Exclude Exs. 314 and 1007 and the Testimony of Evan Cohen ("Pls.' Opp'n to Def.'s Mot. *in Limine*") at 6, ECF No. 73 (quoting Pls.' Opp'n to Def.'s Mot. *in Limine* Ex. A, Bates 0004857-4858, line 2075). The court will assess the summary along with the underlying documents and additional evidence and testimony adduced at trial to come to a conclusion regarding the nature of the payment. *See Long Island Sav. Bank, FSB v. United States*, 67 Fed. Cl. 616, 653 n.26 (2006) ("While the [c]ourt admits the document, the [c]ourt does not necessarily, by admitting it, indicate in any way that it is inclined to accept all of the inferences that are spelled out or underlie or are embedded in that particular summary."), *rev'd on other grounds*, 503 F.3d 1234 (Fed. Cir. 2007). Similarly, the labeling of "member contributions" as "payments" does not misstate the legal status of such payments. *See* Def.'s Mot. *in Limine* at 9. These sums of money are listed on the PELLP general ledger as "[m]ember's [c]ontribution[s]," but it is certainly true that, more broadly, they are also "payments" from Ms. Herrmann and another partner to PELLP. *See* Def.'s App. at 13, rows 20-23. At trial, the government may inquire further into the characteristics of these payments, and the court will evaluate the summary along with additional evidence at trial to determine the specific nature of these payments as "member contributions" or otherwise. The summary thus accurately represents the underlying documents, and the government's argument to the contrary is unavailing.

In addition, the government argues that the summary is inaccurate because it "[c]herry-[p]icks, [c]haracterizes, and [o]mits [d]ata" from the underlying documents. Def.'s Mot. *in Limine* at 8-10. The government relies on *Bath Iron Works*, 34 Fed. Cl. 218, for the proposition that the summaries may be improper if they include "significant amounts of related and collateral information" from documents other than PELLP's general ledger, including the wire payments log and IRS Form 886-A. *See* Def.'s Mot. *in Limine* at 8-9 (citing *Bath Iron Works*, 34 Fed. Cl. at 233). In *Bath Iron Works*, however, the summaries at issue contained information from documents that were not disclosed in connection with the summaries pursuant to Rule 1006. 34 Fed. Cl. at 233-34. In this case, exhibit 314 specifically states that the summary is based on the PELLP general ledger *and* the wire payments log, IRS Form 886-A, and payroll summaries. *See* Def.'s App. at 1-3. All of the figures in the summary come from these documents, or are derived from them, and the government has access to all of them. The government thus has adequate means to cross-examine the preparer of the summary, Mr. Cohen, about the underlying documents, and the court shall take the totality of the summary witness's testimony into account in evaluating the admissibility of, and weight to be afforded, the summaries. *See Long Island Sav. Bank*, 67 Fed. Cl. at 653 n.26 (admitting a summary exhibit that compiled and characterized information from various documents while acknowledging that "the [c]ourt might well, in the

end, in its findings of fact, draw different inferences [than those contained in the summary] and reach a different result"). As exhibit 314 only contains information that is admissible and accessible by both parties, it is an accurate summary of the identified underlying documents and can be admitted.

With regard to exhibit 1007, the government argues that the summary is not based on sufficiently voluminous underlying documents because it appears to be entirely based on PELLP's IRS Form 886-A, a six-page document. *See* Def.'s Mot. *in Limine* at 10-11. The court does not accept this contention. Exhibit 1007 is presented as a summary of PELLP's general ledgers as well as the wire payments log, payroll summaries, and IRS Form 886-A. *See* Def.'s App. at 4; Pls.' Opp'n to Def.'s Mot. *in Limine* at 7. It contains figures set out in the Form 886-A, but the figures are also disparately located in the other documents, specifically in General Ledger 3. *See* Pls.' Opp'n to Def.'s Mot. *in Limine* at 7. Taken together, the documents involved consist of hundreds of pages of complex financial information. *See* Def.'s App.; Pls.' Opp'n to Def.'s Mot. *in Limine* Ex. A. The one-page summary prepared by Mr. Cohen may well be useful to the court to help parse this volume of information, particularly in a legally and factually complex trial such as this one. Thus, the court concludes that exhibit 1007 is based on sufficiently voluminous and complex data to be admitted as a summary under Rule 1006. As previously stated, the government may inquire into the documents underlying the summary and present them in court as it deems necessary, and the court will assess the documents along with the summary in drawing its conclusions.

Finally, the government's argument that plaintiffs seek to covertly offer expert testimony through Mr. Cohen is unavailing. The parties have agreed that neither will present expert testimony at trial, and expert discovery was not undertaken in this case. Def.'s Mot *in Limine* at 13. Although Mr. Cohen has testified as an expert witness in past cases involving foreign tax credits and partnership tax issues, *see id.* at 12, the plaintiffs here are only offering his testimony as a summary witness under Rule 1006. As previously stated, the exhibits summarize documents available to both parties and do not contain any expert analysis or opinions. Mr. Cohen's testimony presumably will serve to authenticate the summaries so they may be considered by the court as evidence, and the government has fully available means to cross-examine him regarding the content and preparation of the summaries. The testimony of the individual who prepares a summary exhibit is not required under Rule 1006, but "almost always his testimony is indispensable as a practical matter" to authenticate the exhibit. Mueller & Kirkpatrick, 5 *Federal Evidence* § 10:34 (4th ed. 2016) (citing *United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014); *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 31-32 (1st Cir. 2011); *United States v. Boesen*, 541 F.3d 838, 848 (8th Cir. 2008); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 515 n.9 (9th Cir. 1985); *United States v. Behrens*, 689 F.2d 154, 161 (10th Cir. 1982)). Thus, Mr. Cohen may testify as a summary witness without being admitted or considered as an expert. However, his testimony must be limited to authentication issues within his personal knowledge, specifically that: (1) he created the summary exhibits, (2) he relied upon the identified documents in creating the summary exhibits, and (3) the summary exhibits accurately reflect the contents of the documents. He may not opine on inferences to be drawn from the summaries and may not present any conclusions to the court.

In sum, the government's motion *in limine* is denied.  Summary exhibits 314 and 1007 may be admitted at trial, and Mr. Cohen may testify to authenticate them.

*D. Plaintiffs' Motion for Leave to File Transcript of Deposition Testimony of Nicola Dunn*

Plaintiffs also have filed a motion to designate portions of the deposition testimony of non-party witness Nicola Dunn, taken on July 14, 2016, to be admitted at trial.  Pls.' Mot. for Leave to File Tr. of Dep. Test. ("Pls.' Mot. for Leave"), ECF No. 64.  The government does not oppose plaintiffs' motion and has filed a cross-motion to admit additional portions of Ms. Dunn's deposition testimony as completeness designations, counter-designations, and defendant's own designations.  Def.'s Resp. to Pls.' Mot. for Leave to File Tr. of Dep. Test. and Def.'s Related Mot. for Leave, ECF No. 65.

Ms. Dunn resides in London, England, outside the subpoena power of this court.  Pls.' Mot. for Leave at 1; *see* RCFC 45(c).  She therefore is unavailable to testify at trial.  Pursuant to the rules of this court, "[a] party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness is outside the United States."  RCFC 32(a)(4)(B).  Further, if a party seeks to enter part of a deposition into evidence during trial, "an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts."  RCFC 32(a)(6).

Thus, for good cause shown, plaintiffs' motion and defendant's cross-motion are granted.  The court will receive the portions of Ms. Dunn's deposition testimony designated by both parties at trial in lieu of her live testimony.

## CONCLUSION

For the reasons stated, the non-parties' motion *in limine* to testify via contemporaneous video transmission is DENIED, plaintiffs' motion *in limine* to remove attorneys' eyes only designations is GRANTED, the government's motion *in limine* to exclude summary exhibits and the testimony of Evan Cohen is DENIED, and plaintiffs' motion and the government's cross-motion to designate deposition testimony are GRANTED.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge

11